UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Robert EMERT,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>Andrea SCHUCK, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 24-cv-0002-AGS-AHG<br><br>**ORDER GRANTING IFP MOTION (ECF 7), DISMISSING COMPLAINT WITHOUT LEAVE TO AMEND, AND CLOSING CASE** |

Plaintiff Robert Emert, suing for alleged civil-rights violations under 42 U.S.C. § 1983, moves to proceed in forma pauperis. For the reasons below, that motion is granted, but his complaint is dismissed without leave to amend.

### IFP Motion

Typically, parties instituting a civil action in a United States district court must pay filing fees of $405.[1] *See* 28 U.S.C. § 1914(a). But if granted the right to proceed in forma pauperis, a plaintiff need not pay those fees. *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999).

Emert owns only one asset—a non-operational vehicle he values at $2,500. (ECF 7, at 2.) He has no money in his bank accounts, has no income, is "over $50k in debt," and depends entirely on the "charity of [his] family" for housing and food. (*Id.*) The Court finds that Emert has sufficiently shown an inability to pay the initial fees. *See Blount v. Saul*, No. 21-cv-0679-BLM, 2021 WL 1561453, at *1 (S.D. Cal. Apr. 21, 2021) ("It is well-settled that a party need not be completely destitute to proceed IFP.").

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $55. *See* 28 U.S.C. § 1914(a); Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023).

1

## 28 U.S.C. § 1915(e) S<small>CREENING</small>

When reviewing an IFP motion, the court must screen the complaint and dismiss it if it "fails to state a claim," 28 U.S.C. § 1915(e)(2)(B), judged by the same "Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim," *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). Although a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (cleaned up). Pro se pleadings are "to be liberally construed." *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

### A.   Background

This is the fourth of six federal cases Emert recently filed that stem from either his 2023 state-court criminal conviction or a family-court decision affecting his parental-custody rights.[2] In this iteration, Emert claims that his "criminal defense attorney," defendant Jose Badillo, negotiated an "oral plea agreement" with defendant Deputy District Attorney Dawn Balerio and Emert's ex-wife, defendant Andrea Schuck. (ECF 1, at 4–5, 7.) A "custody provision" of that agreement allegedly provided that Emert's son Bryce "would return to Plaintiff's custody in a shared custody arrangement if Plaintiff pled guilty to resolve criminal charges." (*Id.* at 3.) Emert "pled guilty on April 4, 2023," but he says defendants "now falsely claim the plea deal did not contain any agreement regarding letting Bryce reside with plaintiff." (*Id.*) Emert neither provides the plea colloquy from that

---

[2] The other five cases are: *Emert v. Vena*, No. 3:23-cv-0230-RSH-AHG (S.D. Cal. Aug. 14, 2023) (filed Feb. 7, 2023); *Emert v. San Diego Superior Ct.*, No. 3:23-cv-1723-BAS-MSB (S.D. Cal. Oct. 4, 2023) (filed Sept. 18, 2023); *Emert v. California*, No. 3:23-cv-2318-JES-VET (S.D. Cal. Apr. 4, 2024) (filed Dec. 20, 2023); *Emert v. San Diego Bd. of Supervisors*, 3:24-cv-0671-JO-MSB (S.D. Cal. Apr. 12, 2024) (filed Apr. 12, 2024); and *Emert v. San Diego Superior Ct.*, No. 3:24-cv-0924-LL-MSB (S.D. Cal. May 31, 2024) (filed May 30, 2024).

hearing nor attests that the judge taking his plea was aware of any "custody provision." He was sentenced to and "remain[s] on a restrictive 3-year probation term." *See Emert v. California*, No. 3:23-cv-2318-JES-VET (S.D. Cal. Apr. 4, 2024), ECF 4, at 2.

Emert sues his ex-lawyer Badillo, prosecutor Balerio, and his ex-wife Schuck, claiming that their "breach of the plea agreement violated [his] constitutional rights under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment." (*Id.* at 5.) As circumstantial proof of his claims, Emert attaches transcripts of phone calls with his ex-wife and his ex-lawyer during the weeks after his plea, which he surreptitiously recorded. (*See id.* at 8–181.) These, he claims, "conclusively demonstrate that Defendants made and breached an enforceable plea agreement." (*Id.* at 6.)

He bases federal jurisdiction on defendant "Balerio's role in making the plea agreement which the other defendants failed to honor." (*Id.* at 3.) He asks the Court to "order[] Defendants to specifically perform the original plea agreement by letting Bryce live with his father." (*Id.*)

**B.    Discussion**

Section 1983 lawsuits are "a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (citing 42 U.S.C. § 1983). To state a § 1983 claim, a plaintiff must plausibly allege "both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

**1.    *Deputy District Attorney Balerio***

Emert fails to plausibly allege how Balerio violated his constitutional rights. "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Emert's allegations of any involvement by Balerio with custody issues are paper-thin. First, he says Balerio once spoke with Schuck

about "what [Schuck] wants [] out of [Emert] and what [Schuck] wants in regards to [Emert's] participation in [their son's] life." (*Id.* at 137.) He also claims that his then-lawyer told him Balerio "agreed to a plea deal whereby [Emert's son] would return to [Emert's] custody." (*Id.* at 3.) Accepting as true that Emert's lawyer told him this (even though the lawyer denies it (*see id.*)), it does not follow that Balerio actually agreed to any such thing. In fact, the Court is entitled to treat this inference with some skepticism. After all, Balerio has no power to enforce a private citizen's surrender of her child-custody rights—let alone set aside a family-court ruling granting those rights.

Several other circumstances also seem to absolve Balerio of any § 1983 liability. Emert does not allege that Balerio directly promised him anything about parental rights or that she mentioned custody during his plea colloquy, when he could have objected. He merely asserts in a conclusory fashion that Balerio's "involvement created a binding agreement under state law"—yet he admits it was "the other defendants [who] failed to honor" any purported arrangement. (ECF 1, at 3.) Balerio is not specifically alleged to have taken any "affirmative act, participate[d] in another's affirmative acts, or omit[ted] to perform an act [she was] legally required to do" that resulted in a violation of Emert's due-process rights. *See Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

And the attached documents undermine Emert's claim that any custody agreement involving Balerio existed. "[W]hen an exhibit to a complaint is inconsistent with the complaint's allegations, the exhibit controls." *Nguyen v. Bank of Am., NA*, 563 F. App'x 558, 558 (9th Cir. 2014). The nearly 200 pages of recorded phone calls point to two separate arrangements—the actual plea agreement with the state and an "agreement to agree" about custody between Emert and his ex-wife Schuck. (*See generally* ECF 1, at 8–181.) The transcripts indicate Emert understood all along that any agreement with his ex-wife was separate from his plea deal. After he'd pleaded guilty, Emert told Schuck: "I thought *we* were going to come to an agreement. . . . I took the deal based on what you said." (ECF 1, at 63 (emphasis added).) Schuck then told him "we have [a] little ways to go before we can do an agreement" and insisted that any arrangement between them be "in

writing." (*Id.* at 68, 111.) Emert acknowledged that Schuck's "[l]awyers were *going to* draft something and propose it to" him. (*Id.* at 176 (emphasis added).) Weeks later, he still "look[ed] forward to an agreement" with her but had "not received that yet." (*Id.* at 176, 179.) Finally, a full six weeks after Emert's guilty plea, Schuck indicated that they had reached an impasse: "We are not in negotiations nor will we be until you do as I have requested and drop your other cases. At that point I will work with you for some shared physical (only) custody of Bryce." (*Id.* at 180.) If any understandings were receded from, they involved only private citizens, not the state. Emert does not plausibly allege that Balerio had any connection with this second, inchoate arrangement between the parents. Perhaps Emert took the plea deal in the misplaced hope that his ex-wife would independently cede custody. But that has nothing to do with Balerio.

Nor does he state a § 1983 equal-protection claim against Balerio. To do so, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Emert seems to assert he's in a protected class of "similarly situated parents." (ECF 1, at 5.) But he doesn't explain how Balerio treated him differently from those outside the class concerning custody agreements in plea deals. With the fall of that theory, so fall his chances of prosecuting a § 1983 claim against Balerio.

### 2. Badillo and Schuck

Emert cannot maintain a § 1983 claim against his ex-wife or ex-lawyer, since he fails to allege how either was acting under color of state law. Emert does mention that "Badillo failed to secure the plea agreement regarding Bryce's custody in writing," but to the extent he may be trying to allege legal malpractice against his ex-lawyer, the Court declines to exercise supplemental jurisdiction over that or any other construable state-law claim. (*See* ECF 1, at 3.)

### 3. Improper Vehicle for Remedy Sought

Even if Emert had managed to state a § 1983 claim, the relief he requests—"specific performance" of the alleged plea agreement so he can gain physical custody of his son (*see*

5

1  ECF 1, at 4)—is not properly sought under that statute. Moreover, specific performance is
2  impossible. Even if Emert's plea deal somehow included a child-custody provision,
3  42 U.S.C. § 1983 does not authorize this Court to summarily annul a state's custody ruling.
4  With very few exceptions, a California family court "that has made a child custody
5  determination . . . has exclusive, continuing jurisdiction over the determination." *See* Cal.
6  Fam. Code § 3422(a). What's more, the family court itself cannot modify its ruling without
7  a showing "that there is new evidence or that there are changed circumstances that make a
8  change of placement in the best interest of the child." *In re Stephanie M.*, 867 P.2d 706,
9  718 (Cal. 1994). Nor can this Court constitutionally order Emert's ex-wife to disregard the
10 family-court determination, relinquish her parental rights, and hand over her child.

When a "breach of plea agreement" claim is brought and "specific performance is impossible," as it is here, "the only other possible remedy is rescission of the plea agreement and withdrawal of the guilty plea." *Carter v. Sandoval*, No. 2:18-cv-02064-RFB-EJY, 2020 WL 4668190, at *6 (D. Nev. July 9, 2020), *aff'd*, 859 F. App'x 53 (9th Cir. 2021). Such a claim "may not be pursued in a § 1983 action," as "habeas corpus is the exclusive remedy to attack the legality of the conviction or sentence." *Id.* (citing *Nettles v. Grounds*, 840 F.3d 922, 933 (9th Cir. 2016)).

Finally, even if the Court were to construe Emert's complaint as a habeas petition, it would fail. A federal habeas petitioner must exhaust state remedies by "present[ing] the California Supreme Court with a fair opportunity to rule on the merits of every issue raised." *Emert v. California*, No. 3:23-cv-2318-JES-VET, 2024 WL 787381, at *1 (S.D. Cal. Feb. 26, 2024) (dismissing Emert's previous habeas action for failure to exhaust). Separately and additionally, "a petitioner must name the state officer having custody of him as the respondent." *Id.* at *2. Emert has done neither.

## C. Denial of Leave to Amend

Accordingly, the complaint fails to survive screening and must be dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e). Although a "court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies

of the complaint could not be cured by amendment," no such cure is possible here. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (cleaned up). Because the relief Emert seeks is not even available under § 1983, any amendment would be futile; in such a case, courts may deny leave to amend. *See Joe v. Supreme Ct. of Cal.*, No. 22-16224, 2023 WL 5346048, at *1 (9th Cir. Aug. 21, 2023) (affirming denial of leave to amend for pro se pleading when "amendment would be futile").

### D.     Conclusion

Emert's IFP motion (ECF 7) is **GRANTED**. But his complaint is **DISMISSED** for failure to state a claim, without leave to amend. All other outstanding motions (ECF 8 & 9) are **DENIED AS MOOT**. The Clerk is directed to close this case.

Dated:  August 21, 2024

Andrew G. Schopler
United States District Judge