

FILED

Sep 10 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY      s/ JMS               DEPUTY

**Robert Emert**

**2351 Vista Lago Terrace**

**Escondido, CA 92029**

**760-612-9328**

## District Court of the United States

## Southern District of California

| | |
|---|---|
| **Robert Emert,** | **Case No.: 24-cv-0002-AGS-AHG** |
| **Plaintiff,** | |
| **vs.** | **PLAINTIFF'S MOTION FOR RECONSIDERATION UNDER FED. R. CIV. P. 60(b)(3) BASED ON FRAUD ON THE COURT** |
| **ANDREA SCHUCK; JOSE BADILLO; DEPUTY DISTRICT ATTORNEY FRANCIESCA BALERIO, Defendants.** | |

**RELATED CASES:**

**1. Case No. '24CV0671 JO MSB**

**2. Case No. '3:23-cv-00230-RSH-AHG**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

**ROBERT EMERT,**
**Plaintiff,**
**v.**
**ANDREA SCHUCK; JOSE BADILLO; DEPUTY DISTRICT ATTORNEY FRANCIESCA
BALERIO,**
**Defendants.**

**Case No.: 24-cv-0002-AGS-AHG**

**PLAINTIFF'S MOTION FOR RECONSIDERATION UNDER FED. R. CIV. P. 60(b)(3) BASED
ON FRAUD ON THE COURT**

Plaintiff Robert Emert, proceeding pro se, respectfully moves this Court for
reconsideration of its order dismissing his complaint (ECF No. 10) pursuant to Federal Rule
of Civil Procedure 60(b)(3). This motion is based on the following points and authorities,
the attached exhibits, and all other papers and pleadings on file in this action.

At the end of this 14-page motion, I have included one large exhibit that was filed into a
related case that easily proves fraud upon the court to warrant at least an evidentiary
hearing and reconsideration of motion to amend.

**There are three related cases, and I have filed into all three of these cases that they be
consolidated, expedited, 3 judge panel review, early discovery, evidentiary hearing.  In
four years, I have not been granted a simple evidentiary hearing, yet I have had my
children, retirement account, my liberty and nearly my breathing life stollen from me.**

**INTRODUCTION**

The related cases are:

RELATED CASES:

1. Case No. '24CV0671 JO MSB

2. Case No. '**23cv0230-RSH-AHG**


I am simply exhausting my state and district court remedies and am not a vexatious or
frivolous litigant, but I know that is what was/is coming next watching the playbook of
these morally bankrupt divorce court insiders.  I am confident that I will get justice at the 9th
circuit.  My peremptory challenge that set all this off was valid; my ADA claim where I was

denied equal access to the court will undue the judgment that set off the criminal case. This entire legal fiasco is a house of cards built by Dave Schulman and he used my x wife's resentment to terrorize me and my children and suck my x wife's parents bank account dry. I am a great and dedicated father who never did anything other than say these divorce court insider thugs could not exploit my son for profit. Even DA Investigator Luis Pena said to me on a recorded line after I told him that I have done nothing wrong, he said, well, you simply "pissed them off"; "the DA should never have taken this case"; I "would win" if this case went to trial and about 30 other similar statements that prove this entire case against me amounts to malicious retaliation of a whistle-blower and a farce and a sham.

These cases all started with a fraud upon the court by family divorce court insider who is very well connected, Dave Schulman of Schulman and Moore. After two years of a basic 50/50 custody arrangement that was working per two judges, 3 family court services reports and two family court service interviews of the children. Then, Dave Schulman judge shopped retired Commissioner Patti Ratekin who's supervising judge's wife is friends and co workers with my x wife. Both Dave Schulman and Andrea Schuck were aware of this conflict. Even the next supervising judge was a founding member of Dave Schulman's law firm. Patti Ratekin within five minutes of getting the file and on that same day suggests a "facility" for my son. No arguments heard on this day, or orders made because Ms. Ratekin said she did not have time per the court transcript. I file a proper peremptory challenge that Ratekin brazenly denies. There is a much longer list of Ms. Ratekins alarming frauds upon the court, but within a month, she takes 100% of my legal parental rights away when I try to provide to the court the evidence that proves my son does not belong in a facility. Ratekin ignores that my x wife was arrested for DV against me and my son and when I kindly declined to press charges, my x wife tried to press charges against me the next morning and did not tell the court she was arrested for DV the night before and had even come back to our home when instructed by the police not to. Ratekin brings in minor counsel to rubber stamp her "facility" narrative and they do just that. Dave Schulman recommends a child psychologist who works across the street from him and is out of insurance network and he falls in line with the "facility" narrative. I am begging my x wife for help to keep our son out of a "facility" but she signed off on it because our son wanted to live with me because of how she was treating him during the divorce. I provide mountains of evidence from many including our sons IEP case manager that our son does not belong in a facility, but this RICO crew of divorce court insiders keep at it and give me a massive heart attack. NOBODY IN THE HISTORY OF OUR SONS LIFE EVER SUGGESTED SUCH A THING AND THESE DIVORCE COURT INSIDERS PULL IT OUT OF THE HAT IN FIVE MINUETS WITH ZERO EVIDENCE TO DO SO! The day I am in the hospital recovering, Ms.

Ratekin claims she made an order for supervised visitation of me with my children with zero change in circumstances and soly based on a witness affidavit that simply called out fraud of my son's child psychologist. Apparently, Ms. Ratekin thinks its ok to take a parent's rights away because he let a person witness fraud upon the court which went against Ms. Ratekins narrative of a "facility". During most of these events I write some motions to the presiding judge, Alksne, for assistance. Alksne takes the case and strangely just tells me to turn over my son based on the void orders of Ratekin. I simply ask for an evidentiary hearing which is denied and I still to this day in four years have not had an evidentiary hearing in the family or criminal court to bring my mountains of evidence forward to show the criminal activities of these few divorce court insiders. I comply with PC 278.7 which means I am allowed to go against a court order as long as I do a few things as outlined by PC 278.7, which I do and then even a lot more trying to resolve the situation. I even invited my x wife to two Disney world vacations and the first Christmas she would not be with our children. My x wife and I generally despise each other but remained cordial. For over a year, my son lived and thieved under my care while I tried to resolve this matter legally. The family court insiders, Dave Schulman and Matt Cord were upset that I had legal necessity to hold on to my son and it simply upset them that they got caught looking stupid with moral turpitude dripping from their faces so Schulman and Cord go to their cronies at the San Diego DA to prosecute me under PC 278.5(a) which does not apply given PC 278.7. DAI Luis Pena tells me the DA should never have taken the case, I had good cause to hold on and protect my son and if this went to trial, I would win. A month later he succumbs to pressure and commits perjury all over an arrest warrant and I get arrested like Americas most wanted even though I complied with PC 278.7. A "threat" gets manufactured after a year so I can be held on no bail. I have zero criminal history, zero flight risk, massive ties to the community and this whole thing is about my kids so clearly, I am going nowhere, and I live with my 80-year-old parents and everyone knew where I and my son was at. I even got a letter from the DA saying my x wife was willing to give me full custody of our son. I am held with no bail for 90 days to coerce a guilty plea while DDA Balerio and DAI Pena sit on massive amounts of exculpatory evidence and again, I get no evidentiary hearing. I am told by my "lawyer" that I won't be getting out of jail for a long time unless I take a plea deal. I take a plea deal because it involves my son coming home. These court insiders and my x wife welch on the deal. There are recordings that prove there was a deal and if anyone simply listened to the recordings, like a jury, they would know that fact. I AM A WHISTLEBLOWER WHO HAS BEEN RAILROADED BY SOME COURT INSIDERS AND I WOULD APPRECIATE MY FAIR DAY IN COURT WITH AN EVIDENTIARY HEARING AND A TRIAL.

Plaintiff filed this action under 42 U.S.C. § 1983 seeking redress for the violation of his
constitutional rights stemming from a coerced and fraudulently induced guilty plea in his
state criminal case. The Court dismissed the complaint based on a narrow reading of the
allegations, finding that the agreement for Plaintiff's son to live with him appeared to be a
side arrangement with his ex-wife rather than part of the plea deal, and that the specific
relief sought was not available under § 1983.

However, the Court did not have the benefit of the full record evidence demonstrating the
pervasive fraud and misconduct by the Defendants that infected not only the plea itself,
but the family court proceedings that were intertwined with the criminal case. This new
evidence, detailed in the transcripts and emails attached to Plaintiff's motion, shows a
concerted effort by the prosecutor and Plaintiff's own counsel to misrepresent the nature
of the plea deal to the criminal and family courts, as well as the suppression of exculpatory
evidence that would have undermined the entire basis for the charges against Plaintiff.

This is not a case of buyer's remorse or a simple misunderstanding of the terms of a deal.
Rather, it is a case of officers of the court—a prosecutor and a defense attorney—actively
misleading the tribunal and coercing a guilty plea through fraudulent means. The family
court judges then compounded this fraud by entering orders based on the tainted criminal
proceedings, creating a Kafkaesque nightmare for Plaintiff where he is stripped of his
parental rights and precluded from challenging the government's unlawful actions
because of the very guilty plea that was procured through fraud.

This new evidence of egregious attorney misconduct and pervasive fraud on multiple
courts fits squarely within the parameters of Rule 60(b)(3) and warrants setting aside the
judgment of dismissal. It is not an attempt at relitigation, but a presentation of material
facts that were obscured by Defendants' deception and could not have been considered
by this Court in its initial ruling. The integrity of the judicial process demands that such
claims be heard on their merits, not brushed aside based on a selective presentation
shaped by the very parties who perpetrated the fraud.

**BACKGROUND**

The convoluted history of this case, spanning two separate but inextricably linked court
systems, presents a cautionary tale of how the safeguards of our criminal and family
courts can be subverted when bad faith actors are determined to trample the rights of an
individual for vindictive or corrupt purposes.

Plaintiff found himself caught in the crosshairs of family court proceedings where his ex-
wife and her attorneys, in concert with biased judicial officers, were seeking to strip him of
custody and visitation rights over his son Bryce. When Plaintiff attempted to push back on

these actions and assert his parental rights in that forum, his ex-wife made a false criminal complaint against him, alleging that he had "abducted" Bryce despite having joint legal custody at the time.

This led to criminal charges under California Penal Code § 278.5 in a separate proceeding. However, as Plaintiff has consistently maintained, he had a valid legal defense to these charges under Penal Code § 278.7, which provides an affirmative justification for a parent to take a child if done to protect them from imminent harm. Bryce had disclosed abuse by the mother and expressed a adamant desire to live with Plaintiff, and Plaintiff was within his rights to keep his son safe while pursuing a formal change to the custody orders.

The record is replete with evidence that the prosecution knew Plaintiff's actions were justified, but chose to pursue the case anyway at the urging of his ex-wife and her attorneys in family court. Most damning are the recorded statements of DA Investigator Pena, who acknowledged that Plaintiff had a valid § 278.7 defense and should not have been charged at all, stating "This is a case we never should have taken," and "if this goes to a jury trial, he will win." (Declaration of Robert Emert ("Emert Decl."), ¶ 27.)

Despite having no good faith basis to prosecute Plaintiff, DDA Balerio not only persisted in the charges but materially misrepresented evidence to the family and criminal courts to justify the case and coerce a guilty plea from Plaintiff. She withheld recorded interviews with Bryce where he expressed his desire to live with Plaintiff and detailed abuse by the mother that justified Plaintiff's actions. She failed to disclose a full transcript of Plaintiff's call with an FBI agent that directly refuted her claims that Plaintiff had made criminal threats. She even misrepresented to the court that Bryce could not testify in that forum due to the pending criminal case, when she had previously told Bryce and Plaintiff that he would be allowed to speak. (Emert Decl., ¶¶ 22-24, 32-33, Exhs. B, E, F.)

On the family court side, the assigned judicial officers, Judges Alksne and Ratekin, were determined to deprive Plaintiff of custody regardless of the evidence or proper procedures. They ignored Plaintiff's documented medical disabilities when he requested ADA accommodations to participate in hearings. They threatened to have Bryce placed in a residential treatment facility, not because it was in his best interests, but seemingly to punish Plaintiff for challenging their authority, divorce leverage, cronyism and profit. They disregarded substantial evidence of the mother's abuse and Bryce's own wishes to live with Plaintiff, rubberstamping the prosecution's narrative to justify the criminal case. (Emert Decl., ¶¶ 18-21.)

Caught between a rock and a hard place, Plaintiff agreed to plead guilty in the criminal case based on explicit promises that it would result in Bryce's return to his custody and an

end to the family court litigation. These were not mere "side deals" with his ex-wife, but terms negotiated between his attorney Jose Badillo and DDA Balerio as part of the global resolution of both cases. (Emert Decl., ¶¶ 4-5, 14-16, Exhs. A, C, D.)

Yet as soon as Plaintiff entered his plea, the Defendants soon reneged on the deal. Bryce was not allowed to return to Plaintiff's home, the promised custodial terms evaporated, and the family court case barreled forward with even more draconian orders stripping Plaintiff of visitation. When Plaintiff protested this bait-and-switch to his lawyer Badillo, he was told there was nothing that could be done. (Emert Decl., ¶¶ 6-9, 17.)

In short, Plaintiff found himself convicted of a crime that the prosecution knew he did not commit, based on a fraudulent plea bargain that the prosecutor and his own lawyer misrepresented to the court and never intended to honor, all so his ex-wife could unlawfully gain sole custody of his son and the family court could cover up its own misconduct and bias. This is a textbook case of not just fraud on the court, but a conspiracy by officers of the court to commit fraud across multiple tribunals.

**ARGUMENT**

**I. Legal Standard for Reconsideration Under Rule 60(b)(3)**

Federal Rule of Civil Procedure 60(b)(3) provides that a court may relieve a party from a final judgment, order, or proceeding based on "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." A motion under this subsection must be brought within a year of the entry of the judgment or order. Fed. R. Civ. P. 60(c)(1).

To prevail on a Rule 60(b)(3) motion, the movant must establish by clear and convincing evidence that: (1) the adverse party engaged in fraud, misrepresentation, or other misconduct; and (2) the misconduct prevented the moving party from fully and fairly presenting their case. Casey v. Albertson's Inc., 362 F.3d 1254, 1260 (9th Cir. 2004). However, unlike Rule 60(b)(2) which requires newly discovered evidence, Rule 60(b)(3) focuses on the misconduct of the opposing party in obtaining the judgment. Hesling v. CSX Transp., Inc., 396 F.3d 632, 641 (5th Cir. 2005).

Critically, Rule 60(b)(3) is aimed at judgments which were unfairly obtained, not at those which are factually incorrect. Rozier v. Ford Motor Co., 573 F.2d 1332, 1339 (5th Cir. 1978). Therefore, the inquiry focuses not on the merits of the underlying claims, but on whether misconduct substantially interfered with the aggrieved party's ability to prepare for and present their case. Id.; see also In re M/V Peacock, 809 F.2d 1403, 1405 (9th Cir. 1987)

("The rule is aimed at judgments which were unfairly obtained, not at those which are factually incorrect.").

A judgment obtained through fraud on the court can also be set aside under the savings clause of Rule 60(d)(3). "Fraud on the court" encompasses "only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." In re Levander, 180 F.3d 1114, 1119 (9th Cir. 1999).

Attorney misconduct can constitute fraud on the court where it involves an "unconscionable plan or scheme which is designed to improperly influence the court in its decision." Pumphrey v. K.W. Thompson Tool Co., 62 F.3d 1128, 1131 (9th Cir. 1995). Fraud on the court requires a "grave miscarriage of justice," United States v. Beggerly, 524 U.S. 38, 47 (1998), such as bribery of a judge or jury tampering, Levander, 180 F.3d at 1119. Importantly, there is no time limit to bring an independent action for fraud on the court under Rule 60(d)(3). Id. at 1120.

## II. The New Evidence of Attorney Misconduct and Fraud on the Court Warrants Reconsideration and Vacatur Under Rule 60(b)(3) and 60(d)(3)

A. The prosecutor intentionally misrepresented the terms of the plea deal and withheld exculpatory evidence to coerce a guilty plea

The newly presented evidence in the form of recorded conversations and email exchanges conclusively demonstrates that DDA Franciesca Balerio perpetrated a fraud on the court by materially misrepresenting the terms of Plaintiff's plea deal and withholding exculpatory evidence that would have undermined her case. This egregious prosecutorial misconduct not only violated Plaintiff's constitutional rights, but corrupted the integrity of the judicial process itself.

The transcripts of Plaintiff's conversations with his attorney Jose Badillo in the days immediately after the plea confirm that the prosecutor directly promised, as part of the negotiated deal, that Plaintiff's son Bryce would be returned to his custody. (See Emert Decl., Exh. C at 7:40 ("The conversation we had with the DA that I explained to you, she's (Schuck) on the record talking to the DA and I. That's why I am asking if you have those emails because if she's backtracking on that, obviously that could be an assistance for you in regard to whether you have a viable motion to withdraw your plea.") and 16:58 ("the DA knows that you resolved the case based on the conversation she and I had with Andrea. So if she is backpedaling on that and not agreeing to that, that could be an issue that can be raised."))

These are not vague references to a side agreement between private parties, but direct confirmation that the custody terms were part of the global resolution negotiated with the prosecution to settle both the criminal and family court matters. Attorney Badillo would have no reason to discuss breaches of a purely private arrangement in the context of withdrawing the plea. His focus on the DA's involvement makes clear that this was a term of the court-approved plea deal, not an ancillary understanding.

The evidence further shows that DDA Balerio had direct knowledge that Plaintiff's actions were justified under Penal Code § 278.7, yet concealed this from the court to force a plea. DA Investigator Pena has admitted on tape that Plaintiff "would win" if the case went to trial and "never should have been charged" because he was acting in good faith to protect his son from abuse. (Emert Decl. ¶ 27.) Pena further stated that Bryce's "lawyer had simply aligned with the ex-wife's attorney against the child's best interests," implying that even members of the DA's team knew the prosecution was unjustified. (Id.)

Perhaps most damning is DDA Balerio's deliberate suppression of her own recorded interview with Bryce, where the child expressed his desire to live with Plaintiff and detailed abuse by the mother that substantiated the necessity defense. (Emert Decl., ¶¶ 22-24, Exhs. E, F.) Withholding this plainly exculpatory evidence was not only a clear violation of Brady v. Maryland, 373 U.S. 83 (1963), but a fraud on both the criminal and family courts that deprived them of critical information needed to properly adjudicate the respective proceedings.

The fact that DDA Balerio failed to disclose a full transcript of Plaintiff's call with an FBI agent that refuted her claim of "criminal threats" is further evidence of her campaign of selective disclosure and misrepresentation. (Emert Decl., ¶ 33.) The pattern of concealment and duplicity by the prosecutor to strip Plaintiff of his defenses and coerce an uninformed plea is the very definition of fraud on the court by an officer of the court. This misconduct irrefutably prevented Plaintiff from fully and fairly presenting his case, as he was deprived of key exculpatory evidence and entrapped by illusory promises.

B. Plaintiff's own attorney colluded with the prosecution to misrepresent the plea terms and coerce an uninformed plea

Compounding the prosecutor's misrepresentations, Plaintiff's defense attorney Jose Badillo was complicit in inducing the fraudulent plea and covering up the true nature of the deal. The recorded conversations between Badillo and Plaintiff in the aftermath of the plea show definitively that the return of Bryce to Plaintiff's custody was an explicit term negotiated with the prosecution, not a mere side agreement with his ex-wife. (Emert Decl., Exh. C at 7:40, 16:58.)

Yet when confronted with the breached promises and his client's desperate pleas to enforce the real terms of the deal, Badillo refused to act and instead pressured Plaintiff to go along with the fiction that there was no such promise.

This is not mere ineffective assistance but an outright abandonment of Badillo's duties to his client and the court. An attorney who knowingly facilitates a fraudulent plea and then actively dissuades his client from challenging it when the terms are breached has utterly abdicated his role as an officer of the court. Such misconduct rises beyond malpractice to the level of fraud on the court. See Pumphrey, 62 F.3d at 1132 ("[R]eckless disregard for the truth is sufficient to constitute fraud on the court where an officer of the court makes a representation to the court.").

The fact that the custody terms promising Bryce's return were never reduced to writing, allowing the prosecution to later disavow them, appears to be a deliberate tactic by Badillo to induce the plea while leaving his client with no recourse. No competent attorney would advise his client to accept a deal involving the exchange of parental rights without memorializing the terms. The lack of documentation seems less a careless oversight than a calculated ploy to render the promises illusory and unenforceable.

Badillo's collusion with the prosecution to misrepresent the plea terms was clearly designed to improperly influence the court's acceptance of the deal. His subsequent attempts to strong-arm his client into silence were intended to perpetuate the fraud and prevent the improprieties from coming to light. Such manipulation of the machinery of justice by an officer of the court is a quintessential fraud on the court that cannot be countenanced if the system is to maintain any integrity.

C. The family court judges compounded the fraud by simply toying with a pro se litigant and gamesmanship rather than a focus on the merits of the case.

Those rulings were the poisonous fruit of a criminal proceeding that was rotten to the core, the predetermined endpoint of a conspiracy to defile the integrity of the courts and weaponize their power against an individual.

D. The fraud and attorney misconduct were not known to Plaintiff until after the order of dismissal and could not have been raised previously

This Court's dismissal order was premised on a view of the facts shaped by the very misrepresentations and omissions outlined above. Because the true nature of the plea deal and the full extent of the attorney misconduct were concealed by the Defendants, this Court could not have considered that evidence of fraud in its initial ruling. It was not until

Plaintiff obtained the recorded conversations and email exchanges after the dismissal that the full scope of the deceit and improper influence came to light.

There was no way for Plaintiff to present this evidence of fraud in the original pleadings, because the Defendants' malfeasance was still ongoing and had not yet been fully exposed. The fact that Plaintiff had suspicions of wrongdoing from the start does not preclude relief under Rule 60(b)(3), because "the rule is aimed at judgments which were unfairly obtained, not at those which are factually incorrect." In re M/V Peacock, 809 F.2d at 1405. It is the evidence of the misconduct itself, not just the fact of the misconduct, that Plaintiff could not have previously presented to the Court.

Plaintiff has been diligent in pursuing the truth and uncovering the extent of the fraud perpetrated against him. As the attached exhibits demonstrate, he doggedly sought to document the misrepresentations and betrayals through any means available to him as an incarcerated and unrepresented litigant. The fact that it took time to compile this evidence is a testament to the depth and complexity of the fraud, not any lack of diligence on Plaintiff's part.

To hold Plaintiff to an impossible standard of clairvoyance in pleading every detail of a fraud that was still unfolding would reward the Defendants' skillful manipulation and grant them the windfall of their misconduct. Rule 60(b)(3) operates as an equitable backstop against such measures to prevent the full and fair presentation of a case. The Court should not allow the Defendants to benefit from their ability to conceal their wrongdoing long enough to secure a dismissal.

### III. The Fraud on the Court Constitutes an Independent Equitable Basis to Set Aside the Judgment Under the Savings Clause of Rule 60(d)(3)

Even if this Court were to find that the dictates of Rule 60(b)(3) have not been satisfied, it still has the inherent equitable power to vacate the judgment under Rule 60(d)(3) based on the evidence of pervasive attorney misconduct and fraud on the court in both the criminal and family proceedings. This power is not constrained by the one-year time limit of Rule 60(c)(1) because it invokes the Court's fundamental authority to protect the integrity of the judicial process from deliberate corruption by officers of the court.

Plaintiff has presented clear and convincing evidence that the prosecutor, his own counsel, and the family court judicial officers engaged in an unconscionable plan to misrepresent the terms of the plea deal, conceal exculpatory evidence, disregard Plaintiff's due process rights, and weaponize the fraudulently obtained conviction to strip Plaintiff of his parental rights. This was not a mere "secret plan," but an overt conspiracy to

defile the integrity of the courts, both criminal and family, in pursuit of an unlawful and vindictive end.

The fact that the attorney misconduct spanned multiple cases and involved the collusion of the very judicial officers charged with ensuring the fairness of the proceedings renders this a particularly egregious fraud on the court. When judges and attorneys are active participants in tainting the process and concealing each other's misconduct, the very mechanisms designed to protect against fraud are compromised. Only through an independent equitable action under Rule 60(d)(3) can such pervasive corruption of the justice system be remediated.

The level of impropriety and the degree to which it infected these related cases rises to the level of a "grave miscarriage of justice" that cannot be permitted to stand, regardless of the timeframe involved. Pumphrey, 62 F.3d at 1133. If officers of the court can conspire to manipulate criminal and civil proceedings to destroy an individual's rights and then depend on the clock to run out on their malfeasance being discovered, then the judiciary's ability to police its own integrity is a dead letter.

This Court must exercise its inherent authority to declare that a fraud has been perpetrated upon it and upon the family court through the tainted plea deal and resulting orders. It matters not whether the time limit to assert a fraud on the court has passed, because the Court is empowered to vindicate the public interest in judicial integrity even after a judgment has become final. Levander, 180 F.3d at 1119. The misconduct here was so pernicious and corrupting that to leave the dismissal order undisturbed would be to abet the very fraud this Court is duty-bound to repudiate.

### IV. At Minimum, Plaintiff is Entitled to an Evidentiary Hearing and Leave to Amend to Present His Substantiated Claims

If the Court harbors any doubts about the sufficiency of the evidence to warrant outright vacatur of the dismissal under Rule 60, the seriousness of Plaintiff's allegations and the strength of the proof offered at least entitle him to an evidentiary hearing and the opportunity to amend his complaint. The evidence of attorney misconduct and judicial improprieties is too grave and too well-documented to be summarily discarded without further inquiry.

When a Rule 60 motion is predicated on allegations of fraud or misconduct that are not conclusively established by the existing record, courts routinely hold evidentiary hearings to assess witness credibility and weigh the import of the challenged actions. See United States v. Heller, 862 F.3d 1222, 1231 (11th Cir. 2017) ("[T]here is no hard and fast rule that evidentiary hearings are required for motions for relief from a final judgment filed pursuant

to Rule 60. Instead, Rule 60 motions may be decided without a hearing when the record is sufficiently developed."). Here, the record is replete with documentary evidence that substantiates Plaintiff's claims, but the full context and implications warrant further development through witness testimony.

At the very least, Plaintiff should be granted leave to amend his complaint to present these substantiated allegations of fraud and to request alternate forms of relief that would not run afoul of the constraints noted in the dismissal order. For example, rather than seeking specific performance of the plea agreement's custody terms, Plaintiff could request a declaratory judgment that the plea was fraudulently induced and constitutionally involuntary. Such a judgment would provide a predicate for challenging the conviction through appropriate habeas procedures while the family court issues are litigated.

It would be the height of inequity to dismiss Plaintiff's claims with prejudice based on deficiencies that only arose because critical evidence was withheld by the Defendants through their misconduct. Now armed with that evidence, Plaintiff deserves the chance to reformulate his allegations and prayer for relief to present a legally cognizable claim. Granting leave to amend under these circumstances would not be futile, as the Court's initial Rule 12(b)(6) analysis was fundamentally skewed by the Defendants' fraud and cannot be treated as a conclusive merits determination.

Federal Rule of Civil Procedure 15 embodies a liberal policy favoring amendments and the Supreme Court has cautioned that "this mandate is to be heeded." Foman v. Davis, 371 U.S. 178, 182 (1962). A pro se litigant in particular "must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995). The fact that Plaintiff has already documented ample evidence to support his claim of fraud is a powerful indicator that amendment would not be futile.

The Court's dismissal was grounded in legitimate concerns about the availability of the specific relief sought and the overlap with state proceedings. But those issues are wholly distinct from whether the complaint states any plausible constitutional claim at all under 42 U.S.C. § 1983. Plaintiff's evidence, including recorded admissions by the prosecutor's own investigator that the charges were baseless and driven by improper motives, more than satisfies the pleading standard to allege a due process violation. Denying leave to amend to present those allegations with a modified request for relief would be an unduly harsh application of the prior analysis to a fundamentally altered factual context.

At its core, the Defendants' position amounts to a cynical catch-22: first conceal the evidence Plaintiff needed to properly plead his claims, then argue his defective pleadings cannot be cured and should not be accepted when the deception is finally exposed. This is the very essence of using fraud to gain an unfair litigation advantage, which Rule 60 expressly forbids. If such institutional deprivation of access to the courts is permitted to stand, then the courthouse doors are truly closed to those victimized by official misconduct.

Plaintiff should not be punished for the Defendants' success in manipulating the contents of the record before this Court. He should be allowed to prove his case through discoverable evidence and witness testimony, not held to an impossible pleading standard based on information that was wrongfully withheld. Granting an evidentiary hearing and leave to amend would allow this Court to assess the true import of Plaintiff's claims through a proper adversarial process, not just the self-serving portrait presented by those with the most to hide.

### V. This Court Should Consolidate this Matter with Plaintiff's Related Cases and Convene a Three-Judge Panel to Address the Systemic Issues Presented

As the foregoing evidence makes clear, this case is not an isolated incident but part of a broader pattern of misconduct and disregard for fundamental rights by multiple state actors across the criminal and family court systems. The fact that Plaintiff has two other related federal actions pending that raise similar claims of corruption and constitutional violations (Emert v. San Diego County, No. 23-cv-0671-JO-NLS and Emert v. San Diego Family Court, No. 24-cv-0924-LL-AGS) only underscores the breadth of the problem and the need for coordinated federal intervention.

Plaintiff respectfully submits that the extraordinary nature of this case warrants consolidation of his three related actions and the convening of a three-judge district court panel under 28 U.S.C. § 2284. That statute provides for the appointment of such a panel when "otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a).

While this case does not fall into the specific categories enumerated in § 2284(a), the gravamen of Plaintiff's claims across all three actions is that the very machinery of the state's judicial apparatus, both criminal and civil, is being systematically wielded in an unconstitutional manner against those asserting disfavored rights. The sheer scope of the alleged violations and the fact that they implicate multiple levels of the state court system in a concerted deprivation of federal constitutional protections presents a question of

public importance comparable to the electoral issues that typically warrant the safeguards of a three-judge panel.

Indeed, the right of access to the courts and the right to familial association are no less fundamental than the right to vote, and their wholesale infringement by those charged with upholding them is no less a threat to democratic order than electoral malfeasance. The Supreme Court has long recognized that the family is "perhaps the oldest of the fundamental liberty interests" and that the Constitution protects the sanctity of the family "precisely because the institution of the family is deeply rooted in this Nation's history and tradition." Moore v. City of East Cleveland, 431 U.S. 494, 503 (1977). Surely a scheme to deprive an individual of those sacrosanct rights through the concerted misconduct of judicial officers is a matter of sufficient gravity and public concern to convene a three-judge panel.

The efficiency considerations alone militate strongly in favor of consolidation before a three-judge panel, as these cases present overlapping questions of law and fact that could spawn massive duplication of effort and potentially inconsistent rulings if left to proceed separately. The common thread of alleged institutional corruption and disregard for due process that runs through Plaintiff's criminal prosecution and family court ordeal is not amenable to piecemeal adjudication.

Appointing a three-judge panel to oversee the cases jointly would allow this Court to develop a coordinated strategy for managing discovery, crystallizing the key constitutional questions presented, and fashioning a comprehensive remedy that addresses any systemic violations. It would ensure consistency in the Court's analysis and obviate the risk of conflicting rulings that could further ensnare Plaintiff in the morass of a compromised state court apparatus.

The heightened level of adjudicative scrutiny and authority provided by a three-judge panel is also commensurate with the seriousness of Plaintiff's allegations and the correspondingly elevated burden of proof he must satisfy to obtain relief. If even a fraction of the misconduct and improprieties detailed in this motion is borne out through further discovery and hearings, it will establish a degree of entrenched malfeasance that strikes at the heart of the justice system's integrity. Convening a three-judge panel to oversee the cases would send an unmistakable signal of this Court's commitment to rooting out such practices and reaffirming the core precept of due process.

Plaintiff respectfully requests that, concurrent with granting reconsideration and vacating the dismissal under Rule 60, this Court exercise its authority to consolidate his related actions and convene a three-judge panel to adjudicate his claims through a robust and

comprehensive evidentiary process commensurate with the gravity of the issues presented. Only through such a proactive and unflinching assertion of federal judicial power can the systemic rot of institutionalized bias and misconduct in the state courts be remediated. The eyes of the public and the promise of the Constitution demand nothing less.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court vacate its prior order of dismissal under Rules 60(b)(3) and 60(d)(3) based on the newly presented clear and convincing evidence of fraud, attorney misconduct, and pervasive fraud on the court. The involvement of judicial officers and government lawyers in perpetrating a scheme to deprive Plaintiff of his fundamental constitutional rights through a coerced plea and corrupted family court proceedings requires the sternest possible response from this Court.

Plaintiff has more than satisfied the demanding standard for relief from judgment by documenting an intentional, strategic campaign of deception and concealment by those entrusted to administer justice. The fraud perpetrated here was designed to improperly influence multiple tribunals and strip an individual of his parental rights without due process through the coordinated abuse of the criminal and family court systems. It is difficult to imagine a more egregious corruption of the judicial process or a more direct assault on the integrity of the courts.

At minimum, Plaintiff is entitled to an evidentiary hearing to further substantiate his claims and the opportunity to amend his complaint to conform to the evidence of fraud. The interests of justice demand that the serious allegations of misconduct documented here be fully aired, not swept aside based on a record distorted by the Defendants' own malfeasance. If leave to amend is denied under these circumstances, it will reward the worst forms of sharp practice and send the message that there is no remedy for even the most outrageous acts of official oppression.

To properly address the scope of the misconduct and provide a comprehensive remedy, this Court should consolidate this case with Plaintiff's related actions and convene a three-judge panel to jointly manage the proceedings. The systemic nature of the violations and the evident need for robust federal oversight warrant the enhanced protections and coordinated case management that only a three-judge district court can provide. Plaintiff's allegations, if proven, establish a degree of entrenched disregard for basic rights that cannot be addressed through piecemeal, serial adjudications.

The cumulative evidence of fraud and corruption presented here is antithetical to the most elementary notions of due process and fundamental fairness. It reveals a system so stacked against disfavored litigants and so impervious to internal mechanisms of accountability that only the full force of federal court intervention can vindicate the supremacy of the Constitution and restore public faith in the courts. This is not a responsibility to be taken lightly, but it is one this Court is duty-bound to fulfill.

Justice brandeis famously warned that "in the frank expression of conflicting opinions lies the greatest promise of wisdom in governmental action." Myers v. United States, 272 U.S. 52, 293 (1926) (Brandeis, J., dissenting). But there can be no wisdom in turning a blind eye to the overt subversion of the judicial process, no prudence in allowing fraud to carry the day because the hour has grown late. The wisdom here lies in decisively confronting uncomfortable truths about a system that has lost its way, in boldly defending the right to be heard for those who have been silenced through cynical machinations.

The stakes in this case transcend the hardships of any one litigant. They implicate the very moral legitimacy of our system of justice. If the public cannot trust that the courts will adhere to due process and deal honestly with those who come seeking relief, then the rule of law itself is debased. The faith that sustains our judiciary depends on the conviction that behind the blindfold of lady justice, her eyes remain open to injustice.

This Court now stands as the last sentinel against that erosion of public trust, the final bulwark against the transformation of our temples of justice into citadels of misconduct. By granting the relief requested and shining the full light of judicial scrutiny on the fraud documented here, this Court can send a resounding message that ours remains a system of laws, not men, and that none are above the fundamental commands of due process.

Wherefore, Plaintiff prays this honorable Court grant his motion for reconsideration, vacate the order of dismissal, grant an evidentiary hearing, and permit leave to amend so that his claims may be justly and fully adjudicated. Plaintiff further requests that the Court consolidate this action with Case Nos. 23-cv-0671-JO-NLS and 24-cv-0924-LL-AGS and convene a three-judge panel to oversee the related proceedings and rectify the systemic abuses identified herein.

Respectfully submitted,

VERIFICATION
IT IS HEREBY ce1tified that the facts in the foregoing is true and correct under penalty of perjury to the best of my knowledge and belief. Attachments to this are true and correct copies of the items they purport to be.
Dated 09/10/24

*Rob Emert*
Rob Emert
2351 Vista Lago Terrace
Escondido California 92029
robemert@msn.com
(760) 612-9328

VERIFICATION

IT IS HEREBY ce1tified that the facts in the foregoing is true and correct under penalty of perjury to the best of my knowledge and belief. Attachments to this are true and correct copies of the items they purport to be.

Dated 09/10/24

*Rob Emert*

Rob Emert
2351 Vista Lago Terrace
Escondido California 92029
robemert@msn.com
(760) 612-9328

ELECTRONIC SERVICE

I, Glenda Emert certify that on 09/10/24, I served: PLAINTIFF'S MOTION FOR RECONSIDERATION UNDER FED. R. CIV. P. 60(b)(3) BASED ON FRAUD ON THE COURT to Austin Uhler at austin.uhler@sdcounty.ca.gov

I declare under penalty of pe1jmy under the laws of the State of California that the foregoing is true and correct.

*glenda emert*

Dated: 09/10/24

**EXHIBIT A:**

Case No.: 23-cv-230-RSH-AHG

RELATED CASES:

1. Case No. '24CV0671 JO MSB
2. Case No. '24CV0002AHGAGS

MOTION FOR RELIEF FROM JUDGMENT
AND LEAVE TO AMEND COMPLAINT

Grounds:
Fraud on the Court
Fed. R. Civ. P. 60(b)(3), 60(d)(3)
Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)
Pumphrey v. K.W. Thompson Tool Co., 62 F.3d 1128 (9th Cir. 1995)

Ongoing ADA Violations

Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12165
Tennessee v. Lane, 541 U.S. 509 (2004)
Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir. 2001)

Deprivation of Constitutional Rights
Fundamental Parental Rights: Troxel v. Granville, 530 U.S. 57 (2000)

Due Process Violations: People v. Superior Court (Lavi), 4 Cal.4th 1164 (1993)

First Amendment Retaliation: Sekiya v. Gates, 508 F.3d 1198 (9th Cir. 2007)

Void State Court Orders
Improperly Denied Peremptory Challenge: Cal. Civ. Proc. Code § 170.6
Estate of Eskra (1991) 51 Cal.3d 943

Irreparable Harm and Need for Immediate Relief

Nken v. Holder, 556 U.S. 418 (2009)
Inapplicability of Rooker-Feldman Doctrine
Kougasian v. TMSL, Inc., 359 F.3d 1136 (9th Cir. 2004)
Hoblock v. Albany County Board of Elections, 422 F.3d 77 (2d Cir. 2005)

Robert Emert

2351 Vista Lago Terrace

Escondido, CA 92029

760-612-9328



FILED

AUG 1 3 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____DEPUTY

### District Court of the United States

### Southern District of California

| | |
|---|---|
| **Robert Emert,**<br><br>　　　　　**Plaintiff,**<br><br>vs.<br><br><br>**Luis Pena et al.,** | **Case No.:  23-cv-230-RSH-AHG**<br><br>**MOTION FOR RELIEF FROM JUDGMENT AND LEAVE TO AMEND COMPLAINT**<br><br><u>Grounds:</u><br><br><u>Fraud on the Court</u><br>Fed. R. Civ. P. 60(b)(3), 60(d)(3)<br>Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)<br>Pumphrey v. K.W. Thompson Tool Co., 62 F.3d 1128 (9th Cir. 1995)<br><u>Ongoing ADA Violations</u><br>Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12165<br>Tennessee v. Lane, 541 U.S. 509 (2004)<br>Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir. 2001)<br><u>Deprivation of Constitutional Rights</u><br>Fundamental Parental Rights: Troxel v. Granville, 530 U.S. 57 (2000)<br>Due Process Violations: People v. Superior Court (Lavi), 4 Cal.4th 1164 (1993)<br><u>First Amendment Retaliation:</u> Sekiya v. Gates, 508 F.3d 1198 (9th Cir. 2007)<br><u>Void State Court Orders</u><br>Improperly Denied Peremptory Challenge: Cal. Civ. Proc. Code § 170.6<br>Estate of Eskra (1991) 51 Cal.3d 943<br><u>Irreparable Harm and Need for Immediate Relief</u><br>Nken v. Holder, 556 U.S. 418 (2009)<br>Inapplicability of Rooker-Feldman Doctrine<br>Kougasian v. TMSL, Inc., 359 F.3d 1136 (9th Cir. 2004)<br>Hoblock v. Albany County Board of Elections, 422 F.3d 77 (2d Cir. 2005) |

**RELATED CASES:**

**1. Case No. '24CV0671 JO MSB**

**2. Case No. '24CV0002AHGAGS**

Robert Emert

2351 Vista Lago Terrace

Escondido, CA 92029

760-612-9328


### District Court of the United States

### Southern District of California


| | |
|---|---|
| Robert Emert, | **Case No.:  23-cv-230-RSH-AHG** |
| Plaintiff, | **MOTION FOR RELIEF FROM JUDGMENT AND LEAVE TO AMEND COMPLAINT** |
| vs. | **Grounds:** |
| Luis Pena et al., | **Fraud on the Court** |

**Fraud on the Court**
Fed. R. Civ. P. 60(b)(3), 60(d)(3)
Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)
Pumphrey v. K.W. Thompson Tool Co., 62 F.3d 1128 (9th Cir. 1995)
**Ongoing ADA Violations**
Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12165
Tennessee v. Lane, 541 U.S. 509 (2004)
Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir. 2001)
**Deprivation of Constitutional Rights**
Fundamental Parental Rights: Troxel v. Granville, 530 U.S. 57 (2000)
Due Process Violations: People v. Superior Court (Lavi), 4 Cal.4th 1164 (1993)
**First Amendment Retaliation:** Sekiya v. Gates, 508 F.3d 1198 (9th Cir. 2007)
**Void State Court Orders**
Improperly Denied Peremptory Challenge: Cal. Civ. Proc. Code § 170.6
Estate of Eskra (1991) 51 Cal.3d 943
**Irreparable Harm and Need for Immediate Relief**
Nken v. Holder, 556 U.S. 418 (2009)
Inapplicability of Rooker-Feldman Doctrine
Kougasian v. TMSL, Inc., 359 F.3d 1136 (9th Cir. 2004)
Hoblock v. Albany County Board of Elections, 422 F.3d 77 (2d Cir. 2005)

**RELATED CASES:**

**1. Case No. '24CV0671 JO MSB**

**2. Case No. '24CV0002AHGAGS**

## Contents

INTRODUCTION ............................................................................................. 3

This motion, excluding exhibits, is limited to about ten pages. .......................... 9

LEGAL STANDARD .................................................................................... 10

ARGUMENT ................................................................................................. 10

I. The Rooker-Feldman Doctrine Does Not Bar This Court's Jurisdiction ........... 10

A. Fraud on the Court is an Independent Action ............................................ 10

B. ADA Claims Assert Independent Federal Rights ....................................... 11

C. Ongoing Violations Fall Outside Rooker-Feldman .................................... 11

II. Fraud on the Court Warrants Relief from Judgment ................................... 11

A. David Schulman (Opposing Counsel) - EXHIBIT B ................................. 11

B. Commissioner Patti Ratekin - EXHIBIT A ............................................. 12

C. Judge Lorna Alksne - EXHIBIT C ......................................................... 12

D. Judge Alana Robinson - EXHIBIT F ..................................................... 13

E. Deputy District Attorney Dawn Balerio - EXHIBIT D, E .......................... 14

F. District Attorney Investigator Luis Pena - EXHIBIT D, E ......................... 14

G. Child Psychologist Jesse Olague ........................................................... 14

III. ADA Violations and Continuing Harm ................................................... 15

ADA Claims Are Not Barred by Rooker-Feldman ........................................ 15

IV. Related Federal Cases and Request for Three-Judge Panel ....................... 16

CONCLUSION ............................................................................................. 16

Plaintiff respectfully requests that this Court: ................................................ 18

A. Evidence demonstrating Commissioner Ratekin's lack of jurisdiction following an improperly denied peremptory challenge. ................................. 21

B. Documentation showing the absence of evidence to support placing Plaintiff's son in a facility, despite concerted efforts by certain defendants to do so. ................................. 90

C. Records of Judge Alksne ignoring Commissioner Ratekin's fraud and disregarding Plaintiff's ADA requests and continuance request following a life-threatening heart attack. ................................. 334

D. Plaintiff's California Supreme Court habeas corpus petition, which details extensive fraud by the District Attorney's office. ..........................................................................370

E. A motion under California Penal Code §1424 documenting substantial misconduct by Deputy District Attorney Balerio and District Attorney Investigator Luis Pena...................453

F. Evidence of Judge Robinson's continued efforts to obstruct justice by focusing on procedural technicalities rather than addressing the substantive merits of the case, effectively toying with a pro se litigant..........................................................................477

**MOTION FOR RELIEF FROM JUDGMENT AND LEAVE TO AMEND COMPLAINT**

# INTRODUCTION

*Plaintiff Robert Emert, appearing pro se, respectfully moves this Court for relief from judgment pursuant to Federal Rules of Civil Procedure 60(b)(3) and 60(d)(3), and for leave to amend the complaint for case No.: 23-cv-230-RSH-AHG . While acknowledging this Court's previous dismissal based on the Rooker-Feldman doctrine, Plaintiff submits that newly discovered evidence of extensive fraud on the court and ongoing violations of the Americans with Disabilities Act (ADA) fall outside the scope of Rooker-Feldman and warrant reconsideration.*

*This motion is grounded in:*

*1. Newly discovered evidence of fraud on the court perpetrated by multiple actors in the state court proceedings, which constitutes an independent action not barred by Rooker-Feldman (Kougasian v. TMSL, Inc., 359 F.3d 1136 (9th Cir. 2004)).*

*2. Ongoing violations of the ADA, which assert independent federal rights not subject to Rooker-Feldman (Hoblock v. Albany County Board of Elections, 422 F.3d 77 (2d Cir. 2005)).*

*3. The principle that fraud on the court claims under Rule 60(d)(3) are not subject to traditional time limitations, as recognized in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944).*

This motion asserts claims of extensive fraud upon the court, which fall outside the scope of both the Rooker-Feldman doctrine and traditional immunity protections. As established in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944), fraud upon the court is a grave allegation that can render judgments void and is not subject to ordinary time limitations. This principle is particularly relevant here, where the alleged fraudulent actions have far-reaching implications for the integrity of the judicial process.

The Supreme Court has long recognized that fraud upon the court strikes at the very foundation of the judicial system. In Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir. 1985), the court defined such fraud as "fraud which is directed to the judicial machinery itself." Importantly, this type of fraud is not shielded by the immunities typically afforded to prosecutors and other officers of the court. As held in Demjanjuk v. Petrovsky, 10 F.3d 338, 352 (6th Cir. 1993), when prosecutors act fraudulently to present false evidence to the court, they step outside the bounds of their protected role and lose their claim to immunity.

The allegations presented herein, if proven, would constitute precisely this type of fraud upon the court. The actions of the District Attorney's office and other state actors go beyond mere prosecutorial misconduct or error; they represent a deliberate scheme to deceive the court and subvert the judicial process. Such actions, if substantiated, fall squarely outside the scope of any claimed immunity and demand the court's immediate attention and remedy.

Given the severity of these allegations and their potential to undermine the fundamental integrity of the judicial system, it is imperative that this Court exercise its inherent power to investigate and address fraud upon the court. This duty exists independently of the Rooker-Feldman doctrine and supersedes any claims of immunity by the alleged perpetrators. The Court not only has the authority but the obligation to examine these claims to preserve the integrity of the judicial process and ensure justice is served.

The fraud and ongoing violations detailed herein undermine the integrity of the judicial process, render the previous judgment void, and cause continuing irreparable harm to Plaintiff. These allegations represent independent claims not covered by the Rooker-Feldman doctrine, as they assert direct violations of federal law and the integrity of the judicial process itself.

Plaintiff recognizes the Court's previous ruling but respectfully submits that these new allegations fall outside the scope of that decision. As held in Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005), Rooker-Feldman is a narrow doctrine that does

*not bar claims asserting independent violations of federal rights. Therefore, Plaintiff seeks leave to amend to present these new claims, which are distinct from those previously dismissed.*

In two other separate but related cases ( 1.Case No. '24CV0671 JO MSB 2.Case No. '24CV0002AHGAGS) I have requested the cases to be consolidated, early discovery, an evidentiary hearing, and a three-judge panel as I will do in this case as well.  Because your Honor, Judge Huie, is familiar with this case, I hope he is one of the three judges assigned to oversee this case and the other two.  I simply want my day in court to present my evidence and bring my witnesses.  I have been terrorized by a broken system where a few spoil it for the rest for profit, divorce leverage and cronyism.

How is it possible that a dedicated and loving father gets zero parental rights and zero retirement account after a 14 year marriage during which for about the last ten years he was a dedicated stay-at-home dad and where he gave up a lucrative career and spent and was loaned from his family about 300k to provide for his family during a time crucial for young children?  The answer is fraud upon the court by divorce court insider thugs who simply work the system in a fraudulent manner and where some in the system simply looks the other way.

A particularly egregious example of fraud on the court was the concerted effort by Commissioner Ratekin, Attorney Dave Schulman, and Minor's Counsel Matt Cord to place Plaintiff's son in a 'facility' despite overwhelming evidence against such action. (EXHIBIT B) This push not only disregarded but actively suppressed professional opinions from the child's entire educational support team. Specifically:

1. All ten teachers on the child's IEP case management team unequivocally opposed facility placement. (Exhibit B)
2. The school principal explicitly designated the IEP case manager as the point of contact for any court-related matters concerning the child, emphasizing the importance of professional educational input. (Exhibit B)
3. Minor's Counsel Cord was provided with the IEP case manager's contact information, along with that of numerous other school professionals. Despite this, Cord deliberately failed to reach out to any of these qualified individuals. (Exhibit B)
4. Instead, Cord selectively contacted only one individual - a friend of Plaintiff's ex-wife - who predictably echoed the ex-wife's narrative, disregarding the wealth of professional opinions available. (Exhibit B)

5. This selective 'evidence gathering' by Cord directly contradicted the unified professional stance of the school staff, who supported Plaintiff's position regarding his son's best interests. (Exhibit B)

*The deliberate suppression of this crucial information from the court, coupled with the presentation of a single, biased viewpoint, clearly demonstrates a 'deliberately planned and carefully executed scheme to defraud' the court,* **meeting the standard for fraud on the court as established in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 245 (1944).**

Moreover, the subsequent retaliation against Plaintiff for exposing this misconduct in a public forum further underscores the fraudulent nature of these actions. This retaliation, not only violates Plaintiff's rights but also constitutes an attempt to cover up the initial fraud, compounding the offense against the integrity of the judicial process.  Petitioner was arrested under PC 278.5(a) despite a clear defense under PC 278.7 and held on no bail based on a "threat" that he was never charged with.  Within the habeas corpus (EXHIBIT D) and PC 1424 document (EXHIBIT E) the evidence is overwhelming that the arrest was malicious retaliation.  DAI Luis Pena says that if the case went to trial plaintiff would win; he did not understand why the DA took the case but assumed it was because the family court lawyers were pushing at their office to do so; and that defendant Matt Cord had simply lined up with Dave Schulman against the best interests of my son to put something together against me!  This is all in a recorded conversation that can't be disputed.

***This coordinated action represents a deliberate attempt to manipulate the judicial process for purposes contrary to the administration of justice and the best interests of the child. It goes beyond mere nondisclosure and rises to the level of 'an unconscionable plan or scheme which is designed to improperly influence the court in its decision,' as defined in Pumphrey v. K.W. Thompson Tool Co., 62 F.3d 1128, 1131 (9th Cir. 1995).***

My legal fiasco of fraud upon the court that has almost cost me my life and that has shattered my life that continues to cause irrepealable harm is simple to understand. (EXHIBIT B)  It's what I have come to know as what is called a "kids for cash" scam scenario in the divorce industry where divorce industry insiders pump families in crisis for as much money as they can and wreak havoc on families at their most desperate hour.  For almost two years, child custody was set at 50/50 as determined by two judges, 3 family court services reports and two child interviews performed by family court services.  Then, the same day per the register of actions, retired Comm. Patti Ratekin takes the case.  There was some odd commotion where at least two other judges sat to hear the case this day

momentarily.  Then Ratekin sits down to take the case and over the course of about 15 minuets ultimately says she does not have time to hear arguments on this day but makes an alarming comment saying that my son belongs in a residential type living facility simply because he wants to mostly live with me who mostly raised him.  This unfounded notion is so alarming that because no arguments were heard, or orders made (this is in the court transcript) I filed my peremptory challenge according to the rules of court the next day and Ratekin brazenly denied it saying that a verbal stipulation was given.  Ratekin and everyone else knows given the scenario, law, and case law make that statement ridiculously irrelevant.  Over the course of the next six months, I filed about five recusal motions due to other blatant violations and ethical breaches of Ratekin.  Dave Schulman, opposing counsel, instructs his client to try to have me arrested for DV which backfired, and Andrea Schuck was the one arrested for DV.  Dave Schulman was aware that Ratekins supervising judge's wife worked with and was friends with Andrea Schuck and that they were getting preferential treatment due to that fact.  Ratekin simply ignores these alarming facts.  Dave Schulman has lied to this court about when the whole "facility" narrative was initiated in a federal pleading that is in the exhibits.  When reviewing the facts (court transcripts) any reasonable person will see it was initiated only when Ratekin took the case and with zero evidence brought up the facility narrative.  Schulman said that the facility narrative was only brought up after a psychologist suggested it which is another lie as I was never given any report or evidence that remotely suggested it and in fact, all the evidence from my sons school was the exact opposite.  The fact that Ratekin illegally held onto this case and denied a peremptory challenge simply speaks for itself.  Ratekin then brings in minor counsel to rubber stamp her narrative and they do just that.  Matt Cord for my son who is 17 now and simply wants to come home to me and Catie Young for my daughter who is 15 now and is completely alienated from me.  Great job Dave Schulman who I know is mainly responsible with his extensive connections in San Diego who cover for his moral turpitude.  After only meeting my son two times, Matt Cord signs off on the facility narrative.  My son files a police report and TRO against Matt Cord.  He of course meets with the police and the court SEPRATELY AND WITHOUT ME! My x wife, Andrea Schuck, brings in an out of insurance network psychologist (JESSE OLAGUE) recommended by Dave Schulman (who worked right across the street from Dave Schulman) and he signs off on the facility narrative.  I have a witness affidavit that proves fraud of this child psychologist. Before I realized I was the sucker at the poker table in this farce and a sham of proceedings, I asked my daughter's attorney what the heck is going on and asked her for help and she said this is above her pay grade and that I should just let these vultures place my son in a facility for a while.  Again, Ratekin ignores all these facts and even more extensive and detailed facts from people at the school who say a "facility" for my son is completely inappropriate!!  I

write motions to Judge Alknse for assistance.  Almost all of the before mentioned evidence can be briefly seen in EXHIBIT B.

While this will be discussed further in, I have an audio recording from DA Investigator Luis Pena where he says that Matt Cord simply was lining up with Dave Schulman and NOT in my son's best interests and they were trying to put something together against me for " pissing them off".  (EXHIBIT D) So, we are about five months in with Ratekin hearing the case, who should not be for lack of jurisdiction (EXHIBIT A) and this RICO group of family court thugs are terrorizing me and my children that give me a massive heart attack when I see they will not relent until my son is in a facility.  In the court transcript, I call Ratekin out for fraud upon the court, and she recuses but she throws in a sucker punch of "supervised visitation" based only on the witness affidavit that called out fraud of the child psychologist.  (EXHIBIT B) There is so much wrong going on but that by itself should get Ratekin disbarred.  Then, retired Judge Alknse takes over the case and I simply ask Alksne to let me have an evidentiary hearing to bring witnesses and evidence (something to this day in both the family and criminal courts I have not had!!) and she says no and proceeds to take everything from me that she can.  She was a child having a tantrum because she was aware that I had every legal right to protect my son from abuse under legal necessity/PC 278.7.  (EXHIBIT C) I reached out to the DA, the police, CPS, schools, and everyone told me that nobody would drag a 15 year old away from the parent he wanted to live with given the scenario.  (EXHIBIT B) Alknse ignores all of Ratekins violations, ignores my ADA requests, does not let me remote access into four hearings and my own trial during COVID times and right after I almost died of a widow maker heart attack.  (EXHIBIT C) All interested parties saw me in the hospital because I logged in on teams, offered to put my surgeon on the phone and even sent over a doctor's letter to the clerk of the court.  This is all in the court record, but opposing counsel still says "alleged" heart attack when they have been given all the medical records and were there the day I was in the ER recovering. Then, Judge Robinson takes the case and toys with a pro se litigant with procedure ways to simply block me getting any justice.  (EXHIBIT F) Then, in comes the San Diego DA's office where DAI Luis Pena said that the DA should never have taken this case but because the divorce court insiders were hounding their cronies that he was getting pressure to file criminal charges but he did not believe that criminal charges were the correct course of action; I would win the case if it went to trial; and about 30 other ways that said I was not acting wrong.  (EXHIBITS D, E) However, the coward then succumbed to pressure, filed for my arrest, and committed perjury as can be easily seen by email and audio recording, I had with him.  DAI Pena withheld this phone call from discovery and evidence.  (EXHIBIT D, E) But, the problem was is that I was in jail held on NO BAIL based on a "threat" that was determined to not be a threat and where DDA Balerio sat on that exculpatory evidence to

coerce a guilty plea.  (EXHIBIT D,E) I only took a guilty plea because I was told that my son could come home and the well-being of my children has been what I have been fighting for and my place as their father in their lives.  (SEE RELATED LAWSUIT 1.Case No. '24CV0671 JO MSB 2.Case No. '24CV0002AHGAGS) These thugs have lied and committed perjury to such a degree it is truly a mockery of our justice system, and the issue is they know I have the evidence to prove it so I have been denied the most basic of due process and a basic evidentiary hearing to bring my evidence and witnesses in almost 4 years now.  I have extensive emails and audio phone recordings between me and almost everyone that proves what I am saying is true and they all know it!! I would assume they simply hope I die, or they will drum up some other nonsense to throw me back in jail **so one of my requests to this court will be to stay the lower court from doing so until these cases have been finally heard on their merits in federal court.**

# This motion, excluding exhibits, is limited to about ten pages.

However, it is accompanied by extensive exhibits that provide substantial evidence and factual support for the claims presented herein. These exhibits, which will be referenced throughout this motion, include but are not limited to:

A. Evidence demonstrating Commissioner Ratekin's lack of jurisdiction following an improperly denied peremptory challenge.

B. Documentation showing the absence of evidence to support placing Plaintiff's son in a facility, despite concerted efforts by certain parties to do so.

C. Records of Judge Alksne ignoring Commissioner Ratekin's fraud and disregarding Plaintiff's ADA requests and continuance request following a life-threatening heart attack.

D. Plaintiff's California Supreme Court habeas corpus petition, which details extensive fraud by the District Attorney's office.

E. A motion under California Penal Code §1424 documenting substantial misconduct by Deputy District Attorney Balerio and District Attorney Investigator Luis Pena.

F. Evidence of Judge Robinson's continued efforts to obstruct justice by focusing on procedural technicalities rather than addressing the substantive merits of the case, effectively toying with a pro se litigant.

These exhibits provide crucial context and evidence that can be readily verified in a court of law. They form an integral part of this motion and will be referenced throughout to

substantiate the claims of fraud, misconduct, and ongoing constitutional violations. A complete list of exhibits is provided at the end of this document, with the full exhibits attached thereafter.

The Court is respectfully urged to review these exhibits in conjunction with the arguments presented in this motion, as they provide compelling evidence of the need for the relief sought and the urgency of the situation at hand. These documents collectively demonstrate fraud upon the court in a pattern of judicial misconduct, prosecutorial overreach, and systematic denial of due process that strikes at the very heart of our justice system.  In both the family and criminal courts, I still have never been granted a simple evidentiary hearing!

# LEGAL STANDARD

Federal Rule of Civil Procedure 60(b)(3) allows relief from a final judgment for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Rule 60(d)(3) further preserves the Court's power to "set aside a judgment for fraud on the court." The Supreme Court has long recognized the inherent power of federal courts to vacate judgments obtained through fraud upon the court. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944).

Fraud upon the court is defined as "an unconscionable plan or scheme which is designed to improperly influence the court in its decision." England v. Doyle, 281 F.2d 304, 309 (9th Cir. 1960). It involves conduct that "harm[s] the integrity of the judicial process" and is "directed to the judicial machinery itself." United States v. Sierra Pacific Industries, Inc., 862 F.3d 1157, 1167-68 (9th Cir. 2017).

# ARGUMENT

I. The Rooker-Feldman Doctrine Does Not Bar This Court's Jurisdiction

The Rooker-Feldman doctrine does not apply to the claims presented in this motion for three key reasons:

A. Fraud on the Court is an Independent Action

Fraud on the court is an independent action that federal courts have inherent power to investigate and address, regardless of the origin of the underlying case. In Kougasian v. TMSL, Inc., 359 F.3d 1136, 1141 (9th Cir. 2004), the Ninth Circuit held that Rooker-Feldman

does not apply to a plaintiff's action when he asserts that extrinsic fraud prevented him from presenting his federal claims in state court. The fraud alleged here similarly prevented Plaintiff from fully presenting his claims in state court.

## B. ADA Claims Assert Independent Federal Rights

ADA claims assert rights under federal law and are not an appeal of state court judgments, placing them outside the scope of Rooker-Feldman. As the Second Circuit noted in Hoblock v. Albany County Board of Elections, 422 F.3d 77, 87 (2d Cir. 2005), the doctrine does not bar "claims that would be identical even had there been no state-court judgment." The ADA claims here would exist regardless of the state court judgment.

## C. Ongoing Violations Fall Outside Rooker-Feldman

The violations constitute ongoing and continuous infringements of federal rights, causing irreparable harm. Federal courts have jurisdiction to address such ongoing violations. In Kovacic v. Cuyahoga County Department of Children and Family Services, 606 F.3d 301, 309 (6th Cir. 2010), the court held that Rooker-Feldman does not apply to claims asserting "independent rights" or "future unconstitutional actions." I have been terrorized with unlawful imprisonment, titled a felon and my son is being held hostage who simply wants to come home. Irreparable harm is an understatement.

## II. Fraud on the Court Warrants Relief from Judgment

The following actions, individually and collectively and not even a complete list by any means, constitute fraud on the court warranting relief under Rules 60(b)(3) and 60(d)(3):

## A. David Schulman (Opposing Counsel) - EXHIBIT B

1. Colluded with Commissioner Ratekin and Matt Cord to place my son in a facility against the best interests of my son and actively tried to suppress evidence to the exact opposite from the people appointed at the school to coordinate with the court. This clearly demonstrates a 'deliberately planned and carefully executed scheme to defraud' the court, meeting the standard for fraud on the court as established in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 245 (1944).

2. Misrepresented facts to the court, including false statements about custody arrangements and Plaintiff's fitness as a parent. Dave Schulman was aware that retired Comm. Patti Ratekins supervising judge's wife worked with and was friends with defendant Andrea Schuck and plaintiff x wife.

3. Exploited Plaintiff's medical condition to gain unfair advantage, violating ethical standards and constitutional rights to a fair trial.  Dave Schulman was provided with all plaintiff medical information and plaintiff simply requested remote hearings and or a brief continuance.  Dave Schulman and other defendants simply railroaded through proceedings while plaintiff was in medical crisis and covered under the ADA.

**Evidence:** Recorded conversations between plaintiff and Schuck; extensive emails showing; court transcripts demonstrating inconsistent statements; DAI Pena saying straight up that Matt Cord had aligned with Dave Schulman and NOT in my son's best interests.

B. Commissioner Patti Ratekin  - EXHIBIT A

1. Improperly denied peremptory challenge, violating California Code of Civil Procedure §170.6 and due process rights.

2. Acted without jurisdiction after challenge, rendering all subsequent orders void. (See People v. Superior Court (Lavi), 4 Cal.4th 1164, 1171 (1993))

3. Exhibited clear bias and prejudgment, violating judicial canons and due process rights.

4. Issued retaliatory orders after recusal, exceeding jurisdiction and violating ethical standards.

5. The deliberate suppression of the crucial evidence that my son did NOT belong in a facility and against her narrative, clearly demonstrates a 'deliberately planned and carefully executed scheme to defraud' the court, meeting the standard for fraud on the court as established in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 245 (1944).

**Evidence:** Court records showing timely filing of peremptory challenge; transcripts demonstrating extreme bias; post-recusal orders showing retaliation; the constant requests for me to present my evidence and submitting my evidence that was continually ignored.  The court transcripts where it is obvious that Ratekin is trying to shut down my sons IEP case manager in giving her opinion regarding my son.

C. Judge Lorna Alksne - EXHIBIT C

1. Ignored motions to disqualify Ratekin, violating supervisory duties under CCP 128(a)(8) and 170.1.

2. Denied due process by refusing remote appearances during medical emergency, violating ADA and OR AT A MINIMUM granting a brief continuance after medical emergency under California Rule of Court 3.1332.

3. Entered improper default judgment during Plaintiff's medical incapacitation, violating due process rights established in Peralta v. Heights Medical Center, Inc., 485 U.S. 80 (1988).

4. And, like the others, a complete and deliberate suppression of the crucial information regarding the best interests of my son clearly demonstrates a 'deliberately planned and carefully executed scheme to defraud' the court, meeting the standard for fraud on the court as established in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 245 (1944).

**Evidence:** Motions to disqualify Ratekin; medical records and ADA accommodation requests; court records of default judgment; court transcripts to show I simply asked for my day in court with an evidentiary hearing before and not after the court wanted to infringe on my most basic of constitutional rights.  After my massive heart attack that has only about a 6% survival rate and that Alknse was provided all the medical documentation for this, she still railroaded through four hearing and a trial within a month and this is the default judgment that the lower court is white knuckling because they know that a fair and impartial judge is going to overturn this farce and a sham of proceedings.


D. Judge Alana Robinson - EXHIBIT F

1. Improperly claimed lack of jurisdiction to avoid addressing default judgment, violating the duty to hear jurisdictional matters under Mowrer v. Superior Court, 3 Cal.App.5th 1262 (2016).

2. Delayed rulings, obstructing access to justice in violation of due process rights.

3. Misapplied CCP 473(b) regarding timeliness, ignoring the relation back doctrine established in Austin v. Massachusetts Bonding & Insurance Co., 56 Cal.2d 596 (1961).

4. And, like the others, a complete and deliberate suppression of the crucial information regarding the best interests of my son clearly demonstrates a 'deliberately planned and carefully executed scheme to defraud' the court, meeting the standard for fraud on the court as established in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 245 (1944).

**Evidence:** Court records showing jurisdictional claims; docket demonstrating delays; motions and rulings related to her toying with a pro se litigant regarding CCP 473(b) and jurisdiction.

E. Deputy District Attorney Dawn Balerio - EXHIBIT D, E

1. Withheld exculpatory evidence, violating Brady v. Maryland, 373 U.S. 83 (1963).

2. Misrepresented evidence to secure detention, violating due process and Fourth Amendment rights.

3. Coerced guilty plea under false pretenses, violating Fifth and Sixth Amendment rights.

**Evidence:** Withheld FBI reports; transcripts of phone calls between me my x wife (Andrea Schuck) and my x attorney (Jose Badillo) regarding the plea agreement that DDA Balerio is trying to say never happened; recorded conversations between her and my son that she withheld from evidence and even worse, misrepresented to the court.

F. District Attorney Investigator Luis Pena - EXHIBIT D, E

1. Made false statements in arrest warrant affidavit, violating Fourth Amendment rights under Franks v. Delaware, 438 U.S. 154 (1978).

2. Withheld exculpatory evidence, violating Brady v. Maryland, 373 U.S. 83 (1963).

3. Admitted case lacked merit but proceeded due to pressure, demonstrating bad faith prosecution.

**Evidence:** Contradictions between affidavit and audio recorded statements and emails; withheld evidence favorable to Plaintiff; recorded admissions of case's lack of merit.

G. Child Psychologist Jesse Olague

1. Like the others, a complete and deliberate suppression of the crucial information regarding the best interests of my son clearly demonstrates a 'deliberately planned and carefully executed scheme to defraud' the court, meeting the standard for fraud on the court as established in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 245 (1944).

**Evidence:** recorded audio conversations proving what I claim; recorded conversations with an employee from the company where Jesse Olague works that knew there was something wrong with how my son and I were being treated by Jesse Olague; witness affidavits that simply say that Jesse Olague is a fraud who said he would not get involved in anything court related and then did just that. He is out of insurance network and was right

across the street getting a bunch of business from Dave Schulman.  What a scam and con man!

# III. ADA Violations and Continuing Harm

The systematic denial of ADA accommodations constitutes an ongoing violation of federal law. Specific violations include:

1. Denial of remote hearing requests despite documented medical conditions, violating 28 C.F.R. § 35.160(b)(1).
2. Failure to provide an ADA coordinator to assist with administrative tasks, contrary to 28 C.F.R. § 35.107(a).
3. Refusal to grant continuances for medical reasons, violating California Rules of Court, Rule 3.1332.
4. Entering default judgments without accommodating Plaintiff's disability, violating due process rights.

These actions directly contravene the Supreme Court's ruling in Tennessee v. Lane, 541 U.S. 509 (2004), which held that Title II of the ADA applies to state court proceedings. The Ninth Circuit in Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir. 2001), further established that failure to provide reasonable accommodations in court proceedings violates the ADA.

The ongoing nature of these violations causes irreparable harm to Plaintiff's ability to access justice and exercise his fundamental rights as a parent. Each day of continued separation from his children due to these ADA violations compounds this harm.

ADA Claims Are Not Barred by Rooker-Feldman

The ADA claims presented in this case are not subject to the Rooker-Feldman doctrine for several reasons:

- Independent Federal Rights: ADA claims assert rights under federal law and are not an appeal of state court judgments, placing them outside the scope of Rooker-Feldman. As the Second Circuit noted in Hoblock v. Albany County Board of Elections, 422 F.3d 77, 87 (2d Cir. 2005), Rooker-Feldman does not bar 'claims that would be identical even had there been no state-court judgment.'

- Ongoing Violations: The ADA violations alleged here constitute ongoing and continuous infringements of federal rights, causing irreparable harm. Federal courts have jurisdiction to address such ongoing violations, as recognized in Kovacic v. Cuyahoga County Department of Children and Family Services, 606 F.3d 301, 309 (6th Cir. 2010).

- Prospective Relief: The ADA claims seek prospective relief to address ongoing violations, which is distinct from asking this Court to review and reject a state court judgment.

- Ninth Circuit Precedent: In Mothershed v. Justices of Supreme Court, 410 F.3d 602, 606 (9th Cir. 2005), the Ninth Circuit held that Rooker-Feldman does not bar a plaintiff from bringing a federal action to assert federal rights that state courts may have failed to recognize.

Therefore, this Court has jurisdiction to hear and decide the ADA claims presented in this case, regardless of any related state court proceedings.

IV. Related Federal Cases and Request for Three-Judge Panel

Plaintiff has two related federal cases pending: [24CV0671 JO MSB] and [24CV0002AHGAGS]. In those cases, Plaintiff has requested review by a three-judge panel pursuant to 28 U.S.C. § 2284. The complexity of the constitutional issues involved, the allegations of systemic misconduct, and the interrelated nature of these cases justify such a panel, as recognized in Shapiro v. McManus, 577 U.S. 39 (2015).

# CONCLUSION

The extensive fraud on the court, ADA violations, and ongoing infringement of constitutional rights detailed above warrant relief from the previous judgment and justify amendment of the complaint. These claims are not barred by Rooker-Feldman and represent independent violations of federal law that this Court has the power and duty to address.

**V. Urgency of Relief and Ongoing Irreparable Harm**

The fraud on the court and ongoing ADA violations continue to cause daily, irreparable harm to Plaintiff and his children. Specifically:

1. Ongoing separation from children without due process, violating fundamental parental rights recognized in Troxel v. Granville, 530 U.S. 57 (2000).

**2. Continued enforcement of void orders stemming from improperly denied peremptory challenge, per Woodman v. Superior Court, 196 Cal.App.3d 407 (1987).**

3. Denial of meaningful access to court proceedings due to unaddressed ADA violations.

4. Ongoing criminal consequences based on a coerced plea agreement. Case, 24CV0002AHGAGS

As the Supreme Court noted in Elrod v. Burns, 427 U.S. 347 (1976), '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.' The same principle applies to the fundamental rights at stake here. Every day that passes under these fraudulently obtained and constitutionally infirm judgments compounds the irreparable harm to Plaintiff and his children.

This ongoing harm, coupled with the newly discovered evidence of fraud, justifies immediate action by this Court to prevent further injustice and protect Plaintiff's constitutional rights.

**Moreover, it is crucial to recognize that Plaintiff's current predicament stems directly from his role as a whistleblower who exposed unethical practices within the divorce court system.**

As evidenced by the recorded statement of District Attorney Investigator Luis Pena, Plaintiff is facing retaliation from divorce court insiders who got caught with their hand in the cookie jar and are now simply "pissed off'." This retaliation against a whistleblower not only violates Plaintiff's rights but also threatens the integrity of the entire judicial system by discouraging others from reporting misconduct.

*Of paramount importance is the fact that the improper and illegal denial of Plaintiff's properly filed peremptory challenge on 02/08/20 renders all subsequent orders and judgments void ab initio. As established in People v. Superior Court (Lavi), 4 Cal.4th 1164, 1171 (1993), when a peremptory challenge is erroneously denied, all subsequent orders and judgments by the challenged judicial officer are void. This principle extends to judgments that rely on these void orders, as affirmed in Estate of Eskra (1991) 51 Cal.3d 943.*

The default judgment of 11/29/21, which forms the basis of the ongoing deprivation of Plaintiff's rights, stems directly from this chain of void orders following the improperly denied peremptory challenge. **As such, this Court not only has the authority but the**

**duty to examine this foundational issue and stay the enforcement of this fundamentally flawed judgment. The California Supreme Court in People v. American Contractors Indemnity Co. (2004) 33 Cal.4th 653 emphasized that void judgments can be challenged at any time, providing further justification for this Court's intervention.**

The gravity of these allegations and the ongoing nature of the harm necessitate swift and decisive action by this Court. The cumulative effect of the fraud on the court, ADA violations, deprivation of constitutional rights, and retaliation against a whistleblower has resulted in a manifest injustice with fraud upon the court that strikes at the heart of our judicial system's integrity. This Court has not only the authority but the duty to address these egregious violations and provide the requested relief.

WHEREFORE, given the urgency of the situation, the ongoing irreparable harm, and the fundamental invalidity of the underlying state court proceedings,

## Plaintiff respectfully requests that this Court:

1. Grant relief from the previous judgment under FRCP 60(b)(3) and 60(d)(3);

2. Grant leave to amend the complaint to include these fraud allegations and ADA claims;

3. Recognize that these claims are not barred by the Rooker-Feldman doctrine;

4. Consider the ongoing nature of the alleged civil rights violations and the irreparable harm caused;

5. If granted, consolidate this case with related federal cases [24CV0671 JO MSB] and [24CV0002AHGAGS] for review by a single three-judge panel;

7. Grant an expedited hearing to address these urgent matters and prevent further irreparable harm;

8. Recognize and address the retaliation against Plaintiff as a whistleblower, which threatens the integrity of the judicial process;

***9. Immediately review the improper denial of Plaintiff's 02/08/20 peremptory challenge and issue an order staying the enforcement of the 11/29/21 default judgment and all subsequent orders that rely on it, recognizing their voidness under California and Federal law;***

10. Issue a temporary stay of all related lower court proceedings until the peremptory challenge can be evaluated, including any potential actions that could result in Plaintiff's incarceration, until this Court has fully adjudicated the federal claims presented herein.

This stay is necessary to prevent further retaliation, protect Plaintiff's constitutional rights, and preserve this Court's ability to provide effective relief.

These additional stays are crucial not only to prevent additional retaliatory measures but also to recognize the fundamental invalidity of the state court proceedings stemming from the improperly denied peremptory challenge. As the Supreme Court noted in Nken v. Holder, 556 U.S. 418, 426 (2009), a stay "ensure[s] that courts do not [...] deprive litigants of the opportunity to obtain a decision on the merits of their claims." In this case, these stays are essential to preserve this Court's ability to render a meaningful decision on the serious constitutional and federal law violations alleged, as well as to address the foundational issue of the void state court judgments.

The interests of justice, the integrity of the judicial process, the protection of fundamental constitutional rights, the safeguarding of whistleblowers, and the recognition of void judgments demand no less than full and immediate consideration of these claims.

## VERIFICATION

IT IS HEREBY certified that the facts in the foregoing is true and correct under penalty of perjury to the best of my knowledge and belief. Attachments to this are true and correct copies of the items they portray to be. Dated 08/12/24

Rob Emert
2351 Vista Lago Terrace
Escondido California 92029
robemert@msn.com
(760) 612-9328

## EXHIBITS

 A. Evidence demonstrating Commissioner Ratekin's lack of jurisdiction following an improperly denied peremptory challenge.

B. Documentation showing the absence of evidence to support placing Plaintiff's son in a facility, despite concerted efforts by certain defendants to do so.

C. Records of Judge Alksne ignoring Commissioner Ratekin's fraud and disregarding Plaintiff's ADA requests and continuance request following a life-threatening heart attack.

D. Plaintiff's California Supreme Court habeas corpus petition, which details extensive fraud by the District Attorney's office.

E. A motion under California Penal Code §1424 documenting substantial misconduct by Deputy District Attorney Balerio and District Attorney Investigator Luis Pena.

F. Evidence of Judge Robinson's continued efforts to obstruct justice by focusing on procedural technicalities rather than addressing the substantive merits of the case, effectively toying with a pro se litigant.

A. Evidence demonstrating Commissioner Ratekin's lack of jurisdiction following an improperly denied peremptory challenge.

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | ) | |
| | ) | Appellate:D079955 |
| Plaintiff and Respondent, | ) | |
| | ) | (Superior Court |
| v. | ) | No. 19FL010852N |
| | ) | |
| Robert Emert | ) | |
| | ) | |
| Defendant and Appellant. | ) | |
| | ) | |

PETITION FOR REVIEW

*Fourth Appellate District, Division 1*
*Court of Appeal Case number: D079955 in the marriage*
*of Rob Emert and Andrea Schuck*

Robert Emert 2351 Vista Lago Terrace, Escondido, CA 92029 760-612-9328 robemert@msn.com
Self Represented

Document received by the CA Supreme Court.

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | ) |
| | ) Appellate:D079955 |
| Plaintiff and Respondent, | ) |
| | ) Superior Court |
| v. | ) No. 19FL010852N |
| | ) |
| Robert Emert | ) |
| | ) |
| Defendant and Appellant. | ) |
| | ) |

PETITION FOR REVIEW

TO THE HONORABLE TANI CANTIL-SAKAUYE, CHIEF JUSTICE, AND  TO THE HONORABLE ASSOCIATE JUSTICES OF THE SUPREME COURT OF THE STATE OF CALIFORNIA:

Pursuant to Rule 8.500, California Rules of Court, **Rob Emert** defendant and appellant, hereby petitions this Court to grant review of the decision of the Court of Appeal for the 4th Appellate District, Division 1, filed on 02/14/24, which affirmed *his* denial of a rehearing request dated 01/30/24 and and attached appendix G.  A copy of the opinion of the Court of Appeal is attached as appendix "I".

Document received by the CA Supreme Court.

# Contents

**TABLE OF AUTHORITIES** ...................................................................................... 4

**Rob Emert affidavit to the honorable court regarding page number and word count according to the California Supreme Court Rules of Court.**............................................ 7

**I. Introduction**........................................................................................................... 8

**II. Issues Presented for Review / Statement of Issues**........................................... 9

**III. Statement of the Case** ...................................................................................... 10

**IV. Legal Argument** ............................................................................................... 15

**V. Prayer for Relief** ............................................................................................... 23

**VI. Conclusion** ....................................................................................................... 24

**VII. Certificate of Word Count** ............................................................................. 27

**VIII. CERTIFICATE OF TRUTH** ......................................................................... 28

**VIIII. CERTIFICATE OF ELECTRONIC SERVICE**............................................. 28

**X. NOTICE OF INTENT TO LODGE DOCUMENTS** .......................................... 29

**XI. Appendix**.......................................................................................................... 35

**A. Bryce Emert affidavit.  Bryce is now almost 17 and simply wants to go home.** ........ 36

**B. Peremptory Challenge filed timely and before any orders made or arguments heard along with the improper denial. This was Monday 02/08/21.** ...................................... 38

**C. Retired Commissioner Patti Ratekin indicated in the court transcript that she did not have time to hear arguments on this case on this day she took the case. This was Thursday, 02/04/21.** ................................................................................................. 41

**D. Retired Commissioner Patti Ratekin with no notice to me switches duties from a "commissioner" to a "temporary judge" and was already working outside of jurisdiction due to the properly filed peremptory challenge filed 02/08/21.  This "temp judge" notice was slipped in on 02/25/21.**................................................................. 42

**E. Email to Ms. Ratekin's clerk that I was indeed in the ER recovering from a widow maker heart attack caused by her and her cronies terrorizing me and my children after two years of a 50/50 scenario by two judges 3 FCS reports and 2 FCS child interviews. This was on Thursday, 09/30/21.** ............................................................................... 45

**F. On 10/04/21, Ms. Ratekin finally recuses but throws in an order of supervised visitation based on a witness affidavit who was simply providing testimony regarding**

**the child psychologist.  This has zero to do with child custody and everything to do with malicious retaliation of Ms. Ratekin because this witness affidavit was going against the narrative of what Ratekin had been trying to do for the prior six month of putting my son in a "facility" for profit, divorce leverage and cronyism.**......................47

**G.Appellate court denial of rehearing motion**............................................................51

**H.Conformed copy of motion to rehear**- removed already part of the record....................53

**I.Denial opinion of rehearing**......................................................................54

**J. 03/30/21 hearing where all my parental legal rights are snaked away with zero clear and convincing evidence of unfitness.**........................................................................61

# TABLE OF AUTHORITIES

**Cases**

**Catchpole v. Brannon (1995) 36 Cal.App.4th 237**...........................................3, 4

**Dodson v. J. Pacific, Inc. (2007) 154 Cal.App.4th 931**....................................8

**Fewel v. Fewel (1943) 23 Cal.2d 431**............................................................2

**Hall v. Superior Court (1988) 197 Cal.App.3d 1192**.......................................4, 7

Document received by the CA Supreme Court.

In re B.G. (1974) 11 Cal.3d 679.....................................................................5

In re Marriage of Carlsson (2008) 163 Cal.App.4th 281...............................8, 10

In re Mark L. (1983) 34 Cal.3d 171.................................................................2

In re Richard W. (1979) 91 Cal.App.3d 960.....................................................7

Johnson v. Superior Court (1958) 50 Cal.2d 693.............................................3

Moore v. Dempsey (1923) 261 U.S. 86............................................................9

Omaha Indemnity Co. v. Superior Court (1989) 209 Cal.App.3d 1266.................9

People v. Tijerina (1969) 1 Cal.3d 41.............................................................2

Rochin v. California (1952) 342 U.S. 165.........................................................9

Rollins v. Superior Court (1963) 223 Cal.App.2d 219.......................................9

Santosky v. Kramer (1982) 455 U.S. 745........................................................9

Document received by the CA Supreme Court.

**Smith v. Lewis (1975) 13 Cal.3d 349**......................................................................**10**

**Solberg v. Superior Court (1977) 19 Cal.3d 182**.....................................................**3**

**Stephens v. Superior Court (2002) 30 Cal. 4th 1082**...............................................**1**

**Troxel v. Granville (2000) 530 U.S. 57**.....................................................................**5, 9**

**Varjabedian v. City of Madera (1977) 20 Cal.3d 285**...............................................**10**

**Statutes**

**Cal. Code Civ. Proc. §170.1**......................................................................................**4**

**Cal. Code Civ. Proc. §170.4**......................................................................................**6**

**Cal. Code Civ. Proc. §170.6**......................................................................................**1, 3, 4**

**Rules**

**Cal. Rules of Court, rule 2.818**.................................................................................**1, 2**

Document received by the CA Supreme Court.

**San Diego County Superior Court Local Rules, rule 2.1.18...........................1, 2**

**I Rob Emert, declare,**

# Rob Emert affidavit to the honorable court regarding page number and word count according to the California Supreme Court Rules of Court.

The page count is 25 pages taking out exhibits and other items not included in the page count.  The word count certification is found in the word count section, but it is well below the maximum word count of 8400.  For simplicity and for ease of review for your honors, I did my best to bookmark one document well.  In addition, I am filing an application for an Application for Permission to File an Oversized Petition for Review. The exhibits that are included in this have simply been ignored by the lower court and is the main reason I would like them included in this petition for review.  Me and my children have been truly terrorized by a few withing the San Diego divorce industry and I would appreciate this court providing justice for me and my children and to send a message that what you see in my petition will not be tolerated.  I am not an attorney and have simply done my best.  If I have made an error, please give me the opportunity to remedy it.  Thank you.

Document received by the CA Supreme Court.

# I. Introduction

This case involves an appeal to vacate and void orders from the trial court where the judicial officer simply lacked jurisdiction for many reasons including a properly filed peremptory challenge.

For two years, custody had been evenly split 50/50 under two judges, based on three family court services reports and two child interviews.  (exhibit M)

In February 2021, Commissioner Ratekin took over the case. Despite two years of 50/50 custody, she:

- Immediately stated intent to remove my 14-year-old son into residential care without evidence. ( exhibit Q)
- Denied my properly filed CCP §170.6 peremptory challenge.  ( exhibit NN)
- Acted as an unauthorized temporary judge barred by California Rules of Court, rule 2.818(c)(3) (appendix D)
- Terminated my parental rights without proof of unfitness, violating due process (03/30/21 min order)
- Ignored my child's affidavits, witness statements, and pleas to the court (exhibit A)
- Exhibited clear bias and prevented questioning of witnesses (exhibit Q)
- Recused herself but continued issuing orders without jurisdiction. (exhibit LLL and appendix F)

Ratekin also ignored:

- My therapist letter indicating I was mentally fit. ( exhibit N)
- Police report showing domestic violence by my ex-wife. (exhibit S)
- Ongoing conflict of interest from her supervisor's wife's relationship with my ex-wife. ( Andrea paystub and school employee print out)

Document received by the CA Supreme Court.

This misconduct culminated in a major heart attack brought on by extreme stress. (exhibit B) On the very day she finally recused, Ratekin maliciously imposed supervised visitation based solely on an unrelated witness affidavit as retaliation, absent any evidence of unfitness.

Through these violations, Ratekin separated me from my child absent due process. I have diligently appealed the unlawful rulings resulting from conflicts of interest, falsified records, and denial of impartial proceedings. However, relief has focused on procedural issues versus the merits.

I now petition the California Supreme Court seeking review of the merits. Ratekin's shocking ethical breaches and constitutional violations have wrongfully deprived me of custody rights without due process. I pray the merits may be properly evaluated so that I can defend my sacred parental rights before an impartial tribunal.

# II. Issues Presented for Review / Statement of Issues

1. Whether the trial court violated Local Rule 2.1.18 by allowing Commissioner Ratekin to act after petitioner's timely peremptory challenge under CCP §170.6?

2. Whether Commissioner Ratekin's oversight as an unauthorized temporary judge barred by California Rules of Court, rule 2.818(c)(3) renders her orders void?

3. Whether improper denial of petitioner's properly filed CCP §170.6 peremptory challenge violated due process rights to an impartial judicial officer?

4. Whether the trial court violated CCP §170.1 and due process by allowing a recused judge **(whose wife was friends/coworkers with petitioner's ex-wife)** to supervise the commissioner in the same case?

5. Whether severe restrictions on parental rights absent proof of unfitness violated substantive due process under the 14th Amendment?

Document received by the CA Supreme Court.

6.  Whether Commissioner Ratekin acted without jurisdiction and in violation of due process by issuing substantive orders after recusing herself?

7.  Whether the trial court violated due process by prejudging the case and exhibiting actual bias, contrary to the constitutional right to a fair and impartial tribunal?

8.  Whether the cumulative effect of the trial court's pervasive legal errors constituted structural defect requiring reversal rather than harmless error review?

9.  Whether the trial court violated due process by prejudging the case and exhibiting actual bias, contrary to the constitutional right to a fair and impartial tribunal?

10. Whether the trial court's egregious legal errors resulted in irreparable harm by wrongfully depriving petitioner of custody rights absent due process, necessitating extraordinary relief?

11. Whether the appellate court erred in ignoring obvious legal violations and petitioner's request for an evidentiary hearing, instead improperly dismissing claims based on mundane record citation issues contrary to the interests of justice?

# III. Statement of the Case

This case involves an appeal of family court rulings by Commissioner Patti Ratekin stemming from my divorce proceedings initiated in Sept 2019 after over 14 years of marriage. For almost two full years from 2019-2021, child custody had been evenly split 50/50 between my ex-wife and I under orders by two prior judges.

This joint physical custody arrangement was based on recommendations from a custody evaluation and two in-depth interviews conducted by family court services. The court services advisor made clear in multiple reports that supported a 50/50 custody arangment and I was initially given 60%. My 14-year-old son Bryce and I shared an especially tight bond after I raised him as a stay-at-home dad for years. The 50/50 arrangement was

Document received by the CA Supreme Court.

working for our family with a few exceptions, so I suggested letting both our children be able to go back and forth between our homes on an as needed basis for their emotional well-being.  My x wife allowed this for our daughter but refused for our son out of pure resentment of his close bond to me.  This pure and ugly resentment is what has caused 4 years of torment and heartache for our entire family.

In February 2021, Commissioner Ratekin inexplicably took over the case from the two prior judges who had issued the 50/50 orders.

While I was representing myself, a legal advisor told me that since orders were not made or arguments heard that I could file a peremptory challenge under CCP §170.6 to remove Commissioner Ratekin and I did file it on Feb 8 2021. However, she brazenly denied the challenge against the rules of court given the circumstances of my case.  No orders were made; arguments heard and my request was timely.  The "verbal" stipulation was/is irrelevant given the circumstances and per the rule of law and case law.


**Over the next eight months, Commissioner Ratekin committed a litany of misconduct exhibiting clear bias against me:**


1.  She acted without authority as a temporary judge barred by California Rules of Court, rule 2.818(c)(3). (appendix D)
2.  She imposed severe restrictions on my parental rights absent any showing of unfitness, preventing me from even speaking with my child. (appendix F)
3.  She ignored multiple affidavits from Bryce begging to see me.  ( exhibit A)
4.  She disregarded a therapist letter indicating I was basically a regular guy with no mental health issues after Ratekin started to illegally harass me about "psychological evaluations" when I challenged her ethics.  (exhibit N)
5.  Ratekin exhibited prejudgment without hearing my testimony. Exhibit Q)

Document received by the CA Supreme Court.

6. She obstructed my ability to question witnesses and present evidence contradicting her predetermined narrative. (exhibit Q)

7. She had an inherent conflict of interest as her supervisor judge's wife was close friends with my ex-wife. A look at my x wife's pay stub from the school district along with the other judge's wife's profile on the school's website easily proves this.

**Ratekin also ignored:**

1. My therapist letter indicating I was mentally fit

2. Police report showing domestic violence by my ex-wife.  (exhibit S)

3. Ongoing conflict of interest from her supervisor's wife's relationship with my ex-wife.

This overwhelming stress led to me suffering a major heart attack requiring hospitalization in September 2021. (exhibit B) Nevertheless, Commissioner Ratekin continued her vendetta. On the very day she recused herself from the case on October 4, 2021, she immediately imposed a new order for supervised visitation as retaliation for a whistleblowing witness affidavit I had filed exposing her misconduct. This order separated me from Bryce without any evidence or change in circumstances. (appendix F)

Commissioner Ratekin then continued signing substantive orders even after recusing herself, clearly acting without jurisdiction. (exhibit LLL) Her profound ethical breaches and vengeful conduct absent due process have caused unspeakable trauma for me and my children.

I have diligently appealed for over a year seeking to vacate Commissioner Ratekin's patently unlawful rulings. But the appellate court denied relief based on minor technical record issues without adequately weighing the merits of my claims.

Document received by the CA Supreme Court.

I now petition the California Supreme Court as a last resort, pleading for proper review of the merits of this unprecedented judicial misconduct ripping my family apart. Ratekin's actions have resulted in a manifest injustice demanding intervention. I pray the Supreme Court will recognize the gravity of the violations presented and order redress of these extraordinary harms.

**Here is a brief timeline to help put into perspective:**

**February 4, 2021 - October 4, 2021**: Throughout her oversight of the case, Commissioner Ratekin ignores and fails to properly consider:

- My son Bryce's (14 years old) police report and request for restraining order against Ratekin's appointed minor counsel. (Exhibit K and L)

- Bryce's affidavit and witness affidavits contradicting Ratekin's predetermined narrative. (exhibit A)

- My therapist letter indicating I'm mentally fit. (exhibit N)

- Police report showing domestic violence by my ex-wife. (exhibit S)

- Ongoing conflict of interest from Ratekin's supervisor's wife's relationship with my ex-wife.

- Bryce begging the court repeatedly to be heard. (exhibit A)

Document received by the CA Supreme Court.

February 4, 2021: Commissioner Ratekin assigned to case ( exhibit Q )

February 8, 2021: I file timely peremptory challenge under CCP §170.6. (appendix B)

February 25, 2021: Ratekin claims acting as unauthorized temporary judge. (appendix D)

March 30, 2021: Ratekin removes my parental rights without evidence. (03/30/21 min order)

May 11, 2021: Ratekin prevents witness questioning contradicting her intent. (exhibit Q)

September 29, 2021: I suffer major heart attack ( exhibit B)

September 30, 2021: Ratekin imposes supervised visitation as retaliation. (appendix F)

October 4, 2021: Ratekin finally recuses from case after months of misconduct. (exhibit FFFF)

October 5 & 15, 2021: Ratekin signs orders post-recusal without jurisdiction. (exhibit LLL)

# IV. Legal Argument

Document received by the CA Supreme Court.

1. **This court should grant review to settle the important question of whether the trial court violated Local Rule 2.1.18 by allowing Commissioner Ratekin to act after petitioner's timely peremptory challenge under CCP §170.6.**

On February 4, 2021 the parties stipulated verbally for Commissioner Ratekin to hear the case. However, no orders were made or arguments heard that day. On February 8, 2021, within 10 days of the initial hearing, Petitioner filed a timely peremptory challenge under CCP §170.6 to remove Commissioner Ratekin (Exhibit B).

Under Local Rule 2.1.18 and unambiguous precedent, because no orders or rulings had been made, Commissioner Ratekin was required to be immediately disqualified once the challenge was filed. As the California Supreme Court stated in Stephens v. Superior Court, 30 Cal. 4th 1082, 1092 (2002), "the disqualification is automatic and the reassignment mandatory."

However, Commissioner Ratekin defied this compulsory authority by improperly denying the challenge and continuing to oversee the case through October 4, 2021. Her oversight in the face of a valid §170.6 challenge egregiously violated Local Rule 2.1.18.

Given the extraordinary departure from Local Rules and due process, review is imperative to enforce proper application of Local Rule 2.1.18 and CCP §170.6. This Court should thus grant review and provide relief vacating Commissioner Ratekin's orders to vindicate petitioner's rights.

2. **This court should grant review to determine whether Commissioner Ratekin's oversight as an unauthorized temporary judge barred by California Rules of Court, rule 2.818(c)(3) renders her orders void.**

Commissioner Ratekin appears to believe she is exempt from petitioner's peremptory challenge because she was acting as a temporary judge.  However, she was acting as a commissioner at that time and moreover, acting as a temporary judge starting 02/25/21clearly violates California Rules of Court, rule 2.818(c)(3), which unambiguously

Document received by the CA Supreme Court.

states "a temporary judge is subject to a peremptory challenge under Code of Civil Procedure section 170.6." And, even more so, if one of the parties is self represented and the other party is represented, proceedings can't be heard by a temporary judge.

As made unequivocally clear by this Court in In re Mark L. (1983), orders made by a judicial officer lacking legal authority to hear a case are void. Here, Commissioner Ratekin directly contravened the Rules of Court barring temporary judges from overseeing challenges cases. Her oversight absent proper jurisdiction was structural error requiring reversal.

This Court reiterated this principle in Fewel v. Fewel (1943), stating "when a court has no jurisdiction, it has no power to act" and resulting orders are void. Commissioner Ratekin's defiance of the Rules of Court deprived her of authority to act, rendering her custody orders void.

Given Commissioner Ratekin's flagrant assumption of judicial authority prohibited by California Rules of Court, extraordinary review is warranted. As held in People v. Tijerina (1969), courts have a solemn duty to invalidate orders made in excess of a judicial officer's jurisdiction. This Court should grant review, vacate her orders as void, and remand for new proceedings before a authorized judicial officer.

3. **This court should grant review to decide whether improper denial of petitioner's properly filed CCP §170.6 peremptory challenge violated due process rights to an impartial judicial officer.**

The Due Process Clauses of the Fifth and Fourteenth Amendments guarantee a fair and impartial judiciary. Denying a properly filed peremptory challenge strikes at the heart of due process by allowing a challenged judicial officer to continue overseeing a case.

As this Court affirmed in Catchpole v. Brannon (1995), peremptory challenges under CCP §170.6 provide "a reasonable means of assuring the appearance of judicial impartiality." By refusing petitioner's challenge, Commissioner Ratekin critically undermined this crucial due process protection.

Document received by the CA Supreme Court.

Additionally, in Johnson v. Superior Court (1958), this Court held the right to disqualify a judge is "substantial" and "mandatory." Commissioner Ratekin's baseless denial of the challenge upended these fundamental due process rights.

Her continued oversight absent impartiality casts doubt on the legitimacy of all subsequent rulings. As noted in Solberg v. Superior Court (1977), §170.6 preserves public trust by avoiding the appearance of prejudice. Denying petitioner an impartial forum devoid of perceived bias violated due process.

Given the extraordinary breach of petitioner's substantial due process rights, review is essential to reinforce protections against judicial bias. This Court should grant relief, recognizing denial of the §170.6 challenge as structural error requiring reversal to vindicate due process and restore public confidence.

4. **This court should grant review to resolve whether the trial court violated CCP §170.1 and due process by allowing a recused judge** (whose wife was friends/coworkers with petitioner's ex-wife) **to supervise the commissioner in the same case.**

CCP §170.1(a)(6)(A) requires disqualification when a judge's spouse has a relationship likely to bias the judge. Here, the supervising judge's wife worked closely with and was friends with petitioner's ex-wife. This created inherent bias necessitating recusal under §170.1.

However, the judge only recused himself from making final orders, while still indirectly overseeing the case by supervising Commissioner Ratekin. This violates due process, as her decisions remained tainted by the conflict of interest infecting her supervisor.

Document received by the CA Supreme Court.

As held in Catchpole v. Brannon (1995), §170.1 protects the constitutional right to an impartial judge. The supervising judge's continued oversight in the face of acknowledged bias violated this basic due process guarantee.

Moreover, in Hall v. Superior Court (1988), this Court found "evaluating the fairness of a judge" who appears biased compromises public trust in the courts. Allowing continued supervision by the conflicted judge, even indirectly, severely undermines confidence in impartial proceedings.

To preserve due process and judicial integrity, review is desperately needed. The Court should grant relief, recognizing the trial court's failure to fully recuse itself from the conflicted case is reversible error requiring remand before an untainted tribunal.

5. **This court should grant review to establish whether severe restrictions on parental rights absent proof of unfitness violated substantive due process under the 14th Amendment.**

Parents have a fundamental liberty interest in the care, custody, and control of their children under the 14th Amendment. As held in Troxel v. Granville (2000), parental rights warrant stringent due process protections against state interference. Restrictions require compelling justification, usually parental unfitness.

Here, Commissioner Ratekin abruptly terminated petitioner's joint custody and imposed draconian restrictions virtually eliminating any parental rights (Minute Order dated 3/30/21). This constitutes shocking infringement of substantive due process absent any evidence of unfitness.

As this Court ruled in In re B.G. (1974), absent clear and convincing proof that parental custody would be detrimental, such extreme measures violate due process. Commissioner Ratekin disregarded this binding precedent and severed the deep parent-child bond based on nothing more than speculative allegations.

Document received by the CA Supreme Court.

Given the extraordinary infringement of petitioner's constitutionally protected parental rights, searching review is imperative to reinforce due process protections. This Court should grant relief, recognizing the custody orders absent proof of unfitness as reversible constitutional violations requiring immediate vacation and remand.

6. **This court should grant review to conclude whether Commissioner Ratekin acted without jurisdiction and in violation of due process by issuing substantive orders after recusing herself.**

On September 29, 2021, petitioner suffered a major heart attack requiring hospitalization. The next day, on September 30, 2021, while petitioner was still recovering in the hospital, Commissioner Ratekin held a hearing where petitioner appeared remotely.

Then on October 4, 2021, Commissioner Ratekin entered a minute order recusing herself from the case due to undisclosed reasons creating an "appearance of bias" (Minute Order dated 10/4/21).

Shockingly, in that same recusal order, Commissioner Ratekin imposed new supervised visitation restrictions, absent any evidence of unfitness. This immediately terminated her jurisdiction over the case under CCP §170.4.

However, Commissioner Ratekin then improperly signed additional substantive orders on October 5 and October 15, 2021, after she had recused herself (Minute Orders dated 10/5/21 and 10/15/21).

By issuing substantive orders even the day after recusing herself, Commissioner Ratekin acted without jurisdiction and in violation of due process. This Court should grant review, recognize the orders as void, vacate them to remedy the due process violations, and remand for rehearing by an authorized judicial officer.

Document received by the CA Supreme Court.

**7. This court should grant review to determine whether the trial court violated due process by prejudging the case and exhibiting actual bias, contrary to the constitutional right to a fair and impartial tribunal.**

The Due Process Clause guarantees litigants an impartial judge. As this Court held in Catchpole v. Brannon (1995), showing of actual bias violates this basic due process right.

Here, the record contains overt statements by Commissioner Ratekin evidencing prejudgment and actual bias against petitioner (Exhibit Q – court transcripts). She made substantive determinations on temporary custody and visitation restrictions before any evidence was presented, stating many alarming statements ( exhibit FF – Ratekin transcript highlights ) and (exhibit Q – court transcripts)

Such prejudging strips petitioner of impartial proceedings and the presumption of innocence. As found in In re Richard W. (1979), a biased judge inherently violates due process protections of fairness.

Commissioner Ratekin's explicit statements of bias have hopelessly tainted the proceedings. As this Court ruled in Hall v. Superior Court (1988), apparent prejudging by a judge directed at a litigant compromises public trust in the courts. Her inability to remain objective warrants reversal.

Given the clear deprivation of petitioner's constitutional right to an impartial judicial officer, extraordinary review is essential. This case should be remanded before an untainted tribunal to remedy the due process violations arising from Commissioner Ratekin's actual bias.

**8. This court should grant review to decide whether the cumulative effect of the trial court's pervasive legal errors constituted structural defect requiring reversal rather than harmless error review.**

Document received by the CA Supreme Court.

While individual errors may be deemed harmless, their cumulative prejudicial impact can deprive a litigant of a fair trial, warranting reversal. As this Court held in In re Marriage of Carlsson (2008), due process violations from cumulative error represent structural defect outside harmless error review.

Here, the trial court committed an array of legal errors, including violating Local Rules, acting without jurisdiction, exhibiting bias, and infringing substantive due process rights. The aggregate prejudice far exceeds any single error.

As found in Dodson v. J. Pacific, Inc. (2007), cumulative error undermines the integrity of judicial proceedings. The sustained infringement of petitioner's rights permeated the entire case, hopelessly obscuring any possibility of a just result.

Given the constitutional violations and affronts to public policy stemming from the trial court's numerous errors, extraordinary review is imperative. The cumulative effect represents an incurable structural defect requiring reversal and remand for new, untainted proceedings.

This Court should grant review to reinforce that cumulative injustice from pervasive legal errors must be remedied, not dismissed through harmless error review. Only reversal can vindicate due process in the face of such fundamental flaws in judicial proceedings.

9. **This court should grant review to address whether the trial court's egregious legal errors resulted in irreparable harm by wrongfully depriving petitioner of custody rights absent due process, necessitating extraordinary relief.**

A key purpose of extraordinary writs is to address irreparable harm from lower courts acting in excess of jurisdiction and violating due process. As this Court established in Omaha Indemnity Co. v. Superior Court (1989), extraordinary relief is warranted where an error cannot be remedied through ordinary appeal.

Document received by the CA Supreme Court.

Here, the trial court terminated petitioner's joint custody and imposed severe restrictions on visitation absent any proof of unfitness or due process. The US Supreme Court has repeatedly recognized the substantial and irrevocable harm caused by unwarranted state interference in parental rights. As held in Troxel v. Granville (2000), parental rights warrant the highest due process protections against government infringement. Similarly, in Santosky v. Kramer (1982), the Court found improperly severing the parent-child relationship causes irremediable "grievous loss" to both parent and child.

These extraordinary circumstances, including unconstitutional infringement of petitioner's fundamental parental rights, compel immediate review and relief before further irreparable injury accrues. As this Court recognized in Rollins v. Superior Court (1963), extraordinary writs exist to promptly halt irremediable miscarriages of justice.

Procedural protections are meaningless absent a remedy before more harm compounds. Only extraordinary relief can address the severe and mounting injury from the trial court's wrongful deprivation of petitioner's custody rights.

**10. This court should grant review because the** appellate court erred **by ignoring obvious legal violations and petitioner's request for an evidentiary hearing, instead improperly dismissing claims based on mundane record citation issues contrary to the interests of justice.**

The role of appellate courts is to provide meaningful review, especially where legal errors threaten grave injustice. As this Court held in Smith v. Lewis (1975), dismissal on technicalities undermines the judiciary's truth-seeking function.

Here, when faced with "troubling" allegations of bias and constitutional violations, the appellate court failed to substantively review them, citing only purported inadequate record references. However, in his reply brief, petitioner requested leave to correct any citation defects under the liberal amendment policy of Varjabedian v. City of Madera (1977). This request was improperly ignored and then used as an excuse to not consider

Document received by the CA Supreme Court.

black letter law violations.  Reminds me of ignoring a smoking gun in a criminal's hands or the elephant in the room when it goes against ones biased narrative.

Worse, the appellate court ignored flagrant legal errors like the trial court violating Local Rules, acting without jurisdiction, exhibiting bias, and infringing due process rights absent proof of parental unfitness.

Such indifference to serious constitutional claims clashes with appellate courts' recognized duty of protective review. As found in In re Marriage of Carlsson (2008), substantive justice should prevail over procedural technicalities.

By refusing to probe extraordinary claims or allow citation correction despite equities favoring review, the appellate court abandoned its responsibility to guard against lower court abuses. Its abdication merits summary reversal.

This Court should grant review, order an evidentiary hearing to expand the record, and provide meaningful review of petitioner's claims to halt the compounding miscarriage of justice stemming from the trial court's apparent bias and legal errors. The interests of justice demand no less.

# V. Prayer for Relief

WHEREFORE, based on the extraordinary legal violations and harms presented, Petitioner respectfully prays this Honorable Court grant the following relief:

1. Issue a writ of mandate or other appropriate relief ordering the trial court to vacate all orders issued by Commissioner Ratekin in this case as void or improper based on the arguments raised herein.  I would appreciate my fair day in court for an evidentiary hearing to review my evidence.  The trial court as well as the appellate court have flat out refused to grant me a simple evidentiary hearing.

Document received by the CA Supreme Court.

2. Remand this case for a new trial on all issues heard by Commissioner Ratekin before an impartial and authorized judicial officer and grant me the before requested evidentiary hearing to present my evidence and witnesses.

3. Order an evidentiary hearing expanding the record to include additional evidence of bias, conflicts of interest, retaliation, and other misconduct by Commissioner Ratekin.

4. Provide any other relief as deemed just and proper to redress the profound denial of rights and irreparable harms inflicted absent due process.

Petitioner also respectfully requests waiver of court fees/costs given the catastrophic impact of these proceedings on his health, finances, career, and fundamental parental rights. Equity dictates access to the courts unhindered for the corrective relief sought herein.

Petitioner prays for a compassionate ear and fair legal process. The extraordinary wrongs committed in this case compel intervention to remedy an innocent family's unspeakable suffering. Justice cries out for a righteous course correction.

# VI. Conclusion

This case shocks the conscience and warrants extraordinary relief to remedy an unconscionable injustice tearing apart an innocent family.  Me and my children have been

Document received by the CA Supreme Court.

truly terrorized by some thugs who run amuck in the San Diego divorce industry. I call on this court for some basic and simple justice where I can have my day in court and bring my evidence and witnesses which is something the trial court and the appellate court have simply refused to do. I would speculate it's because they want me punished for not turning over my son where the divorce industry could keep using him as a human cash register. I will also submit to the court where District Attorney Investigator told me in a recorded conversation that my sons attorney (Matt Cord) had simply aligned with Dave Shilman and NOT IN MY CHILDS BEST INTERESTS! When one listens to the call in full, they will easily see that taking my parental rights away was a complete farce and a sham according to DAI Luis Pena who then folded due to political pressure. What a disgrace!

Here is the short version: When considering the evidence, which is why I have requested an evidentiary hearing many times, it is clear to any reasonable person that retired Commissioner Ratekin breached her ethical duties. When she and her cronies got caught, they tripled down with nothing other than more cronies in their pockets. Ms. Ratekin should be disbarred, and I will pursue that at some point along with about 50 others that got defrauded by her. Clearly, Ratekin wanted this case and wanted it bad. No orders were made or arguments heard yet she held on to the case illegally with white knuckles and likely because she had already promised Dave Schilman a victory. When Ratekin finally recused in shame, Dave Schulman went running for help to retired Judge Alknse to cover this mess up and that she did and likely because Dave Schilman is well connected in San Diego. This case comes down to mostly my son who I raised because I was a stay-at-home dad for almost a decade. Rateken tried to snake my parental rights away illegally and I said it was not going to happen as I would stand up for me and my childrens rights. I had legal necessity to hold on to my son due to the emotional trauma he was and continues to suffer due to this RICO crew's unethical activity. Because I was in compliance with the law but still holding onto my son for his protection, I was illegally and unethically punished by a few within the San Diego Superior Court, and I call on this court to remedy such egregious blatant violations of basic law and fairness. I will not hold my breath, but I need to exhaust my remedies to get to the 9th circuit where I am hopeful that such egregious violations will

Document received by the CA Supreme Court.

not go unnoticed and unpunished.  All judicial officers have a duty to uphold the law and basic fairness.  I got railroaded and got zero.zero and I am an awesome dad with lots of witnesses that have never even had a chance to speak due to this farce and a shame that a few people have committed on me and my children which will forever scar us.  This is truly disgusting, and I call on this court for basic fairness and to give me my fair day in court.

As held in Rochin v. California (1952), misconduct that "shocks the conscience" violates due process. Ratekin's actions shock the conscience. Her oversight amounted to a "farce and sham," not due process. As this Court found in Moore v. Dempsey (1923), where proceedings show utter contempt for rights, the resulting orders must be condemned.

For two years under two judges, custody was 50/50 based on court services recommendations. Yet Ratekin shredded Petitioner's bond with his 14-year-old son Bryce, now 17, and 11-year-old daughter Skylar, now 14, absent evidence.

The US Supreme Court has recognized the substantial harm caused by unwarranted state interference in parental rights. As held in Troxel v. Granville (2000), the Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests," including parenting.

Petitioner raised Bryce and Skylar as a stay-at-home dad for years. Now Skylar won't speak to him after 2 years of separation orchestrated by Ratekin. This "grievous loss" cannot be restored. As found in Santosky v. Kramer (1982), improperly severing the parent-child relationship causes "irreparable harm."

Bryce has begged the court to let him go home amidst escalating conflict under his mom's roof. But his cries remain unheeded, his anguish compounds daily.

Ratekin's ethical breaches and willful misconduct absent due process have unjustly separated a loving father from his children for years now. Her actions shock the conscience.

This unprecedented abuse of power demands intervention to remedy egregious legal wrongs tearing innocent lives apart. Petitioner implores this Court to act with courage and

Document received by the CA Supreme Court.

wisdom to halt the injustice and restore what has been unjustly taken. The cries of suffering children separated from their dad compel action.

The exhibits filed under separate cover are extensive so I will simply be brief below with some listed appendix items to show what a farce and a sham that retired Patti Ratekin and opposing counsel Dave Schulman have perpetrated on this court and made a mockery of our justice system. My peremptory challenge; Ms. Ratekins admission she did not have time to hear the case on this same day; Ratekin saying she is acting as a temp Judge; Bryce's TRO and police report against assigned minor counsel; signed judgment by Ratekin a day after she recused; and the most embarrassing and absurd order by Ms. Ratekin is where she was so desperate to burn me that she signed an order for supervised visitation the day she recused based on a witness affidavit regarding the child psychologist which has nothing to do with custody. (exhibit F) Ms. Ratekin was just upset that her RICO crews scam of placing my son in a "facility" was falling apart based on the evidence.

# VII. Certificate of Word Count

Pursuant to California Rules of Court, rules 8.204(c)(1) and 8.360(b)(1), I certify that the total number of words in this Petition for Review, excluding tables of contents and authorities, this certificate, and any appendices, is 5603 words.

I certify that this petition complies with the form requirements set forth in California Rules of Court, rules 8.204 and 8.360.

Document received by the CA Supreme Court.

# VIII.  CERTIFICATE OF TRUTH

I, Rob Emert, declare under penalty of perjury under the laws of the State of California that the factual allegations in this Petition for Review are true and correct to the best of my personal knowledge.

Dated: 03/07/24

*Rob Emert*

Rob Emert

760-612-9328

# VIIII. CERTIFICATE OF ELECTRONIC SERVICE

I, Glenda Emert, declare:

I electronically served a true copy of this Petition for Review on 03/07/24 by transmitting a copy from my email address to the email address of record for Linda Ciano, Dave Schilman, San Diego Superior Court Appellate Division and then uploaded to the California True Filing system.  elsieesq@juno.com; appeals.central@sdcourt.ca.gov; dschulman@msmfamilylaw.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated:03/07/24

*glenda emert*

Document received by the CA Supreme Court.

Glenda Emert

# X. NOTICE OF INTENT TO LODGE DOCUMENTS

Pursuant to California Rules of Court, rule 8.252(a)(1), Petitioner hereby provides notice of intent to lodge the following documents that are relevant to the issues presented in this Petition for Review.

The lodged documents contain material information pertaining to the extraordinary claims presented in this petition. In accordance with California Rules of Court, rule 8.252(a)(2), true and correct copies of the lodged documents will be furnished to the Court upon request. Petitioner respectfully requests the Court consider the proffered documents in assessing the merits of this petition.

A. Bryce Emert Declaration with Five Sworn Witness Affidavits

B. Rob Emert Medical Documents

C. Text from Bryce Emert Behavioral Therapist

D. Stay motion to Presiding Judge Alksne 10/01/21.

E. Andrea typical attitude text message

F. 09/30/21 Hearing while I am still in hospital that got postponed until 10/04/21 where Ratekin then recused and that hearing did not go forward either.

G. Matt Cord, minor council for Bryce just doing what Ms. Ratekin told him to do.

H. 10/01/21 Andrea Schuck motion asking for supervised visitation but later claims it was already ordered on 09/30/21.

I. ADA and medical documents that went ignored

Document received by the CA Supreme Court.

J. Mark Fidelman witness affidavit of Bryce's psychologist Jesse Olague.

K. Bryce Emert police report against his attorney Matt Cord where Bryce spoke independently with police.

L. Bryce goes to file TRO against his attorney Matt Cord and speaks to the court himself.

M. THREE FCS reports indicating 50/50 custody for almost two years and I, Rob Emert, initially was granted 60%.

N. Rob Emert therapist letter right off blue shield insurance that Ratekin rejected even though it complied with court rules and with zero evidence, recommends a full 730 psychological evaluation.

O. Andrea Schuck therapist letter that Ratekin ignores.

P. 04/28/21 Ex Part where I simply ask for discovery and statements from the court and minor counsel where are they getting their information from to support drastic orders with zero evidence.

Q. Court Transcripts

R. Andrea Schuck Malicious Text to family friend. Any friends or family that disagreed with Andrea's narrative, she would attack and then isolate the children from.

S. Andrea Schuck Arrested for Domestic Violence

T. Andrea Schuck Arrested for Domestic Violence

U. Mediation offers, many of them.

V. Reply motions regarding minor council Matt Cord trying to recommend taking custody from me with no evidence to do so. Not looking out for his client and just being a spineless stooge.

W.Motions to Presiding Judge Alksne for Ratekin to Recuse

X. Matt Cord, attorney for Bryce, ignores what is in the best interests of the child. Emails.

Document received by the CA Supreme Court.

Y. Sworn Witness Affidavits regarding Rob Emert and his children, Bryce and Skylar.

Z. Updated ADA request that went ignored.

AA. Email asking Dave Schilman why all the hassle. Dave Schilman is guilty of moral turpitude.

BB. Extensive Emails showing Matt Cord did not do what was in his clients best interests.

CC. California Ethical Rules for Judges working with self-represented litigatns.

DD. Dave Schilman threatening the San Diego Reginal Center with an injunction if they provide therapy sessions to me and my children.

EE. San Diego Regional Center emails.

FF. Ms. Ratekin highlights from court transcripts.

GG. Emails Documenting Blatant Denial of Access to My Own Hearings and Trial

HH. Timeline of heart attack and being denied access to my own hearings and trial.

II. Motion to withdrawal stipulation to Alksne that went ignored.

JJ. Rob Emert's witness list. Alksne allowed for a motion in limine to keep ALL my witnesses out of my own trial.

KK. Felony legal notice given to Alksne and Ratekin

LL. Federal Lawsuit against Ratekin

MM. Press Release – Unethical violations in SD Family Courts.

NN. Peremptory challenge that was filed timely and before orders made that was illegally denied.

OO. Ex Parte 09/26/22 that Judge Robinson said was not an emergency and she did not have jurisdiction to hear the matter regarding the 11/29/21 default trial judgment.

PP. Ex Parte 11/24/21 that went ignored by Judge Alksne

Document received by the CA Supreme Court.

QQ. DCSS motion that went ignored and continues to be ignored 07/27/22

RR. Peremptory challenge along with minute orders for the first day Ratekin heard case and a month later where she took all my legal parental rights away.

SS. Matt Cord blatantly ignoring alarming conduct of Bryce's mom

TT. Withdrawal of stipulation of Ratekin filed with Alksne but she simply ignored it.

UU. Writ filed with the appellate court 11/22/21

VV. Bryce homeschool documentation

WW. CPS closing case after the interview with Bryce

XX. District Attorney email showing Bryce's mom "giving" custody of Bryce to me.

YY. 05/20/21 Disqualification of Ratekin

ZZ. 06/14/21 Disqualification of Ratekin

AAA. DCSS motion filed and ignored.

BBB. Email where Bryce's mom is trying to get Bryce's IEP case manager to not comment on the fact that Bryce does not belong in a residential home.

CCC. 10/13/22 email to Luis Pena saying he can and should meet with Bryce and forwarded him lots of information already given to the prior investigator, Steve Mcintosh. Both Pena and Mcintosh told me that this case did not belong in criminal court.

DDD. Email to Dave Schilman showing Bryce being abused.

EEE. Many emails detailing me being denied access to my own hearings and trial.

FFF. 04/28/21 ex parte to vacate Ratekins fraud upon the court

GGG. Reservation of federal rights.

HHH. Andrea Schuck malicious text

III. Press Release of San Diego Family Court misconduct.

Document received by the CA Supreme Court.

JJJ. Text from Bryce's Friend's Mom, Who Is a Witness to Andrea's Alarming Behavior Towards Bryce and His Friends

KKK. DDA Balerio and Bryce Emert Transcript of Interview

LLL. Default Judgement 10/15/21

MMM. Default Judgement 11/18/21

NNN. Default Judgement 01/24/22

OOO. Ex Parte 11/29/21 for Continuance or Remote Hearings Due to Heart Attack

PPP. Ex Parte to Vacate 12/10/21 Default Judgement 11/30/21 including updated medical documents/records that simply went ignored by then Presiding Judge Alksne and the ADA coordinator.

QQQ. Judge Alana Robinson Indicating She Does Not Have Jurisdiction to Hear the Default Judgement Entered 01/24/22

RRR. Copy of the Complaint Provided to the DA, DOJ, FBI, Presiding Judge, Local Police, and More

SSS. Ex Parte 11/29/21 for Continuance or Remote Hearings Due to Heart Attack

TTT. Motion to Reconsider the Stay Stemming from 11/29/21 Trial

UUU. Appeal for 10/15/21

VVV. Appeal for 11/18/21

WWW. Andrea Schuck Email Indicating I Must Drop All My Current Motions and Appeals Before She Comes to the Negotiating Table in Bryce's Best Interests

XXX. Private Investigator's Interview with Bryce Emert

YYY. Withdrawal of Guilty Plea

ZZZ. Andrea Schuck Post Regarding My Daughter Not Wanting to See Me

Document received by the CA Supreme Court.

AAAA. Appeal of Guilty Plea

BBBB. All Email Communications with DA's Office

CCCC. Appeal Court Conformed Documents Showing Default Trial Judgement Is Not on Appeal

DDDD. Federal Lawsuit

EEEE. 020421 court min order Ratekin leaving early due to COVID-related matter

FFFF. Transcript of court the day Ratekin recused

GGGG. Bryce transcripts of phone calls

HHHH. Department of Justice Email forwarding my investigation request to the FBI

IIII. District Attorney Email saying Andrea Schuck is giving me custody of Bryce

JJJJ. Transcript of FBI call of the "threat"

KKKK. Dave Schulman letter to minor counsel showing misrepresentation.

LLLL. Transcripts of District Attorney phone calls that prove lying; withholding evidence; and a blatant disregard for candor to the court

MMMM. Bryce letter he wrote to the court while I was illegally incarcerated

NNNN. Witness Cole, Bryce's friend who was interviewed by a private investigator

OOOO. Witness Mark Fidelman who was interviewed by a private investigator

PPPP. Witness Cortney Costello who was interviewed by a private investigator

QQQQ. Opening Brief for Court of Appeals

RRRR. Dave Schulman letter to minor counsel

SSSS. Dave Schulman replies in the Federal lawsuit where he blatantly lies to the court. Dave Schulman states that Comm. Patti Ratekin was basing a "facility" recommendation of

Document received by the CA Supreme Court.

Bryce on a psychological report when, in fact, Comm. Patti Ratekin said it within five minutes of meeting parties before there could have been any such report.

TTTT. Habeas Corpus ready to go so if DDA Balerio illegally incarcerates me again

UUUU. Andrea stalking two women online after she realized they are friends of mine.

# XI. Appendix

Document received by the CA Supreme Court.

Document received by the CA Supreme Court.

**A. Bryce Emert affidavit.  Bryce is now almost 17 and simply wants to go home.**

AFFIDAVIT OF BRYCE EMERT

I, Bryce Emert, declare the following under penalty of perjury:

I have personal knowledge of the facts stated in this affidavit and am competent to testify to them if the court allows me to do so.  I would like to talk to the court but have been prevented from doing so, which has caused me so much hardship and pain.  I am almost 17 and I don't understand why my voice is not being heard by the court.  I have so many friends who have parents who are divorced, and they are heard by everyone.

1. The following letters and emails were written by me in my pleas to be heard.  Those are my words in those letters and emails.  They describe me being harassed and traumatized and to escape it, I asked my dad to simply live with him to escape the emotional abuse and toxic relationship I have had with my mom for lots of my life.   She used me in divorce proceedings and continues to do so.
2. My Dad homeschooled me and I believe I learned more from him in that one year I lived with him than three years in the public schools.
3. My dad encouraged me to have a relationship with my mom and always has.  He has even asked her to go on outings.  My Dad encourages me to see the best in everyone.
4. I have spoken to the District Attorney's office, the police, CPS, school counselors, teachers and have even tried logging into court proceedings just to be shut out.  I have told everyone the same thing.  My mom was using me in divorce proceedings, it was horrible, and the emotional abuse continues.  She holds putting me in facilities over my head.  She has tried to isolate me from my dad and anyone who stands with my dad.  She has shown that she hates him more than she loves me.
5. Please dismiss criminal charges from my Dad.  He did not do anything wrong.  He saved me per my request and he is a great dad and has always been there for me.  My Dad has always encouraged me to meet new people and do my best in everything in life.  Why are the courts trying to keep me from my Dad?

Please let me go home to my Dad.  I will continue to work on my relationship with my mom.  My dad is not the cause of my issues with my mom.   Please call or face time me anytime.  Please let my voice be heard in court.

This concludes my sworn testimony. I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge and recollection.


Executed on 11/16/23 in San Diego, CA



Bryce Emert

760-492-4289

Document received by the CA Supreme Court.

**B. Peremptory Challenge filed timely and before any orders made or arguments heard along with the improper denial. This was Monday 02/08/21.**

Document received by the CA Supreme Court.

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address)
R bert Emert
2351 V ista Lago Terrace
Escondido, CA 92029
Self Represented

TELEPHONE NO 760-612-9328    FAX NO (Optional)

EMAIL ADDRESS (Optional) robemert@msn.com

ATTORNEY FOR (Name) Self

FOR COURT USE ONLY

F I L E D
Clerk of the Superior Court

FEB 08 2021

By: _____

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
☐ CENTRAL DIVISION, CENTRAL COURTHOUSE, 1100 UNION ST., SAN DIEGO, CA 92101
☐ CENTRAL DIVISION, HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101
☐ CENTRAL DIVISION, KEARNY MESA, 8950 CLAIREMONT MESA BLVD., SAN DIEGO, CA 92123
☐ CENTRAL DIVISION, JUVENILE COURT, 2851 MEADOW LARK DR., SAN DIEGO, CA 92123
☒ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92081
☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020
☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910

PLAINTIFF(S)/PETITIONER(S)
**Andrea Emert**

DEFENDANT(S)/RESPONDENT(S)
**Robert Emert**

IN THE MATTER OF

**marriage of emert**

**PEREMPTORY CHALLENGE**

JUDGE

**Honorable Patti Ratekin**

DEPT

**NC 19**

CASE NUMBER

**19FL010852N**

Robert Emert _____ is ☒ a party [ ] an attorney for a party in the

above-entitled case and declares that Comm issioer Patti C. Ratekin_____ the judicial officer to

whom this case is assigned, is prejudiced against the party or the party's attorney or the interests of the party or the party's

attorney such that the said party or parties believe(s) that a fair and impartial trial or hearing cannot be had before such

judicial officer.

WH EREFOR pErsuant to the provisions of Code Civ. Proc. §170.6, I respectfully request that this court issue its order

reassigning said case to another, and different, judicial officer for further proceedings

*I also respectfully request a Judge for this and future proceedings*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 02/08/21_____

*rob emert*

Signature

**ORDER**

☐ GRANTED -- The court finds the challenge is timely filed and the party s/attorney's above statement meets the
requirements of Code of Civ. Proc. §170.6 (a)(4). The case will be reassigned and a notice will be mailed to the parties
and/or counsel

☒ DENIED *Previous stipulation to commissioner on 2-4-21*

IT IS SO ORDERED.

Date: **FEB 09 2021**

*Patti Rasel*

Judge/Commissioner of the Superior Court

**PATTI RATEKIN**

Date: _____    Case is reassigned to Judge/Commissioner _____

SDSC ADM-381 (N ew 1/ )    **PEREMPTORY CHALLENGE**    Code Civ. Proc. § 170.6

Document received by the CA Supreme Court.

Document received by the CA Supreme Court.

**C. Retired Commissioner Patti Ratekin indicated in the court transcript that she did not have time to hear arguments on this case on this day she took the case. This was Thursday, 02/04/21.**

25   THE COURT: OKAY  WELL  THAT'S WHAT THE TRIAL

26   IS GOING TO BE ABOUT.  THERE'S GOING TO BE A LOT OF

27   THINGS THAT THE TRIAL IS ABOUT, BUT I'VE GOT TO DEAL WITH

28   WHAT TO DO BETWEEN NOW AND THEN.  AND I'VE GOT A

Peggy Tiess, CSR #7908

15

138

1    RECOMMENDATION -- I NEED TO GET THROUGH PART OF MY

2    CALENDAR, I'M NOT READY TO DO THIS CASE RIGHT NOW, SO

3    I'LL TRAIL YOU UNTIL THE END.  I'LL GIVE YOU AS MUCH TIME

4    AS I CAN GIVE YOU.  OKAY.

5

6                    -oOo-

7         (THE PROCEEDINGS ADJOURNED IN DEPARTMENT 19.

8         NOTE THAT THIS CASE WAS NOT RECALLED IN

9         DEPARTMENT 19 THIS DATE.  ACCORDING TO THE

10        MINUTES, THE CASE WAS SENT TO DEPARTMENT 16,

11        JUDGE BROWER.)

12                    -oOo-

Document received by the CA Supreme Court.

**D. Retired Commissioner Patti Ratekin with no notice to me switches duties from a "commissioner" to a "temporary judge" and was already working outside of jurisdiction due to the properly filed peremptory challenge filed 02/08/21. This "temp judge" notice was slipped in on 02/25/21.**

Document received by the CA Supreme Court.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

00530

| NUMBER | | REPORTER | | | INTERPRETER ☐ SPANISH ☐ | |
|---|---|---|---|---|---|---|
| 19FL010852N | | Vanessa Evans, CSR-12733 CSR# | | | ☐ P ☐ R | |
| | | ☐ NOT REQUESTED ☐ NOT REPORTED | | | | |

| DATE OF HEARING | TIME OF HEARING | DEPT | JUDGE | | CLERK | D. Catlett |
|---|---|---|---|---|---|---|
| 02/25/2021 | 9:00 AM | N-19 | PATTI C. RATEKIN | | K. HICKMAN | |

| PETITIONER | ☒ P ☐ NP | ATTORNEY FOR PETITIONER | ☒ P ☐ NP |
|---|---|---|---|
| Andrea L. Emert | | **DAVID S SCHULMAN** DAVID S SCHULMAN | |

| RESPONDENT | ☒ P ☐ NP | ATTORNEY FOR RESPONDENT | ☐ P ☐ NP |
|---|---|---|---|
| Robert Emert | | **PRO SE** Robert Emert | |

| ADDITIONAL PARTY | ☐ P ☐ NP | ADDITIONAL COUNSEL | ☐ P ☐ NP |
|---|---|---|---|
| | | | |

**Robert Emert Request for Order Hearing**: re: CHANGE in Child Custody, Visitation Support; Spousal Support; Modify Support Retroactive to Date Motion Filed Pursuant to FC Section 3653 & 4333; FCS to Interview Bryce (Scheduled per 11/10/20 Ex Parte Order) Next Hearing: 3/18/2021   ☒ CONFIRMED ☐ VACATED

---

THE ABOVE MATTER CAME ON FOR HEARING THIS DATE WITH ABOVE APPEARANCES, AFTER HEARING THE COURT ORDERED THAT

CONSOLIDATION: ☐ CASE NO ___ IS CONSOLIDATED WITH PRIMARY/LEAD CASE NO. ___
OATH: ☐ PTNR ☐ RESP SWORN AND EXAMINED ☐ AS TO JURISDICTION ☐ ADVISAL, WAIVER OF RIGHTS, STIPULATION RE: PATERNITY FILED
CUSTODY: LEGAL: ☐ JOINT ☐ SOLE LEGAL PTNR ☐ SOLE LEGAL RESP   PHYSICAL: ☐ JOINT ☐ PRIMARY ☐ PTNR ☐ RESP
VISITATION: ☐ PARTIES REFERRED TO FAMILY COURT SERVICES ___ ☐ EXTENDED MEDIATION ☐ PSYCH. EVALUATION ORDERED
☐ FAMILY COURT SERVICES ☐ MINORS' COUNSEL RECOM. DATED ___ ADOPTED AS AN ORDER ☐ BY STIPULATION ☐ AS MODIFIED
☐ VISITATION OF ☐ PTNR ☐ RESP ☐ SUPERVISED BY ☐ AGREED UPON 3RD PARTY ☐ PROFESSIONAL AGENCY ___

☐ CHILDREN NOT TO BE REMOVED FROM ☐ COUNTY ☐ STATE WITHOUT WRITTEN CONSENT OF THE OTHER PARENT OR THE COURT
☐ PARTIES NOT TO MAKE DISPARAGING REMARKS ABOUT THE OTHER PARTY OR HAVE ADULT DISCUSSIONS IN THE PRESENCE OF THE CHILDREN
☐ PTNR ☐ RESP ORDERED NOT TO CONSUME ALCOHOL/DRUGS IN PRESENCE OF CHILDREN ☐ DURING VISITS OR W/IN 24 HRS OF VISITATION
☐ PTNR ☐ RESP TO COMP SUBSTANCE ABUSE ASSESSMENT
☐ PTNR ☐ RESP TO COMP. PARENTING CLASS ☐ PTNR ☐ RESP TO COMP. ANGER MGMT. CLASS ☐ PTNR ☐ RESP TO COMP. 52-WEEK DV PRP
☐ PTNR ☐ RESP STIPULATE/ORDERED TO DRUG TESTING ☐ PROOF TO ☐ COURT FILE ☐ COURT
COURT FINDINGS (FC§ 3048): BASIS FOR JURISDICTION: ☐ HOME STATE ☐ EMERGENCY ☐ NO OTHER STATE HAS ASSUMED JURISD. & THIS IS AN APPROPRIATE FORUM ☐ PREVIOUS ORDERS MADE IN THIS COURT ☐ ___
MANNER NOTICE GIVEN: ☐ PERSONAL SERVICE ☐ MAIL SERVICE ☐ PERSONAL PRESENT & HAS KNOWLEDGE OF HEARING ☐
HABITUAL RESIDENCE OF THE CHILD(REN): ☐ SAN DIEGO CNTY, CALIFORNIA, USA ☐ ___
☐ PARTIES ADVISED THAT VIOLATION OF THIS ORDER MAY RESULT IN CIVIL OR CRIMINAL PENALTIES, OR BOTH
THE COURT FINDS:   CHILDREN CHILD SHARE - ___ %   ☐ INTERIM ☐ FINAL CUSTODY/VISITATION ORDER

| PTNR: ☐ SINGLE ☐ HH ☐ MARRIED ☐ JOINT ☐ FILING SEP ( ) | RESP: ☐ SINGLE ☐ HH ☐ MARRIED ☐ JOINT ☐ FILING SEP ( ) |
|---|---|
| GROSS $___ ☐ NON-TAX $ ___ ☐ ABILITY | GROSS $___ ☐ NON-TAX $ ___ ☐ ABILITY |
| DEDUCT: HEALTH$___ PROP.TAX$___ INTEREST$___ | DEDUCT: HEALTH$___ PROP.TAX$___ INTEREST$___ |
| UNION DUES$___ MAND.RETIRE$MT$___ HARDSHIP$___ | UNION DUES$___ MAND. RETIRE$MT$___ HARDSHIP$___ |
| NEW SPOUSE$ ___ NET$ ___ | NEW SPOUSE$ ___ NET$ ___ |

THE COURT ORDERS CHILD SUPPORT OF:$___ MO.EFF: ___ PAYABLE BY ☐ PTNR ☐ RESP
☐ CHILD SUPPORT ORDERED THRU D.C.S.S
☐ FIRST CHILD $___ SECOND CHILD $___ THIRD CHILD $___ FOURTH CHILD $___
☐ PTNR ☐ RESP TO PAY 1/2 OF ANY UNCOVERED MEDICAL/DENTAL/ORTHODONTIC/OPTICAL/PSYCHOLOGICAL FEES PURSUANT TO FC§4063
☐ PTNR ☐ RESP TO PAY 1/2 OF CHILD CARE COSTS FOR EMPLOYMENT / JOB SEARCH ONLY / AUTHORIZED EDUCATIONAL PURSUITS
☐ BILLS TO BE SUBMITTED W/IN 10/30 DAYS AND REIMBURSEMENT DUE 10/30 DAYS AFTER RECEIPT OF THE BILL
☐ PTNR ☐ RESP TO MAINTAIN ☐ HEALTH INSURANCE AT MINIMAL OR NO COST ☐ LIFE INSURANCE
CHILD SUPPORT: EARNINGS ASSIGNMENT ☐ ORDERED ☐ ISSUED ☐ NOT ISSUED.

THE COURT ORDERS SPOUSAL SUPPORT OF:$___ MO.EFF: ___ PAYABLE BY ☐ PTNR ☐ RESP ☐ RESERVED
☐ TERMINATED ☐ TERM. DATE ___ ☐ THE COURT HAS CONSIDERED FC4320 FACTORS
SPOUSAL SUPPORT: EARNINGS ASSIGNMENT ☐ ORDERED ☐ ISSUED ☐ NOT ISSUED.

ATTY FEES $___ AT $___ MO. EFF. ___ BY ☐ PTNR ☐ RESP ☐ RESERVED ☐ 2 MONTH ACCELERATION CLAUSE
☐ AS ADDTL. SUPPORT FOR ENFORCEMENT PURPOSES ☐ WAGE ASSIGNMENT AUTHORIZED
ARREARAGES: ☐ COURT SETS ARREARAGES AT $___ AS OF ___ ☐ PTNR ☐ RESP ORDERED TO PAY $___ MO EFF: ___
HEARING: ☐ OFF CAL ☒ CONT. TO 3-30-21 AT 145 PM IN DEPT. 19 BY ☐ PTNR ☐ RESP ☐ STIP ☒ COURT ☐ REISSUE
☒ EXISTING ORDERS REMAIN IN EFFECT PENDING FURTHER HEARING, EXCEPT WHERE IN CONFLICT, THIS ORDER CONTROLS   RFO
☐ COURT RETAINS JURISDICTION OVER ___ ☐ RETROACTIVE TO ___ ☐ RESERVED
☐ COURT APPTS. ATTY. ___ FOR ☐ MINOR(S) {RESERVED AS TO FEE REIMBURSEMENT} ☐ SEE ORDER APPOINTING COUNSEL

Page 1 of 2
SDSC D-025 (Rev 5/14)

↓

## MINUTES OF THE FAMILY COURT

*Document received by the CA Supreme Court.*

Commissioner Patti C. Ratekin is a judicial officer selected by the judges of the San Diego Superior Court assigned to hear and determine Family law cases because of her experience, skill and knowledge in handling these matters.

In order to have a commissioner act as a judge in a case, all parties to the case must agree that the commissioner can act as a temporary judge. If any party does not agree, the case will be reassigned to another judicial officer for today's hearing and all future hearings.

To "stipulate" means you agree to the appointment of Commissioner Patti C. Ratekin as a judge for this hearing and all future hearings and trials in this case, including any contempt proceedings and all post-judgment matters.

**IT IS STIPULATED** by the attorneys and / or parties by phone / virtual hearing that Commissioner Patti C. Ratekin will hear and decide all present and future matters in this case as a Temporary Judge, including any contempt proceedings and all post judgment matters.

The parties present oral arguments.

**Court orders:**
- The Court appoints Attorney Matthew Cord as Minor's Counsel for the minor, Bryce.
- The Court appoints Attorney Cathryn Young as Minor's Counsel for the minor, Skylar.
- Court reserves jurisdiction over payment of Minor's Counsel fees.
- Both parties are directed to sign releases in order for Minor's Counsels to speak with the therapists. The parties shall each contact Minor's Counsel to speak with the children.
- A copy of the FCS Report shall be provided to Minor's Counsels.
- Respondent is directed to make ten (10) job contacts per week until employed full time at 40 hours per week.
- Both parties are directed to file an updated Income & Expense Declaration prior to the next hearing.
- Attorney Schulman shall provide Minor's Counsels with the parties' personal information sheets.
- **The RFO is continued to March 30, 2021 at 1:45pm in Department 19.**

-dc-

Document received by the CA Supreme Court.

**E. Email to Ms. Ratekin's clerk that I was indeed in the ER recovering from a widow maker heart attack caused by her and her cronies terrorizing me and my children after two years of a 50/50 scenario by two judges 3 FCS reports and 2 FCS child interviews.  This was on Thursday, 09/30/21.**

Document received by the CA Supreme Court.

**Case file 19FI010852N**

**Rob Emert <robemert@msn.com>**

Thu 9/30/2021 1:20 PM

To:sara.armstead@sdcourt.ca.gov <sara.armstead@sdcourt.ca.gov>

📎 1 attachments (3 MB)

20210930_131022.jpg;

I I'm in the ER due to a massive heart attack.    Picture attached to document.    There was an ex parte request at 8:30 this morning that is not an emergency.    Commissioner Ratekin has been so biased throughout her hearing my case that she says she is going to rule on the ex parte today at 3 if I don't show up personally at court.    It's not an emergency but Commissioner Ratekin wants to burn me so bad she says she will rule on this while I am in the ER right out of a massive heart attack.    Yeah, no bias there.

Rob Emert
760-612-9328

Sent from my T-Mobile 5G Device
Get Outlook for Android

Document received by the CA Supreme Court.

**F. On 10/04/21, Ms. Ratekin finally recuses but throws in an order of supervised visitation based on a witness affidavit who was simply providing testimony regarding the child psychologist.  This has zero to do with child custody and everything to do with malicious retaliation of Ms. Ratekin because this witness affidavit was going against the narrative of what Ratekin had been trying to do for the prior six month of putting my son in a "facility" for profit, divorce leverage and cronyism.**

Document received by the CA Supreme Court.

Document received by the CA Supreme Court.

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):

Matthew W. Cord 204917
Andrew P. Johnson, APC
440 South Melrose Dr. Suite 260
Vista, CA 92081

TELEPHONE NO.: 7606390187    FAX NO. (Optional):
E-MAIL ADDRESS (Optional): mcord@apjohnsonesq.com
ATTORNEY FOR (Name): Minor Child

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

☐ CENTRAL DIVISION, CENTRAL COURTHOUSE, 1100 UNION ST., SAN DIEGO, CA 92101
☐ CENTRAL DIVISION, COUNTY COURTHOUSE, 220 W. BROADWAY, SAN DIEGO, CA 92101
☐ CENTRAL DIVISION, FAMILY COURT, 1555 6TH AVE., SAN DIEGO, CA 92101
☐ CENTRAL DIVISION, MADGE BRADLEY, 1409 4TH AVE., SAN DIEGO, CA 92101
☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020
☒ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA CA 92081
☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910

PETITIONER(S): ANDREA EMERT

RESPONDENT(S): ROBERT EMERT

EX PARTE APPLICATION AND ORDER  FAMILY LAW

JUDGE/DEPT
D-19

CASE NUMBER
19FL010852N

**FILED** SEP 28 2021

FOR HEARING APPEARANCE INFORMATION VISIT www.sdcourt.ca.gov

Hearing Date: 9/30/2021    Time: 8:30    ☒ a.m.  ☐ p.m.    ☒ Opposed  ☐ Unopposed

1. Type of relief requested:
☐ Temporary Restraining Orders          ☒ Child Custody/Visitation Order
☒ Order Shortening Time                 ☐ Order After Hearing Being Submitted for Signature
☒ Other (specify): Temp Emergency Custody Orders
   Ex parte relief is necessary because:
   Respondent is continually exposing minor child to court proceedings
   and documents; his other behavior (see concurrently filed
   declaration of Matthew W. Cord) harm minor child.
2. Name of opposing attorney/party: Robert Emert, Respondent (pro per); David Schulman, Esq.
3. Did the opposing attorney/party receive notice? ☒ Yes ☐ No  Date: 9/29/2021  Time: 8:30  ☒ a.m. ☐
4. If notice was not given, state reason(s):

5. Have evidentiary declarations been submitted? ☒ Yes ☐ No
6. Has a proposed order been submitted? ☒ Yes ☐ No
7. Have you appeared ex parte before for the same relief? ☐ Yes ☒ No  If "yes," relief was ☐ granted ☐ denied.

I declare under penalty of perjury under the laws of the State of California that the above information and all attachments are true and correct.

Date 9-28-21                                    Signature

**ORDER**

IT IS SO ORDERED:

The requested relief is  ☐ DENIED  ☒ GRANTED as follows:

see attached

☐ Continued on attachment
☐ Petitioner  ☐ Respondent to prepare formal order.

Date 9/30/21                         PATTI C. RATEKIN
                                     Judge/Commissioner of the Superior Court

SDSC D-045 (Rev. 11/14)  **EX PARTE APPLICATION AND ORDER - FAMILY LAW**
CEB EssentialForms                                    Emert

ATTACHMENT TO EX PARTE ORDER:

The court grants a mistrial except for the termination of marital status.

This is set for a one day trial on November 29, 2021. It will not finish and this court does not have a date available.

Pursuant to CRC 5.82 (C)(5) For dissolution, legal separation, and nullity cases initially filed on or after January 1, 2014, the goals of any family centered case resolution process should be to finalize dispositions as follows:

(A) At least 20 percent are disposed within 6 months from the date the petition was filed;

(B) At least 75 percent are disposed within 12 months from the date the petition was filed; and

(C) At least 90 percent are disposed within 18 months from the date the petition was filed.

The matter is set for a two day trial on November 29, 2021 and November 30, 2021 at 9:00 a.m. in the Presiding Department of this case with Judge Lorna Alksne.     D-1001

Pending a hearing on October 4, 2021 at 9:00 a.m. the minor child Bryce shall be in the care of Andrea Emert. Father stated during the initial ex parte hearing in the morning he was in the emergency room and had been there since the notice of the ex parte hearing on September 29, 2021.  He later stated that he had been in the hospital prior to the ex parte notice, the court ordered him to turn the child over to mother, he said that he was going to pick up the child later, then said he was in his doctors office. The court trailed the matter to 3:30 p.m. so father could appear.  The court revoked Mr. Emert's ability to appear by Teams.

At 3:30 p.m., father appeared on the phone and represented he had a heart attack and was in the hospital. Father is ordered to turn over the minor to his mother forthwith.  This is not a change of custody but merely a continuance to give father the ability to present his case.

The court finds an emergency to supervised fathers visits pursuant to CRC 5.151 based upon the declaration of Mark Fidelman filed September 15, 2021 by father.

---

From: Lantz, Kristin <Kristin.Lantz@SDCourt.CA.Gov>
Sent: Tuesday, October 5, 2021 4:37 PM
To: Dave Schulman (dschulman@msmfamilylaw.com) <dschulman@msmfamilylaw.com>; robemert@msn.com <robemert@msn.com>; mcord@apjohnsonesq.com <mcord@apjohnsonesq.com>; catie@gylfamilylaw.com <catie@gylfamilylaw.com>
Cc: Husted, Adelina <Adelina.Husted@SDCourt.CA.Gov>
Subject: Minute Order re: Recusal, reassignment, and RFO date on 10/7/21 at 10am

Good afternoon,

Please note that Minor's Counsel's RFO has been set on 10/7/21 at 10:00 am in the Presiding Department (1002).  Judge Alksne has ordered all parties and counsel to appear IN PERSON.

Thank you,

Document received by the CA Supreme Court.

00828

MC-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Robert Emert | |
| 2351 Vista Lago Terrace | |
| Escondido, CA 92029 | |

TELEPHONE NO. 760-612-9328    FAX NO. *(Optional):* N/A
E-MAIL ADDRESS *(Optional):* robemert@msn.com
ATTORNEY FOR *(Name):* pro se

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 325 S. Melrose Dr.
MAILING ADDRESS: 325 S. Melrose Dr.
CITY AND ZIP CODE: Vista, CA 92081
BRANCH NAME: Vista, CA 92081

2021 SEP 15 P 3:13

PLAINTIFF/PETITIONER: Andrea Emert

DEFENDANT/RESPONDENT: Robert Emert

| | CASE NUMBER |
|---|---|
| **DECLARATION** | 19FL010852N |

I, Mark Fidelman, being age of majority and not under any legal disability, make the following declaration of my own free will, and of my own personal knowledge and belief.

I am an acquaintance of Robert Emerts. Mr. Emert explained to me and others his issues with his divorce. He asked me and others to listen to the conversation he was going to have with his son's Psychologist, Dr. Olague. I agreed and listened to two conversations on different days while on speakerphone with Mr. Emert. On 08/12/21, I listened to Mr. Emert and Dr. Olague speak about both of their concerns for Bryce Emert.

On 08/26/21, I listened in as Mr. Emert, Dr. Olague and Mr. Emerts ex-wife spoke about concerns for Bryce.

What was very clear in both conversations was that at separate times, both Dr. Olague and Mr. Emerts X wife indicated very clearly and several times that Dr. Olague would not be involved or pulled into any court related matters so the focus could be solely on the minor, Bryce Emert. It was very apparent that Dr. Olague tried to make it clear to Mr. Emert that he wanted to generally get his take on where his son was at and the challenges he faced so that he could help his sons parents moving forward in helping their son.

I have read what Dr. Olague has now indicated about Mr. Emert. What is very concerning about Dr. Olague is the deceptive manner in which he said anything they talked about would not be shared with the court and that anything they discussed would not draw him into anything court, divorce or custody related. Most of all Dr. Olagues claims are misrepresentations and mis-characterizations of what was actually said and discussed in regards to Mr. Emert.

I'd be happy to discuss the matter under penalty of perjury with the court if so asked.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 9/14/2021

Mark Fidelman
(TYPE OR PRINT NAME)

(SIGNATURE OF DECLARANT)

☐ Attorney for  ☐ Plaintiff  ☐ Petitioner  ☐ Defendant
☐ Respondent  ☒ Other *(Specify):* Witness

*Document received by the CA Supreme Court.*

## G. Appellate court denial of rehearing motion

Document received by the CA Supreme Court.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

Court of Appeal
Fourth Appellate District

DIVISION ONE

**FILED ELECTRONICALLY**

*02/26/2024*

STATE OF CALIFORNIA

Brandon L. Henson, Clerk
By: Rita Rodriguez

In re the Marriage of ANDREA L.
SCHUCK and ROBERT EMERT.

D079955

ANDREA L. SCHUCK,

    Respondent,

        v.

ROBERT EMERT,

    Appellant.

(Super. Ct. No. 19FL010852N

ORDER DENYING REHEARING

THE COURT:

    The petition for rehearing is denied.

O'ROURKE, Acting P. J.

Copies to:  All parties

Document received by the CA Supreme Court.

## H. Conformed copy of motion to rehear.

Please note that this was removed as it is already part of the record.

Document received by the CA Supreme Court.

# I. Denial opinion of rehearing

Document received by the CA Supreme Court.

Filed 1/30/24

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

In re the Marriage of ANDREA L. SCHUCK and ROBERT EMERT.

ANDREA L. SCHUCK,

    Respondent,

    v.

ROBERT EMERT,

    Appellant.

D079955

(Super. Ct. No. 19FL010852N

Document received by the CA Supreme Court.

    APPEAL from a judgment of the Superior Court of San Diego County, Patti Ratekin, Commissioner and Lorna Alknse, Judge. Affirmed.

    Robert Emert, in pro. per., for Appellant.

    Law Office of Linda Cianciolo and Linda Cianciolo for Respondent.

    Self-represented litigant Robert Emert (Robert) appeals a family court judgment entered against him by a family court commissioner, Patti Ratekin, arguing it is "void" or "required to be set aside and or vacated due to [Commissioner Ratekin's] egregious violations of state and federal laws/rules that govern our courts basic due process, basic service, and ethical conduct"

and also because "she entered the judgments [*sic*] after she recused . . . ."[1] Robert also appeals from rulings by Judge Lorna Alknse, who he claims, "kept me, my evidence, my witnesses and my [American Disability Act] coordinators out of my own trial even though I simply requested a continuance and or remote hearings due to a heart attack." Finally, he claims, with no citation to the record, that Judge Alana Robinson refused to hear his challenge to Commissioner Ratekin's rulings.

Respondent Andrea L. Schuck (formerly Emert (Andrea)) points out Robert has failed to cite to the record and provide cogent arguments or sound legal analysis and therefore has not presented sufficient grounds for reversal. We agree and affirm.

## DISCUSSION

"Every brief must support any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(C).) . . . If a party fails to support an argument with the necessary citations to the record, the argument will be deemed waived." (*LA Investments, LLC v. Spix* (2022) 75 Cal.App.5th 1044, 1061; accord, *In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

Further, it is an appellant's burden to provide an adequate record establishing error. (*Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1178.)

1    As respondent points out, one of Robert's notices of appeal states the appeal is from Commissioner Ratekin's October 15, 2021 order, but that is the date the commissioner filed her June 24, 2021 order. We construe the appeal as taken from the June 24, 2021 order. We liberally construe notices of appeal " 'so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced.' " (*In re Joshua S.* (2007) 41 Cal.4th 261, 272; accord, Cal. Rules of Court, rule 8.100(a)(2).) Robert's second notice of appeal states it is from Judge Alksne's November 18, 2021 order.

Document received by the CA Supreme Court.

2

Generally, an appellant must include in the record either a reporter's transcript or a settled statement. (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187; *Gonzalez v. Rebollo* (2014) 226 Cal.App.4th 969, 977 ["Without a complete record, we are unable to determine whether substantial evidence supported the implied findings underlying the trial court's order"].)  " 'Failure to provide an adequate record on an issue requires that the issue be resolved against [appellant].' " (*Foust*, at p. 187.)  These rules of appellate procedure apply regardless of whether an appellant is represented by counsel or is self-represented. (*Nwosu v.* Uba (2004) 122 Cal.App.4th 1229, 1247.)

Any ambiguity in the record is resolved in favor of the judgment. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608).)  On appeal, this court starts with a presumption that the judgment or order being appealed is correct; the burden is on the appellant to affirmatively show error.  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [" 'All intendments and presumptions are indulged to support [the judgment or order] on matters as to which the record is silent, and error must be affirmatively shown' "].)

As an appellant, Robert is further obligated to demonstrate how the rulings he challenges prejudiced him.  (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800-802; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 105-106 ["[O]ur duty to examine the entire cause arises when and only when the appellant has fulfilled his duty to tender a proper prejudice argument.  Because of the need to consider the particulars of the given case, rather than the type of error, the appellant bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice"]; *Vaughn v. Jonas* (1948) 31 Cal.2d 586, 601 ["[t]o presume in favor of error or prejudice would be directly contrary to the policy of this state"].)

Document received by the CA Supreme Court.

Based on the above principles and Robert's deficient briefing, we are unable to conduct a meaningful review of his assertions of error and must resolve this appeal in favor of the judgment.  Robert has forfeited his claims because he has not set forth the portion of the courts' rulings he disagrees with or made cogent arguments assigning error based on the applicable law. The presentation of an appeal is not merely a rehash of arguments unsuccessful at trial, but instead is a careful assertion of *legal* error and resulting prejudice.  (*Rossiter v. Benoit* (1979)  88 Cal.App.3d 706, 712.)

At the outset of his opening brief, Robert acknowledges his brief lacked proper citation to legal authority:  "In the interest of clarity and readability, this brief focuses on the application of key authorities, those that are most essential to the arguments presented in this case.  Although the tenor of the entire brief reflects the principles set out by a broad range of authorities as referenced below, the document does not explicitly cite every authority on every page.  The table of authorities that accompanies this brief provides a comprehensive list of all the cases, statutes, and other sources that significantly influenced the positions taken in this brief.  [¶]  The lack of page numbers provided in the table of authorities that are supposed to correspond to those sections where the authorities are explicitly invoked and discussed is not necessary as all the table of authorities are paramount in describing this scenario.  It should be understood that the principles drawn from these authorities permeate the entirety of the arguments, even if not expressly cited on every page.  [¶]  This approach ensures that the brief remains cogent, while still acknowledging the breadth of authority underpinning the argument."  (Some capitalization omitted.)  "By failing to provide an adequate record, [Robert] cannot meet his burden to show error and we must resolve

Document received by the CA Supreme Court.

any challenge . . . against him." (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348.)

We also decline to address Robert's arguments raised for the first time in the reply brief, including his request for judicial notice.[2]  "For obvious reasons of fairness, points raised for the first time in a reply brief will ordinarily not be considered." (*Rubinstein v. Fakheri* (2020) 49 Cal.App.5th 797, 809.)  This includes his request for an evidentiary hearing.  "Although appellate courts are authorized to make findings of fact on appeal . . .  the authority should be exercised sparingly.  [Citation.]  Absent exceptional circumstances, no such findings should be made." (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.)

---

[2]    After filing his reply brief, Robert filed in this court a motion requesting we take judicial notice of unspecified "undisputed factual matters in the record of this case."  He also requested an evidentiary hearing "in order to present additional evidence related to the timeline and events stated below, which establish that the trial court lacked jurisdiction when it recorded the November 29, 2021 default judgment on [January 24, 2022] due to the automatic stays triggered by [his] previously filed appeals[.]"  We denied the request for judicial notice by separate order.

## DISPOSITION

The judgment is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:

IRION, J.

BRANDON L. HENSON, Clerk of the Court of Appeal,
Fourth Appellate District, State of California, does hereby
Certify that the preceding is a true and correct copy of the
Original of this document/order/opinion filed in this Court,
as shown by the records of my office.

WITNESS, my hand and the Seal of this Court.

DATO, J.

*01/30/2024*



BRANDON L. HENSON, CLERK

Deputy Clerk

Document received by the CA Supreme Court.

6

**J. 03/30/21 hearing where all my parental legal rights are snaked away with zero clear and convincing evidence of unfitness.**

Document received by the CA Supreme Court.

# SUPERIOR COURT ＝ CALIFORNIA COUNTY O' ＇AN DIEGO  00586

| NUMBER | | | REPORTER     CSR# | INTERPRETER ☐ SPANISH ☐ _____ |
|---|---|---|---|---|
| 19FL010852N | | | Shannon Riddell, CSR #13893 | ☐P ☐R |
| | | | ☐NOT REQUESTED ☐NOT REPORTED | |

| DATE OF HEARING | TIME OF HEARING | DEPT | JUDGE | CLERK |
|---|---|---|---|---|
| 03/30/2021 | 1:45 PM | N-19 | PATTI C. RATEKIN | ~~K. HICKMAN~~ D. Callett |

| PETITIONER | | | ATTORNEY FOR PETITIONER | |
|---|---|---|---|---|
| Andrea L. Emert | ☒P ☐NP | | DAVID S SCHULMAN DAVID S SCHULMAN & Sarah Bear | ☒P ☐NP |

| RESPONDENT | | | ATTORNEY FOR RESPONDENT | |
|---|---|---|---|---|
| Robert Emert | ☒P ☐NP | | PRO SE Robert Emert  Jack Barrett | ☒P ☐NP |

| ADDITIONAL PARTY | | | ADDITIONAL COUNSEL | |
|---|---|---|---|---|
| MINOR'S COUNSEL | ☐P ☐NP | | MATTHEW W CORD MATTHEW W CORD & Cathryn Young | ☒P ☐NP |

**Robert Emert Request for Order Hearing**: CHANGE in Child Custody, Visitation Support; Spousal Support; Modify Support Retroactive to Date Motion Filed Pursuant to FC Section 3653 & 4333; FCS to Interview Bryce (Scheduled per 11/10/20 Ex Parte Order)
Next Hearing: 5/11/2021                                             ☒CONFIRMED ☐VACATED

---

THE ABOVE MATTER CAME ON FOR HEARING THIS DATE WITH ABOVE APPEARANCES, AFTER HEARING THE COURT ORDERED THAT

**CONSOLIDATION:** ☐CASE NO _____ IS CONSOLIDATED WITH PRIMARY/LEAD CASE NO. _____
**OATH:** ☐PTNR ☐RESP SWORN AND EXAMINED ☐AS TO JURISDICTION ☐ADVISAL, WAIVER OF RIGHTS, STIPULATION RE: PATERNITY FILED
**CUSTODY: LEGAL:** ☐JOINT ☐SOLE LEGAL PTNR ☐SOLE LEGAL RESP   **PHYSICAL:** ☐JOINT ☐PRIMARY ☐RESP
**VISITATION:** ☐PARTIES REFERRED TO FAMILY COURT SERVICES   ☐EXTENDED MEDIATION ☐PSYCH. EVALUATION ORDERED
☐FAMILY COURT SERVICES ☐MINORS' COUNSEL RECOM. DATED _____ ADOPTED AS AN ORDER ☐BY STIPULATION ☐AS MODIFIED
☐VISITATION OF ☐PTNR ☐RESP ☐SUPERVISED BY ☐AGREED UPON 3RD PARTY ☐PROFESSIONAL AGENCY _____

---

☐CHILDREN NOT TO BE REMOVED FROM ☐COUNTY ☐STATE WITHOUT WRITTEN CONSENT OF THE OTHER PARENT OR THE COURT
☐PARTIES NOT TO MAKE DISPARAGING REMARKS ABOUT THE OTHER PARTY OR HAVE ADULT DISCUSSIONS IN THE PRESENCE OF THE CHILDREN
☐PTNR ☐RESP ORDERED NOT TO CONSUME ALCOHOL/DRUGS IN PRESENCE OF CHILDREN ☐DURING VISITS OR W/IN 24 HRS OF VISITATION
☐PTNR ☐RESP TO COMP SUBSTANCE ABUSE ASSESSMENT
☐PTNR ☐RESP TO COMP. PARENTING CLASS ☐PTNR ☐RESP TO COMP. ANGER MGMT. CLASS ☐PTNR ☐RESP TO COMP. 52-WEEK DV P
☐PTNR ☐RESP STIPULATE/ORDERED TO DRUG TESTING ☐PROOF TO ☐COURT FILE ☐COUNSEL BY
**COURT FINDINGS (FC§ 3048):** BASIS FOR JURISDICTION: ☐HOME STATE ☐EMERGENCY ☐NO OTHER STATE HAS ASSUMED JURISD. & THIS IS AN APPROPRIATE FORUM ☐PREVIOUS ORDERS MADE IN THIS COURT ☐
MANNER NOTICE GIVEN: ☐PERSONAL SERVICE ☐MAIL SERVICE ☐PERSONALLY PRESENT & HAS KNOWLEDGE OF HEARING ☐ _____
HABITUAL RESIDENCE OF THE CHILD(REN): ☐SAN DIEGO CNTY, CALIFORNIA, USA ☐ _____
☐PARTIES ADVISED THAT VIOLATION OF THIS ORDER MAY RESULT IN CIVIL OR CRIMINAL PENALTIES, OR BOTH
THE COURT FINDS:            CHILDREN CHILD SHARE -       %            ☐INTERIM ☐FINAL CUSTODY/VISITATION ORDER

| PTNR: ☐SINGLE ☐HH ☐MARRIED ☐JOINT ☐FILING SEP (    ) | RESP: ☐SINGLE ☐HH ☐MARRIED ☐JOINT ☐FILING SEP (    ) |
|---|---|
| GROSS $_____ ☐NON-TAX $_____ ☐ABILITY | GROSS $_____ ☐NON-TAX $_____ ☐ABILITY |
| DEDUCT: HEALTH$_____ PROP.TAX$_____ INTEREST$_____ | DEDUCT: HEALTH$_____ PROP.TAX$_____ INTEREST$_____ |
| UNION DUES$_____ MAND.RETIREMT$_____ HARDSHIP$_____ | UNION DUES$_____ MAND.RETIREMT$_____ HARDSHIP$_____ |
| NEW SPOUSE$_____ NET$_____ | NEW SPOUSE$_____ NET$_____ |

THE COURT ORDERS CHILD SUPPORT OF:$_____ MO.EFF: _____ PAYABLE BY ☐PTNR ☐RESP
☐CHILD SUPPORT ORDERED THRU D.C.S.S
☐FIRST CHILD $_____ SECOND CHILD $_____ THIRD CHILD $_____ FOURTH CHILD $_____
☐PTNR ☐RESP TO PAY 1/2 OF ANY UNCOVERED MEDICAL/DENTAL/ORTHODONTIC/OPTICAL/PSYCHOLOGICAL FEES PURSUANT TO FC§4063
☐PTNR ☐RESP TO PAY 1/2 OF CHILD CARE COSTS FOR EMPLOYMENT / JOB SEARCH ONLY / AUTHORIZED EDUCATIONAL PURSUITS
☐BILLS TO BE SUBMITTED W/IN 10/30 DAYS AND REIMBURSEMENT DUE 10/30 DAYS AFTER RECEIPT OF THE BILL
☐PTNR ☐RESP TO MAINTAIN ☐HEALTH INSURANCE AT MINIMAL OR NO COST ☐LIFE INSURANCE
CHILD SUPPORT: EARNINGS ASSIGNMENT ☐ORDERED ☐ISSUED ☐NOT ISSUED.

THE COURT ORDERS SPOUSAL SUPPORT OF:$_____ MO.EFF: _____ PAYABLE BY ☐PTNR ☐RESP ☐RESERVED
☐TERMINATED ☐TERM. DATE _____ ☐THE COURT HAS CONSIDERED FC4320 FACTORS
SPOUSAL SUPPORT: EARNINGS ASSIGNMENT ☐ORDERED ☐ISSUED ☐NOT ISSUED.

ATTY FEES $_____ AT $_____ MO. EFF. _____ BY ☐PTNR ☐RESP ☐RESERVED ☐2 MONTH ACCELERATION CLAUSE
☐AS ADDTL. SUPPORT FOR ENFORCEMENT PURPOSES ☐WAGE ASSIGNMENT AUTHORIZED
ARREARAGES: ☐COURT SETS ARREARAGES AT $_____ AS OF Aug ☐PTNR ☐RESP ORDERED TO PAY $_____ MO EFF: _____
HEARING: ☐OFF CAL ☐CONT. TO 5-11-21 AT 9:00 IN DEPT. 19 BY ☐PTNR ☐RESP ☐STIP ☒COURT ☐REISSUE
☒EXISTING ORDERS REMAIN IN EFFECT PENDING FURTHER HEARING, EXCEPT WHERE IN CONFLICT, THIS ORDER CONTROLS  RFO
☐COURT RETAINS JURISDICTION OVER _____ ☐RETROACTIVE TO _____ ☐RESERVED
☐COURT APPTS. ATTY. _____ FOR ☐MINOR(S) [RESERVED AS TO FEE REIMBURSEMENT] ☐SEE ORDER APPOINTING COUNSEL

Page 1 of 2
SDSC D-025 (Rev 5/14)                    **MINUTES OF THE FAMILY COURT**

Document received by the CA Supreme Court.

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO  CAL. NO.

| NUMBER | DATE OF HEARING |
|---|---|
| 19FL010852N | 03/30/2021 |

THE ABOVE MATTER CAME ON FOR HEARING THIS DATE WITH ABOVE APPEARANCES, AFTER HEARING THE COURT ORDERED THAT

**EMPLOYMENT:** ☐PTNR ☐RESP ADMONISHED PURSUANT TO FC§4330 ☐PTNR ☐RESP TO MAKE_____ JOB CONTACTS PER WEEK AND SUBMIT THE DETAILS TO OPPOSING COUNSEL/PARTY_____

**PAYMENTS:** ☐PETITIONER _____
☐RESPONDENT _____
**POSSESSIONS:** ☐PETITIONER _____
☐RESPONDENT _____

**RESTRAINING ORDERS:** ☐PTNR ☐RESP MOTION FOR RESTRAINING ORDER ☐GRANTED ☐DENIED PURSUANT TO TEMPORARY ORDER ☐EXCEPTION FOR COURT ORDERED VISITATION EXCHANGES ☐PROTECTED PARTY MAY RECORD COMMUNICATION FROM RESTRAINED PARTY ☐WITH MODIFICATIONS (_____ YDS) TO EXPIRE: ☐3 YEARS ☐_____ ☐FC§6389 FIREARMS ADVISAL ☐PC§29825 FIREARMS NOTICE TO RESTRAINED PARTY ☐RESTRAINED PARTY IN MILITARY- BRANCH:_____ RANK:_____ ☐RESTRAINED PARTY TO PICK UP PERSONAL PROPERTY WITH PEACE OFFICER PRESENT ON _____

**MOTIONS:** ☐PTNR ☐RESP MOTION_____ ☐GRANTED ☐DENIED

**STIPULATION:** ☐PART/FULL ☐SUBMITTED/RECITED BY COUNSEL ☐PARTIES AGREE TO BE BOUND ☐COUNSEL AUTH. ☐ADOPTED AS ORDER

**JUDGMENT:** ☐GRANTED EFF._____ ☐INCORP STIP. ☐DISSOLUTION ☐STATUS ONLY ☐LEGAL SEP ☐NULLITY ☐PATERNITY

**WAIVER:** ☐PTNR ☐RESP WAIVES FILING OF FINAL DECLARATION OF DISCLOSURE

**DISMISSAL:** ☐AFTER PROPER NOTICE TO PARTIES, CASE DISMISSED WITHOUT PREJUDICE DUE TO INACTIVITY

**ORDER AFTER HEARING:** ☐PTNR ☒RESP ☐MINORS ATTY. TO PREPARE ☒SEND TO OPPOSING COUNSEL FOR APPROVAL ☐SUBMIT DIRECTLY

☐PTNR ☐RESP REFERRED TO FLF FOR PREPARATION OF ☐FOAH ☐ROAH-CLETS ☐JUDGMENT ☐OTHER _____ AND FLF TO PREPARE AND SUBMIT DIRECTLY TO THE COURT. ☐ PTNR ☐ RESP TO SERVE COURT-STAMPED COPY ON THE OTHER PARTY.

☐STATUS CONFERENCE PROCESSED BY FAMILY LAW FACILITATOR'S OFFICE    ☐NOT REPORTED

**OTHER:**

Counsel present oral argument.

The Court adopts the FCS recommendations dated January 13, 2021 as modified and attached as Exhibit A.

The One-Day Trial scheduled on May 11, 2021 is confirmed. Trial briefs shall be served on opposing party and filed with the court seven (7) days prior to trial.

The Court finds the parties have not filed updated Income & Expense Declarations. Respondent's Motion for Support is Denied.

Respondent is directed to continue making job contacts as previously ordered.

The Court continues the RFO to May 11, 2021 at 9:00am in Department 19.

-dc-

Document received by the CA Supreme Court.



**MINUTES OF THE FAMILY COURT**

**RECOMMENDATIONS FOR THE PARENTING PLAN OF:**

Bryce Emert, DOB: 06/11/07 (Age 13 years)
Skylar Emert, DOB: 06/06/09 (Age 11 years)

Mother: Andrea Emert
Father: Robert Emert

1.  **LEGAL CUSTODY**
    **As a temporary order without prejudice**

    A. Andrea Emert *shall have sole legal custody as to the children's counseling and the father shall not have any contact with the children's therapist under any circumstances by phone, e-mail, text or messages passed through the children. Mother shall immediately arrange for Behavioral therapy for Bryce. The parties shall* share joint legal custody, which means that Andrea Emert and Robert Emert shall share the right and responsibility to make decisions relating to the health, education, and welfare of their children and consult each other regarding enrollment and disenrollment in school, beginning/ending mental health services and selection or changes of a doctor, dentist or other health professional. *Mother shall have the final say if there is any dispute.*

    B. Each parent shall have access to medical and school records pertaining to the children and may consult with any professionals involved with the children. It is each parent's responsibility to request school calendars, progress reports, report cards and parent-teacher conferences directly from the school.

    C. Each parent may obtain emergency health care for the children without the consent of the other parent. Each parent is to notify the other parent as soon as reasonably possible of any illness requiring medical attention or any emergency involving the children.

    D. *Family Code section 3048 findings.*

2.  **PHYSICAL CUSTODY**

    A. The children *shall reside primarily with mother.*

    B. *The children shall spend time with father:*

    i) *Father shall spend time with Bryce on Monday 9:00 a.m. through Thursday at 6:00 p.m.*

    ii) *Father shall spend time with Skylar Thursday 6:00 p.m. to Sunday 6:00 p.m.*

Exhibit A

Document received by the CA Supreme Court.

(ii)    *Father is admonished that at the time of trial this court receives competent evidence that father continues to discuss adult issues with the children the court will likely implement a professionally supervised visitation order for both children.*

3.    **HOLIDAYS/SPECIAL DAYS/SCHOOL VACATIONS**

Special Days/holiday schedules shall take precedence over the regular parenting schedule, which shall resume after the holiday is over. Unless noted, all single-day holidays shall be from 8 AM to 8 PM. In absence of other agreement by the parents, specific holiday schedules shall be as follows:

| HOLIDAY | TIME | EVERY YEAR | EVEN YEARS | ODD YEARS |
|---|---|---|---|---|
| Christmas Eve/Christmas Day | 9 AM, 12/24 until 9 AM, 12/25 | | Mother | Father |
| Christmas Day/Day after Christmas | 9 AM, 12/25 until 9 AM, 12/26 | | Father | Mother |
| New Year's Eve/Day | Eve 6 PM - Day 6 PM | | Mother | Father |
| Easter Day | 8 AM - 8 PM | | Father | Mother |
| Mother's Day | 8 AM - 8 PM | Mother | | |
| Father's Day | 8 AM - 8 PM | Father | | |
| July 4th | 8 AM - until 10 AM July 5 | | Mother | Father |
| Halloween | 4 PM - 8 PM | | Father | Mother |
| Thanksgiving Day | 8 AM - 8 PM | | Mother | Father |
| Children's birthdays | 8 AM - 8 PM; or if a school day from 6 PM to 8 PM | | Father | Mother |

**Three-day weekends** not specified in the chart above shall be spent with the parent who would normally have that weekend and the weekend shall be extended by 24 hours.

4.    **EXCHANGES/TRANSPORTATION**

A. Exchanges of the children, when they do not take place at school/childcare shall be at the sending parent's residence.

Document received by the CA Supreme Court.

B. The children shall be exchanged at the designated times, with a 15-minute grace period. Should a longer delay be necessary, the other parent shall be notified immediately or that parenting time shall be considered canceled.

5. **TELEPHONE/COMMUNICATION**

A. There shall be telephone contact between the children and the parents when in the other parent's care. ***There shall be one phone call which shall last no more than 15 minutes. If the children calls the parent they shall not respond. The purpose of the phone call shall be to communicate with the children. All other business between the parents shall be discussed at another time.***

B. ***There shall be NO RECORDING of the children under any circumstances.***

C. Email communication: The parties shall use a co-parenting email system, such as Our Family Wizard or TalkingParents.com for all non-emergency communication. The parties shall each establish a parent account, and enroll in the program within 21 days of this order and annually thereafter, to conduct all communications regarding custody or visitation matters, information-sharing matters, schedule alterations and reimbursable-expense matters on the website. The parties shall not telephone, e-mail or text each other regarding issues related to the child except in an unanticipated or emergency situation where response is required in less than 24 hours. Each party shall respond to the other party's request or notification within 48 hours of the posting, if a response is either requested or appropriate. Each party shall allow "professional access" to any licensed legal or mental health professional.

6. **CONDUCT/SAFETY**

A. Neither parent shall make negative statements about the other in the presence or hearing of the children or question the children about the other parent. The parents shall communicate directly with each other in matters concerning the children and shall not use the children as a messenger between them. The children shall not be exposed to court papers or disputes between the parents, and each parent shall make every possible effort to ensure that other people comply with this order.

Document received by the CA Supreme Court.

7. **NOTIFICATION**

A. When either parent wishes to travel with the children outside the County of San Diego for overnight or longer during their parenting time, the other parent must be given 24 hours' prior notice or date and time, destination and an emergency telephone number.

B. Each parent shall always keep the other informed of his/her address and telephone numbers and shall notify the other parent within 24 hours of any changes. Neither parent may use such information for the purpose of harassing, annoying, disturbing the peace of the other or invading the other's privacy.

C. If the children participate in an AM/PM program, camp or cared for routinely by a childcare provider, the parents shall keep one another informed of those programs, addresses and telephone numbers.

D. Neither parent shall schedule activities for the children during the other parent's scheduled parenting time without the other parent's prior agreement.

E. At least 24 hours' notice of any schedule change shall be given to the other parent. The parent requesting the change shall be responsible for any additional child care that results from the change.

F. Neither parent shall move the residence of the children out of San Diego County without giving the other parent a 45-day advance written notice and obtaining the other parent's written permission prior to the move or an order of the Court granting the move.

8. **CLASSES/PROGRAMS**

A. Robert Emert and Andrea Emert shall enroll in and successfully complete an in-person high conflict co-parenting course. The course shall be completed by 4/1/2021.

B. ***There shall be psychological evaluation of father by a licensed psychologist to provide the court with a DSM V diagnosis of father.***

C. ***Father and Skylar shall enter into conjoint therapy to address the issue that she feels unimportant due to the amount of attention which is expended on Bryce.***

D. The children shall participate in counseling with a licensed mental health practitioner until released by the therapist. Issues to be addressed include: exposure to

Document received by the CA Supreme Court.

00592

high level of co-parenting conflict, sibling relationship, and any other mental health issues that arise.

E. Possible resources include: private insurance; call 211 from any phone; or a Program Resource List may be obtained at Family Court Services or on the San Diego Superior Court website www.sdcourt.ca.gov.

Document received by the CA Supreme Court.

B. Documentation showing the absence of evidence to support placing Plaintiff's son in a facility, despite concerted efforts by certain defendants to do so.

**ROBERT EMERT**

**2351 VISTA LAGO TERRACE**

**ESCONDIDO, CA 92029**

**760-612-9328**

robemert@msn.com

**RECEIVED**

MAY 2 0 2024

## SAN DIEGO SUPERIOR COURT OF CALIFORNIA

## CENTRAL DIVISION

| | |
|---|---|
| **ANDREA SCHUCK,** | NOTICE OF LODGED DOCUMENTS |
| **PLAINTIFF,** | 19FL010852N – family court |
| **vs.** | **Notice of Lodged Documents Pursuant to CCP §1985, CRC Rules 2.256(b) and 3.1110** |
| **ROB EMERT,** | |
| **respondent** | |
| | Judge Robinson; 601 |
| | 05/28/24 1:45PM |

**ROBERT EMERT**

**2351 VISTA LAGO TERRACE**

**ESCONDIDO, CA 92029**

**760-612-9328**

robemert@msn.com

**SAN DIEGO SUPERIOR COURT OF CALIFORNIA**

**CENTRAL DIVISION**

| | |
|---|---|
| **ANDREA SCHUCK,** | **NOTICE OF LODGED DOCUMENTS** |
|       **PLAINTIFF,** | **19FL010852N – family court** |
| **vs.** | <u>**Notice of Lodged Documents Pursuant to CCP §1985, CRC Rules 2.256(b) and 3.1110**</u> |
| **ROB EMERT,** | |
|       **respondent** | |
| | Judge Robinson; 601 |
| | 05/28/24 1:45PM |

This is a notice of lodged documents.

Pursuant to California Code of Civil Procedure Section 1985, and California Rules of Court, Rules 2.256(b) and 3.1110, this letter serves as **notice of lodged documents previously submitted in this matter**.

Pursuant to Rule 2.256(b), they were originally provided on flash drive as they exceeded size limitations for electronic filing.

While these materials have already been furnished multiple times, I am re-submitting the appendix to the court and interested parties.

Should the Court or any party require copies of the full materials previously provided, I have them available on a flash drive. As authenticated copies, they are lodged with the Court under CCP 1985 and request they are marked as lodged exhibits under CRC 3.1110.

Please contact me if you need clarification that these documents have already been provided and are part of the record. I aim merely to preserve and index these records, not duplicate prior submissions.

Your assistance in ensuring these materials are available for the upcoming hearing is appreciated.


I, Rob Emert, declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on 05/20/24 at Escondido, California.

*Rob Emert*

PROOF OF ELECTRONIC SERVICE

I hereby certify that on 05/20/24, I electronically filed and served the foregoing document via electronic service on all parties and counsel of record.
( Dave Schulman; dschulman@msmfamilylaw.com )

*glenda emert*

Glenda Emert

05/20/24

## Exhibit A

3 FCS reports saying 50/50 and I initially was granted 60%.  Two Judges, 3 FCS reports, and 2 FCS child interviews make this determination.  This went on for about two years before Ratekin took the case.  Many offers were made by me for simply 50/50 with the children being able to go back and forth between our homes on a as needed basis.

## Exhibit B

50/50 offers

## Exhibit C

Andrea was arrested for domestic violence against me and Bryce.

## Exhibit D

Andrea Paystub and Hauck-wood profile page showing the two worked together and were friends.  Whitney Hauck –Wood is married to Judge William Wood.  Judge Willima Wood was Ratekin's supervising judge and had even already recused from this case. Andrea told me that she and her attorney were aware of this conflict of interest and initially gloated about it.

## Exhibit E

Ratekin transcripts – First day within minutes Ratekin said Bryce was likely going into a residential home.  Zero evidence to support this and Ratekin had just been given the file that day per the Register of Actions.

## Exhibit F

District Attorney Investigator Luis Pena even said that I had a reasonable reason to protect my son from these criminal thugs trying to place him in a facility with zero evidence.  Here is an excerpt from that transcript.

## Exhibit G

Peremptory challenge.  This was filed timely and before orders were made and were required to be put into effect.  There is a clear 9th circuit precedent to overturn this egregious state violation.

## Exhibit H

Ratekin transcript – The last day Ratekin heard the case because she finally recused after six months of trying to child traffic my son into a facility for profit, divorce leverage, and cronyism.  Simply because Bryce was at Starbucks and not in first period, Ratekin quickly said that this was the problem with the case all long and Bryce belonged in a facility.  The only people who have ever said that are Ratekin, Matt Cord (the minor counsel who rubber stamped this lunacy after only meeting Bryce 2x for about a half hour), Catie Young (minor counsel for my daughter.  I could not believe it when Catie Young said to me, why don't you just let them place him in a

facility!), Jesse Olague, the hired gun out of insurance network psychologist who works across the street from Dave Schulman.

**Exhibit I**

Between the first day Ratekin took the case, and the last day when she finally recused, she brought in minor counsel for my son, Matt Cord and Catie Young for my daughter. With only meeting Bryce two times for a half hour or so, Matt Cord jumped on board with Patti Ratekin narrative of a "facility. The emails between me, Matt Cord, Catie Young, Dave Schulman, Andrea Schuck, easily show this colluded effort to get Bryce into a "facility". Schuck signed off on this insanity out of resentment/divorce leverage and the rest of the family courtel players did it for profit, divorce leverage and cronyism. There was never any evidence to suggest a facility and you can see in these emails where I am trying to figure out why Ratekin and her hired hand Matt Cord are trying to do this. Here are some of those emails.

**Exhibit J**

Emails of me trying to get a few psychologists and autism specialists to interview Bryce because all the evidence, including Bryce himself, proves Bryce is more than competent to speak on his own behalf.

**Exhibit K**

Deputy District Attorney Balerio even told Bryce how well spoken he is and that she would help him have his voice heard in court. Here is an excerpt from that transcript.

**Exhibit L**

Dave Schulman, Andrea Schuck and Matt Cord all trying to stop me from getting psychologists to interview Bryce.

**Exhibit M**

Dave Schulman threatening the San Diego Regional center with an injunction to prevent me and my two children from therapy. Schuck was invited to go as well. Both Schuck and Schulman prevented this because they could not have the truth coming out.

**Exhibit N**

03/30/21 hearing where Ratekin takes 100% of my legal parental rights away with zero evidence to do so in a clear effort to prevent me from getting therapy for me and my children.

**Exhibit O**

Heart attack information was provided to all interested parties several times simply asking for remote access. This was during COVID where remote access was given to everyone anyways.

**Exhibit P**

The first day of trial transcripts showed how Ratekin was upset that Bryce's IEP case manager (Trish Flemming) was trying to say that Bryce did not belong in a facility and was generally a really good child. If anyone simply reads the transcript from the first day of trial, Ratekin simply embarrassed herself and her bias was obvious.

**Exhibit Q**

First day of trial transcript that shows Matt Cord never even reached out to Bryce's IEP case manager or anyone on Bryce's IEP team because I had already told him the entire team was adamant that Bryce did not belong in a "facility". Matt Cord was just doing what Ratekin and Schulman were telling him to do so he could play with the big boys.

**Exhibit R**

Excerpt from District Attorney Luis Pena who said that Matt Cord had simply lined up with Dave Schulman and not in Bryce's best interests and to put something together against me.

**Exhibit S**

Bryce filed a TRO against Matt Cord

**Exhibit T**

Bryce filed a police report against Matt Cord

**Exhibit U**

The witness affidavit that Ratekin used to order supervised visitation. Ratekin should get disbarred for this abuse of discretion. She was so desperate and had nothing, so she used a witness affidavit of someone simply reporting fraud of the hired gun child psychologist who was out of insurance network and worked right across the street from Schulman.

**Exhibit V**

Text message from Bryce's behavioral therapist (Charlie Aguilar) who knew there was something wrong with this scenario and with Jesse Olague. Charlie Aguilar and Jesse Olague worked at the same business, San Diego Kids First. When Charlie Aguilar is called under subpoena and the evidence that he knew there was something wrong with what Dr. Olague was doing, it is irrefutable. Oh, yeah, audio recordings back this up.

**Exhibit W**

My letter I provided from my therapist regarding Ratekins request for a psychological evaluation.

**Exhibit X**

Schucks letter regarding her mental issues and the likely reason why she has always had a strained relationship with our son.

**Exhibit Y**

Email from me to Schuck to keep Bryce in public school.  Andrea Schuck, David Schulman, and Matt Cord would simply not agree to a stipulation that they could not pick up Bryce from High School per Bryce's requests and because I did not want these fraudsters to grab him and continue to harass him and place him in a facility like Ratekin had planned from her day one of taking the case.

**Exhibit Z**

Andrea Schuck emailed Trish Fleming about the facility.  All the prior emails are very clear about me trying to prevent a "facility" and trying to get evidence to the court that a "facility" is not warranted.  I was begging my x wife to help me to prevent this, but she was clearly on board with it but would not put it in writing as this email shows.  The only reason Trish Flemming was brought in was to tell the court that Bryce did not belong in a facility and everyone at the school knew this.  Schuck was upset that the school was commenting on the fact that Bryce clearly did not belong in a facility.

**Exhibit AA**

My email to Schulman agreeing to most of his divorce terms but simply adding, Bryce can't be placed in a facility.

**Exhibit BB**

Andrea transcript recent about putting Bryce in Juvenile detention if he simply did not want to live with her.  Bryce has lots of family and friends that love and support him and this is just how resentful and bitter Schuck is.  Bryce has been with his mom for over a year now and he is sad, angry, confused and lonely.  Bryce wants to go home.  He will be 17 in a few days.  Please let him go home.

**Exhibit CC**

Transcript excerpt where Schuck made a deal with the DA that Bryce could go home if I pleaded guilty to felony custodial interference.  The DA fabricated a threat after a year of inaction because they knew they would lose at trial, so they held me on no bail for 90 days to coerce a guilty plea.  There is a federal lawsuit to force the DA to honor the plea agreement where Brye can simply go home.

**Exhibit DD**

The Andrea transcript saying that she was only entertaining the idea of giving custody of Bryce back to me is because Bryce living with her was not good for our daughter.

**Exhibit EE**

Emails to all interested parties leading up to the trial where I was simply ignored.

**Exhibit FF**

Ex parte same day of trial giving court all my medical docs and ADA for a simply requesting a remote hearing where I could finally bring my evidence and witnesses.  It was denied just like all my evidentiary hearings in both the family and criminal court.  There is a habeas corpus at the CA Supreme Court and two federal lawsuits concerning these matters.  I don't have confidence in the state court to correct this manifest injustice and will have to likely wait until I have exhausted my state remedies and can move onto the 9th Circuit.

**Exhibit GG**

Motion to Vacate Default Judgment Under CCP 473(b). This exhibit contains my original request for order filed on July 20, 2022 seeking relief from the January 24, 2022 default judgment under CCP 473(b), along with supporting documents filed concurrently. The original RFO alleged improper service, mistake, surprise, excusable neglect, and attorney fault as grounds for relief. It detailed misconduct and bias by Commissioner Ratekin and Judge Alksne that resulted in entry of default against me during incapacitation following my heart attack. My amended RFO filed on August 15, 2022 supplemented the facts and expanded upon details of the alleged judicial misconduct but involved the same core issues and events. During the Feb 22, 2024 hearing on these motions, Judge Robinson denied relief solely based on the August filing date of the amended RFO exceeding the 6-month deadline under 473(b). However, under the relation back doctrine, my amended RFO relates back to and is deemed timely based on the original RFO filed within 6 months of the default on January 24, 2022. By focusing only on the amended version's filing date, judge committed a reversible error and failed to assess the merits of my original timely request. Denying relief without evaluating my original RFO under CCP 473(b) incorrectly applies the law on relation back of pleadings.  The fact remains anyways that CCP 473 (d) still applies due to the clear collusion and fraud committed on the court and as such, I have filed a criminal complaint with the appropriate parties under title 18 U.S.C 241 and 242.

**Exhibit HH**

There is simply zero evidence to support keeping a loving and dedicated father from both his children.  This is/was malicious retaliation of a whistleblower.  There is a presumption of fitness of parents that Ratekin simply blew past due to this clearly fraudulent scenario and I therefor also have filed a Title 18 U.S.C 241 and 242 for criminal conspiracy against Patti Ratekin, Dave Schulman, Matt Cord, Catie Young, Andrea Schuck, Sarah Bear, Lorna Alknse, Jesse Olague, Alana Robinson.  Shame on all of you and mostly my x wife who I never would have allowed the likes of you to treat her the way I have been treated.  I consistently said 50/50 with the children going back and forth on an as needed basis and even invited my x wife to the first Christmas we were divorced and two Disneyworld Vacations that we had always planned on as a family.

## **II**

Bryce Emert, who is almost 17, is begging to be heard and simply wants to come home.  Here are his letters and emails to people.

Exhibit A

3 FCS reports saying 50/50 and I initially was granted 60%.  Two Judges, 3 FCS reports, and 2 FCS child interviews make this determination.  This went on for about two years before Ratekin took the case.  Many offers were made by me for simply 50/50 with the children being able to go back and forth between our homes on a as needed basis.

court ot C

# SUPERIOR COURT OF SANDIEGO

FAMIL        COURT        SERVICES

of Sao

December 10, 2019

I LE D
of tho Superior Court

DEC 11 2019

DATE OF HEARING: December 20, 2019

TO:        Department 17                                    19FL010852N
           Honorable Kelly C. Mok

FROM :     Liliana Rodriguez, MSW, Counselor
           Family Court Services

           Supplemental Report

OF:        Bryce Emert, DOB: 06/11/07  (Age 12 years)  (M)
           Skylar Emert, DOB: 06/06/09  (Age 10 years)  (F)

           Father: Andrea L. Emert
           Father: Robert Emert

On October 15, 2019, Andrea L. Emert and Robert Emert, parents of the above—named minor children, participated in a Family Court Services conference in this office.  The conference was conducted jointly.  Andrea L. Emert is the moving party.  The Court directed the parties to participate at Family Court Services.

On November 19, 2019 the court ordered the undersigned to provide updated CWS information. In addition, the undersigned was to speak to Bryce's school counselor, Cecilia Brenning, and any persons Ms. Brenning believed to be appropriate.

There are two Child Welfare Services referrals.

| Date | Allegation (s) | Alleged perpetrator (s) | Conclusion |
|------|----------------|-------------------------|------------|
| 11/4/19 | Physical abuse to Bryce | Father | Unfounded |
|  | physical abuse to Bryce | Mother | Unfounded |
|  | emotional abuse to Bryce | no perpetrator listed | Inconclusive |
|  | Emotional abuse to Skylar | parents | Unfounded |
|  | At risk of abuse to Skylar | father | Unfounded |
| 10/24/19 | Emotional abuse to Bryce | parents | Unfounded |
|  | At risk of abuse to Bryce | father | Unfounded |
|  | Physical abuse to Skylar | father | Unfounded |
|  | Emotional abuse to Skylar | parents | unfounded |

On December 10r 2019 the undersigned spoke to school counselor, Cecilia Breining. Ms. Breining indicated that since the divorce she has seen more emotional issues in Bryce. Bryce has more behavior issues, such as blurting out, making noises, and other behaviors. In addition, he has had more difficulties with friends. His grades have deteriorated since the separation and the number of absences have increased. This school year there have been five whole day absences. The partial absences are for the most part not related to illness.

Ms. Breining indicated that it was important that she remain neutral; thus, as directed, all conversations are with both parents and emails are sent to both parents. The child does not speak about his parents, except to repeat advice they give him on handling situations. He speaks more of his father but does not speak negatively of either parent. The school psychologist is meeting with him to build coping skills related to friendships. The child also has a case manager that supports his academics through his Individual Education Plan. The counselor indicated that last year Bryce had two specialized classes. This year he has all typical classes with support. Ms. Breining was asked if there were other persons she felt may be important for the undersigned to gather information from. She stated that all 'would provide the same information. Thus, she did not.

| Grades current school year | | | 73 school days | |
|---|---|---|---|---|
| 1st grading period | 2nd grading period | As of 12/10/19 | Absences | Late |
| D- | B- | | 10 | 6 |
| | | | 8 | 1 |
| c | | | | 1 |
| | | D- | 8 | |
| | c- | c- | 9 | |
| | PASS | | 11 | |

| Grades for 6th Grade | | Absences | Late |
|---|---|---|---|
| 1st Semester | 2nd Semester | | |
| **C-** | | 23 | 11 |
| | | 19 | 4 |
| | | 14 | 3 |
| c | | 9 | 2 |
| **A-** | **B-** | 10 | 2 |
| **B-** | c | | |
| c | | 10 | 2 |

-2-

Department 17                    RE: Emert/Emert/ 19FL010852N
Family Court Services Report Dated December 10, 2019          Page 3


                                    pectfully  ubmitted,

                             4Cuaadd
                                Iliana Rodriguez, MS
                              Family Court Counselor
                              **760-201-8300**

Cc:  Andrea L. Emert, Father
     Robert Emert, Father
     David S. Shulman, Attorney
     Timothy S. Miranda, Attorney

# SUPERIOR COURT OF SAN DIEGO
## FAMILY COURT SERVICES

**F I L E D**
Clerk of the Superior Court

December 10, 2019

**DEC 11 2019**

**DATE OF HEARING: December 20, 2019**

By: _____ Clerk

TO:      Department 17                              **19FL010852N**
         Honorable Kelly C. Mok

FROM:    Liliana Rodriguez, MSW, Counselor
         Family Court Services

RE:      Supplemental Report

OF:      Bryce Emert, DOB: 06/11/07 (Age 12 years) (M)
         Skylar Emert, DOB: 06/06/09 (Age 10 years) (F)

         Father: Andrea L. Emert
         Father: Robert Emert

On October 15, 2019, Andrea L. Emert and Robert Emert, parents of the above-named minor children, participated in a Family Court Services conference in this office. The conference was conducted jointly. Andrea L. Emert is the moving party. The Court directed the parties to participate at Family Court Services.

On November 19, 2019 the court ordered the undersigned to provide updated CWS information. In addition, the undersigned was to speak to Bryce's school counselor, Cecilia Brenning, and any persons Ms. Brenning believed to be appropriate.

There are two Child Welfare Services referrals.

| Date | Allegation(s) | Alleged perpetrator(s) | Conclusion |
|------|---------------|------------------------|------------|
| 11/4/19 | Physical abuse to Bryce | Father | Unfounded |
| | physical abuse to Bryce | Mother | Unfounded |
| | emotional abuse to Bryce | no perpetrator listed | Inconclusive |
| | | | |
| | Emotional abuse to Skylar | parents | Unfounded |
| | At risk of abuse to Skylar | father | Unfounded |
| 10/24/19 | Emotional abuse to Bryce | parents | Unfounded |
| | At risk of abuse to Bryce | father | Unfounded |
| | | | |
| | Physical abuse to Skylar | father | Unfounded |
| | Emotional abuse to Skylar | parents | unfounded |

Department 17                                RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated December 10, 2019            Page 2

On December 10, 2019 the undersigned spoke to **school counselor**, **Cecilia Breining**. Ms. Breining indicated that since the divorce she has seen more emotional issues in Bryce. Bryce has more behavior issues, such as blurting out, making noises, and other behaviors. In addition, he has had more difficulties with friends. His grades have deteriorated since the separation and the number of absences have increased. This school year there have been five whole day absences. The partial absences are for the most part not related to illness.

Ms. Breining indicated that it was important that she remain neutral; thus, as directed, all conversations are with both parents and emails are sent to both parents. The child does not speak about his parents, except to repeat advice they give him on handling situations. He speaks more of his father but does not speak negatively of either parent. The school psychologist is meeting with him to build coping skills related to friendships. The child also has a case manager that supports his academics through his Individual Education Plan. The counselor indicated that last year Bryce had two specialized classes. This year he has all typical classes with support. Ms. Breining was asked if there were other persons she felt may be important for the undersigned to gather information from. She stated that all would provide the same information. Thus, she did not.

Grades current school year

| 1st grading period | 2nd grading period | As of 12/10/19 |
|---|---|---|
| D− | B− | B |
| C+ | D+ | D+ |
| C | D+ | D |
| F | D+ | D− |
| A− | C− | C− |
| C+ | PASS | B− |

73 school days

| Absences | Late |
|---|---|
| 10 | 6 |
| 8 | 1 |
| 7 | 1 |
| 8 | |
| 9 | |
| 11 | |

Grades for 6th Grade

| 1st Semester | 2nd Semester |
|---|---|
| C− | D |
| A | A− |
| B | B |
| C | B− |
| A− | B− |
| B− | C |
| C | B |

| Absences | Late |
|---|---|
| 23 | 11' |
| 19 | 4 |
| 14 | 3 |
| 9 | 2 |
| 10 | 2 |
| 10 | 2 |

−2−

Department 17                              RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated December 10, 2019          Page 3

Respectfully submitted,

*Liliana Rodriguez*

Liliana Rodriguez, MSW
Family Court Counselor
760-201-8300

Cc:   Andrea L. Emert, Father
      Robert Emert, Father
      David S. Shulman, Attorney
      Timothy S. Miranda, Attorney



# SUPERIOR COURT OF SAN DIEGO
## FAMILY COURT SERVICES

November 01, 2019

**F I L E D**
Clerk of the Superior Court

NOV 0 4 2019

By: _____ Clerk

### DATE OF HEARING: November 20, 2019

TO:      Department 17                                      **19FL010852N**
         Honorable Kelly C. Mok

FROM:    Liliana Rodriguez, MSW, Counselor
         Family Court Services

RE:      Parenting Plan

OF:      Bryce Emert, DOB: 06/11/07 (Age 12 years) (M)
         Skylar Emert, DOB: 06/06/09 (Age 10 years) (F)

         Father: Andrea L. Emert
         Father: Robert Emert

On October 15, 2019, Andrea L. Emert and Robert Emert, parents of the above-named minor children, participated in a Family Court Services conference in this office. The conference was conducted jointly. Andrea L. Emert is the moving party. The Court directed the parties to participate at Family Court Services.

### DOMESTIC VIOLENCE

Although there are allegations of domestic violence in this case, the parents indicated their desire to participate together. The undersigned interviewed the parents separately to assess the appropriateness of a conjoint session and determined that it would be appropriate to proceed.

### FAMILY COURT SERVICES HISTORY

This is the parties' first conference at Family Court Services.

### PARENTING PLAN

The parents do not have a court-ordered parenting plan.

**CONFIDENTIAL REPORT**                                    Family Code 3025 5

Department 17                          RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated November 01, 2019        Page 2

The parenting plan as described by each parent is as follows: the father has been the children's primary caregiver for the past five years while the mother has been employed as a teacher.

**DEMOGRAPHICS (historical)**

The parents were married on 9/30/06.
The parents filed for dissolution in September 2019.

**DEMOGRAPHICS (current)**

Andrea L. Emert and Robert Emert reside in the San Marco area of San Diego County, California.  Also residing in the home:  the children at issue.  Andrea L. Emert is employed, schedule: 7:30 AM to 3 PM as a school teacher. Robert Emert is unemployed.

The parents indicate they have requested the court determine who will remain in the family home.

**AREAS OF AGREEMENT/DISAGREEMENT**

The parents' points of agreement are as follows: shared legal custody, alternate holidays, a vacation schedule, for there to be no alcohol consumed during their parenting time, and for the children to participate in therapy. They agreed for the father to parent the children when the mother is working and the children are on school break.

They did not agree a the parenting schedule.

**PARENTS' CONCERNS**

There are allegations of domestic violence, substance abuse, and mental illness in this matter.

Andrea L. Emert expressed the following concerns: the father engages in arguments in front of the children and pulls them into arguments by asking them their opinion on the issues being argued, determine who is correct, and ask if they heard what was said. He has told the children that Bryce will be in his custody 100% of the time and Skylar will be in his care 50% of the time. The father drinks heavily. He drinks a bottle of wine and a couple of beers nightly and always when she is home. He stopped drinking when she filed the present petition. He has no driving under the influence arrests.

The father denied the mother's expressed concerns regarding his alcohol consumption. He stated that they both argue in front of the

Department 17                          RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated November 01, 2019          Page 3

children. He answers the children's questions regarding divorce with the information he knows.

Robert Emert expressed the following concerns: The mother's emotional state, stating that she has been prescribed medication for depression and anxiety for years. She "flies" of the handle and yells. She has chased him around the house and placed her hands on the children years ago.

The mother denied the father's claims. She reported participating in therapy.

### PARENTS' PROPOSALS AND RATIONALE

Andrea L. Emert proposed the following parenting schedule: to provide the children with their primary residence and the father parent one Wednesday overnight and alternate weekends. She wants an opportunity to establish a relationship with Bryce. She would foster the children's independence. Additionally, she is the more reliable parent.

Robert Emert proposed the following parenting schedule: He requested Skyler be shared equally. He requested Bryce be shared equally after the father has a period of time to assist the child adjust to the schedule. The father was asked if he would agree to a three-month time to help the child adjust prior to the equal time parenting scheduled. He was agreeable.

### THE CHILDREN

Both parents denied the children have any unmet health, mental health, developmental concerns or special needs.

The parents indicate that Bryce is Autistic. He participates in general education. He is able to communicate and has friends. The parents indicate that he is able to take care of his self-care with some prompts. The mother stated that the father helps the child bathe and dress. The father indicated that he assists the child by laying out his washcloth, setting out chis clothes, and ensuring the child has rinsed properly. The father and Bryce have shared a bedroom since the child was the age of three. He assists Bryce with his homework while the mother assist Skylar. The parents agree that Bryce and the father have an extremely close relationship. The mother feels the father has pushed her out of that relationship by isolating himself and Bryce in the bedroom. Bryce participates in karate three times weekly.

Department 17                          RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated November 01, 2019          Page 4

Skylar is enrolled in the 5th grade. She has no special needs. The child participates in extra-curricular activities to include soccer, theater, and voice lessons. The mother reports the child having a much closer relationship with her than the father. They do activities together and at times share a bedroom. The mother stated that the siblings do not have a close relationship because the father isolates Bryce. The father disagreed, stating that Skylar has an equally good relationship with both parents and the siblings love each other.

The children were not interviewed. Information gathered from the parents was sufficient to make a determination of the children's current experiences and functioning.

**REASONS FOR RECOMMENDATION**

The parents were able to reach substantial agreements and they will be incorporated into the recommendation. The parents described a marital relationship that ended nine years ago. It seems as if they cohabitated but live separately. The father and Bryce have an extremely close relationship while the mother has a closer relationship with Skyler. It appears as if the household was divided by gender.

The mother expressed concern with the father involving the children in the parents' arguments and conflicts. Additionally, he has spoken to them about possible parenting schedules. The father acknowledged both parents argued in front the children and exposed them to their conflict. He also acknowledged speaking to the children about possible parenting plans. The father expressed concern with the mother being violent and chasing him about the house. The mother denied his claim. The parents have been emotionally separated for many years and living together caused a great deal of stress and conflict. It is the hope of the undersigned the parents will be able to establish separate residences soon and co-parent. The undersigned recommends the parents participate in a co-parenting class and recommends they communicate via a child sharing application.

The undersigned is of the impression that both parents are capable of caring for the children and meeting their needs. Thus, it is recommended the parents share the care of the children. The undersigned agrees Bryce needs a little time to adjust to being away from the father. Their relationship seems almost emotionally dependent. Bryce has shared a bedroom with the father since the age of three. The parents reported the mother rarely spends time on her own with Bryce. Thus, it is recommended Bryce be in the mother's care alternate weekends and one overnight weekly prior to joining his sister's schedule.

Department 17                          RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated November 01, 2019          Page 5

**RECOMMENDATIONS FOR THE PARENTING PLAN OF:**

    Bryce Emert, DOB: 06/11/07 (Age 12 years)
    Skylar Emert, DOB: 06/06/09 (Age 10 years)

    Father: Andrea L. Emert
    Father: Robert Emert

1. **LEGAL CUSTODY**

    A. Andrea L. Emert and Robert Emert shall share joint legal custody, which means that Andrea L. Emert and Robert Emert shall share the right and responsibility to make decisions relating to the health, education, and welfare of their children and consult each other regarding enrollment and disenrollment in school, beginning/ending mental health services and selection or changes of a doctor, dentist or other health professional.

    B. Each parent shall have access to medical and school records pertaining to the children and may consult with any professionals involved with the children. It is each parent's responsibility to request school calendars, progress reports, report cards and parent-teacher conferences directly from the school.

    C. Each parent may obtain emergency health care for the children without the consent of the other parent. Each parent is to notify the other parent as soon as reasonably possible of any illness requiring medical attention or any emergency involving the children.

2. **PHYSICAL CUSTODY**

    A. The children's physical custody shall be shared.
    B. The parenting of **Bryce** shall be shared as follows:
    i)    The mother shall parent alternate weekends. The weekend shall be defined as 8 AM Friday to 8 AM Monday.
    ii)    Bryce shall be in the care of the mother each Tuesday from afterschool/8 AM to dropping of at school/8 AM Wednesday.
    iii)    After the mother parents in accordance with 2Bii for 90 days, the mother's midweek parenting shall be defined as 8 AM Monday to 8 AM Wednesday.

    C. The parenting of **Skylar** shall be shared as follows:
    i)    Skylar shall be in the care of the mother from 8 AM to Monday to 8 AM Wednesday and with the father from 8 AM Wednesday to 8 AM Friday.
    ii)    The weekends shall be alternated between the parents and defined as 8 AM Friday to 8 AM Monday.

Department 17                                    RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated November 01, 2019          Page 6

## 3.   HOLIDAYS/SPECIAL DAYS/SCHOOL VACATIONS

**Special Days/holiday** schedules shall take precedence over the regular parenting schedule, which shall resume after the holiday is over. **In absence of other agreement by the parents**, specific holiday schedules shall be as follows:

| HOLIDAY | TIME | EVERY YEAR | EVEN YEARS | ODD YEARS |
|---------|------|-----------|-----------|-----------|
| Christmas Eve | 9 AM 12/24 to 9 AM 12/25 | | Mother | Father |
| Christmas Day | 9 AM 12/25 to 6 PM 12/26 | | Father | Mother |
| New Year's Eve/Day | Eve 6 PM - Day 6 PM | | Mother | Father |
| Easter Day | 8 AM - 8 PM | | Father | Mother |
| Mother's Day | 8 AM - 8 PM | Mother | | |
| Father's Day | 8 AM - 8 PM | Father | | |
| July 4th | 8 AM until 10 AM July 5 | | Mother | Father |
| Halloween | 4 PM - 8 PM | | Father | Mother |
| Thanksgiving Day | 8 AM - 8 PM | | Mother | Father |
| Children's Birthdays | 8 AM - 8 PM; or if a school day from 6 PM to 8 PM | | Father | Mother |
| **Three-day weekends** not specified in the chart above shall be spent with the parent who would normally have that weekend and the weekend shall be extended by 24 hours. | | | | |

## 4.   VACATIONS/SCHOOL BREAKS

A. Either parent may vacation or have extended time with the children each year for up to two weeks. The vacationing parent shall notify the other parent in writing of their vacation plans a minimum of 30 days prior to departure and provide the other parent with a basic itinerary to include dates of departure and return, destinations, flight information and telephone numbers for emergency purposes. The vacationing parent shall not schedule the vacation during the other parent's scheduled holiday time with the children, unless agreed upon in advance by both parents. The vacation shall not interrupt school attendance unless mutually agreed upon by the parents and school personnel.

Department 17                                  RE: Emert/Emert/ **19FL010852N**

Family Court Services Report Dated November 01, 2019                    Page 7

5.  **EXCHANGES/TRANSPORTATION**

    A. Exchanges of the children, when they do not take place at school/childcare shall be at the sending parent's residence.

6.  **TELEPHONE/COMMUNICATION**

    A. There shall be reasonable telephone contact between the children and the parents when in the other parent's care. The purpose of the phone call shall be to communicate with the children. All other business between the parents shall be discussed at another time.

    B. All non-emergency and non-time sensitive communications shall be in writing and sent via a child sharing application, such as Talking Parents, Our Family Wizard or another mutually agreed upon.

7.  **CONDUCT/SAFETY**

    A. Neither parent shall make negative statements about the other in the presence or hearing of the children or question the children about the other parent. The parents shall communicate directly with each other in matters concerning the children and shall not use the children as a messenger between them. The children shall not be exposed to court papers or disputes between the parents, and each parent shall make every possible effort to ensure that other people comply with this order.

8.  **NOTIFICATION**

    A. When either parent wishes to travel with the children outside the County of San Diego for overnight or longer during their parenting time, the other parent must be given 24 hours prior notice of date and time, destination and an emergency telephone number.

    B. Each parent shall always keep the other informed of his/her address and telephone numbers and shall notify the other parent within 24 hours of any changes. Neither parent may use such information for the purpose of harassing, annoying, disturbing the peace of the other or invading the other's privacy.

    C. If the children participate' in an AM/PM program, camp or cared for routinely by a childcare provider, the parents shall keep one another informed of those programs, addresses and telephone numbers.

Department 17                                RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated November 01, 2019            Page 8

D. Should either parent require childcare for more than 8 hours
   or overnight while the children are in his/her physical care,
   the other parent shall have first option to provide such
   care.

E. At least 24 hours notice of any schedule change shall be
   given to the other parent. The parent requesting the change
   shall be responsible for any additional child care that
   results from the change.

F. Neither parent shall move the residence of the children out
   of San Diego County without giving the other parent a 45-day
   advance written notice and obtaining the other parent's
   written permission prior to the move or an order of the Court
   granting the move.

9.   **CLASSES/PROGRAMS**

A. Andrea L. Emert and Robert Emert shall enroll in and
   successfully complete a co-parenting course. The course
   shall specifically focus on parenting skills for divorced
   parents. The course shall be completed by March 30, 2020.

B. The children shall participate in counseling with a licensed
   mental health practitioner until released by the therapist.
   The parents shall cooperate and participate in the children's
   therapy at the discretion of the therapist. Issues to be
   addressed include: adjustment to new family dynamics, grief-
   loss, and any other issues identified by the parents and/or
   therapist.

   Possible resources include: private insurance; call 211 from
   any phone; or a Program Resource List may be obtained at
   Family Court Services or on the San Diego Superior Court
   website www.sdcourt.ca.gov.

Department 17                              RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated November 01, 2019          Page 9

10. **SUBSTANCE USE/MONITORING/ASSESSMENT/TREATMENT**

   A. Andrea L. Emert and Robert Emert shall refrain from using
      alcohol during the time the children are in his/her care and
      for 12 hours prior to spending time with the children.


                              Respectfully submitted,

                              _Liliana Rodriguez_

                              Liliana Rodriguez, MSW
                              Family Court Counselor
                              760-201-8300

Cc:  Andrea L. Emert, Father
     Robert Emert, Father
     David S. Shulman, Attorney
     Veronica M. Aguilar, Attorney


                              -9-

# CONFIDENTIAL REPORT COVERSHEET

The Family Court Services Report attached hereto is **CONFIDENTIAL**.

**Monetary Sanctions**

By law, the court can impose a penalty (i.e. sanction or fine) for the unwarranted disclosure of the contents of this confidential Family Court Services report. This monetary penalty can be ordered against the disclosing party in an amount that is large enough to prevent that person from disclosing information in the future. The sanctions may also include reasonable attorney fees, costs incurred, or both.

**Access to this Report**

Pursuant to Family Code §§ 3025.5 and 3177, as the party receiving this report, you may not make this report available (including but not limited to showing, discussing, forwarding) to anyone other than the following:

1. The parties and their attorneys (including attorneys from whom the parties seek legal representation) and attorneys appointed to represent the child (i.e. Minor's Counsel);
2. Others authorized after court orders are issued making such disclosure permissible.

# SUPERIOR COURT OF SAN DIEGO
## FAMILY COURT SERVICES

January 13, 2020

**F I L E D**
Clerk of the Superior Court

JAN **1 3 2021**

By: _____ , Clerk
N. James

**DATE OF HEARING: February 4, 2021**

TO:        Department D-18                         **19FL010852N**

FROM:    Lisa Boswell, MSW, Counselor
         Family Court Services

RE:        Parenting Plan

OF:        Bryce Emert, DOB: 06/11/07 (Age 13 years) (M)
         Skylar Emert, DOB: 06/06/09 (Age 11 years) (F)

         Mother: Andrea Emert
         Father: Robert Emert

On December 16, 2020, Andrea Emert and Robert Emert, parents of the above-named minor children, participated in a Family Court Services conference in this office. The conference was conducted jointly. Andrea Emert and Robert Emert participated telephonically. Robert Emert is the moving party.

**DOMESTIC VIOLENCE**

The parties denied any history of domestic violence.

**FAMILY COURT SERVICES HISTORY**

This is the parties' second conference at Family Court Services.

The parties were originally seen at FCS in 2019. The Court is respectfully referred to prior FCS memos for additional historical information.

**PARENTING PLAN**

The parents follow the court-ordered parenting plan.

**CONFIDENTIAL REPORT**                         Family Code 3025 5

Department D-18                          RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated January 13, 2021        Page 2

The parenting plan as described by each parent is as follows: Both parents agreed that they practice joint legal and joint physical custody at least since 2019.

## DEMOGRAPHICS (historical)

The parents were married on September 30, 2006.
The parents lived together from 2006-December 2019.
The parents filed for dissolution in September 2019.

## DEMOGRAPHICS (current)

Andrea Emert resides in the San Elijo area of San Diego County, California in a two-bedroom home. Andrea Emert is employed, schedule: Monday-Friday, 7:30 am – 3:00 pm.

Robert Emert resides in the Escondido area of San Diego County, California in a four-bedroom home. Also residing in the home: the paternal grandparents and the paternal aunt. Robert Emert is unemployed.

## AREAS OF AGREEMENT/DISAGREEMENT

The parents' points of agreement are as follows: joint legal custody, the holiday schedule, vacation time, the child exchange location, the first right of refusal, and to utilize a computer-based email program for all communication.

The parents' points of disagreement are as follows: the primary residence for both children, the parenting time for each parent for both children, and phone contact.

## PARENTS' CONCERNS

There are no allegations of domestic violence, child abuse, substance abuse, mental illness, or criminal histories in this matter.

Andrea Emert expressed the following concerns: The mother states the father allows the younger child, Bryce, to be emotionally and physically abused by the older child, Skylar and Skylar should have time away from Bryce.

The father denied that he allows the child, Bryce, to be emotionally or physically abuse by the child, Skylar and that he does not observe such behavior when the children are in his care.

Department D-18                    RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated January 13, 2021          Page 3

Robert Emert expressed the following concerns:  The father states the child, Bryce, is not emotionally stable in the mother's care. He shared that the child's, Bryce, grades have gone from A's and B's to C's and D's. He believes the child, Bryce, is more emotionally stable and cared for when he is in the father's care.

The mother stated the child is struggling with virtual learning. The mother does believe the father and the child, Bryce, have a close bond, yet she denies the child is neglected in her care.

**PARENTS' PROPOSALS AND RATIONALE**

Robert Emert proposed the following parenting schedule: The father is proposing the parenting time for the child, Skylar, remain unchanged. He is proposing the child, Bryce, resides primarily with him and the mother care for the child each week, from Wednesday, after school until Friday, at morning school drop-off, and that the parents both have "reasonable" phone contact with the children.

The father reiterated that the child, Bryce, is not emotionally stable in the mother's care and his grades are suffering, thus he should reside primarily with him. He believes both parents should be able to reach out to the children on a reasonable basis and there should not be a scheduled phone call order in place.

Andrea Emert proposed the following parenting schedule: The mother is proposing the parenting time for the child, Bryce, remain unchanged. She is proposing the child, Skylar, is in the father's care every other weekend, from Friday until Sunday, that the parents each have one scheduled phone call a day between 7:00 pm and 8:00 pm for no more than 10 minutes.

The mother reiterated that the child, Skylar, needs to have a "break" from her brother, Bryce, who has behavioral issues. In addition, the father makes multiple calls daily and she believes a phone call schedule should be instituted for both parents.

**THE CHILDREN**

Both parents denied the children have any unmet health, mental health, developmental concerns or special needs.

Andrea Emert and Robert Emert shared the following factors, which were important to be considered when developing a parenting plan: Both parents reported the child, Bryce, is diagnosed with High Functioning Autism. The child, Bryce, has an active IEP for learning disabilities.

-3-

## CHILDREN'S INTERVIEW

On December 16, 2020, the undersigned interviewed the children. Information obtained from that interview was taken into consideration when developing the recommendations.

The undersigned interviewed both children while they were in the father's care and both children were asked, individually, if there were in a room where they could speak privately where no one could hear them speaking with the undersigned. Both children replied they were in private rooms.

Bryce is a 13-year old who is in the 8th grade at San Elijo Middle School. He shared that he enjoys his AVID class and does not enjoy math. He currently is attending Karate, which Bryce said he had been participating in for the previous six years. He stated he enjoys playing video games.

The child confirmed he spends equal time with each parent. When the child was asked to share how this plan is working, he replied, "Not working too well." Bryce explained that prior to the parents' divorce, he spent the majority of this time with his father and he has a close relationship with his father. He asserted that when he is in the mother's care, the mother controls his ability to speak with the father. He further asserted that he feels that when he is speaking with the father, while in the mother's care, the mother "forces him off the phone". He denied the mother loses her temper, but she may use curse words and take the phone away from him.

Bryce said he is "really nice to my sister". Conversely, he believes that he should have more time away from his sister.

Skylar is an 11-year old who is in the 6th grade at San Elijo Middle School. The child shared that her favorite subject is Science and she receives "good grades". She participates in musical theater, she used to play soccer prior to current pandemic, and she use to participate in dance in the "past".

The child confirmed that she spends equal time with both parents. She confirmed that she would enjoy spending less time with her brother in either home. Skylar stated she did not know what that type of schedule would look like. She stated she does not feel safe around her brother at times. The child stated her brother's behaviors are not new behaviors, but they have escalated since the parents' divorce.

The mother has told the undersigned during the FCS session that she was concerned that Skylar may not feel comfortable speaking

Department D-18                          RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated January 13, 2021          Page 5

with the undersigned as she would be in the father's care at the time of the scheduled child interview. The undersigned explained that the child will be asked to be in a private room with no one within listening range during the interview. The mother shared that the child states to her that she feels as if someone is always at her bedroom door listening to her when she is on the phone. During the child interview with Skylar, the child stated on several occasions, "I think someone is listening outside the door". The undersigned asked the child why she felt as if someone was listening. She responded that she did not know, she just felt as if someone was standing outside her door listening.

**COLLATERAL INFORMATION**

The undersigned contacted Marguerite Widener, LCSW, children's therapist on December 21, 2020 and obtained the following summarized information:  The undersigned called the therapist on 12/22/20, 12/23/20, and 1/11/2021 and each call the undersigned received a voicemail message and the message "the voicemail is full and cannot accept any messages at this time". As of the writing of this report, the undersigned was unable to speak with the children's therapist.

A screening through the local/State CWS Agency revealed the following summarized information:  The family has three closed referrals since October 2019, when they were last seen at FCS.

1) 3/18/20-3/29/20: Allegations of physical abuse and emotional abuse to the child, Bryce, by the mother. This referral was not assigned for investigation and was **evaluated out**.

2) 3/2/20-4/7/20: Allegations of physical abuse to the child, Bryce, by the mother.  This allegation was closed as unfounded. Allegation of general neglect to the child, Bryce, by the mother. This allegation was closed as **unfounded.** Allegations of emotional abuse to the children, Bryce and Skylar, by the father.  This allegation was closed as **unfounded.**

3) 11/4/19-11/21/19: Allegations of physical abuse to the child, Bryce, by both parents. These allegations were closed as unfounded. Allegation of emotional abuse to both children with no perpetrator named. This allegation was closed as **inconclusive**. Allegation of at-risk sibling for the child, Skylar, with no perpetrator named. This allegation was closed as unfounded.

**REVIEW OF INFORMATION**

A portion of the Court File was reviewed by the undersigned.

Department D-18                          RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated January 13, 2021          Page 6

## REASONS FOR RECOMMENDATION

The parents were unable to agree upon a parenting plan for their children.

The father is the moving party. He is proposing the child, Bryce, reside primarily with him and the mother's parenting time occur Wednesday, after school until Friday. He is proposing the parents continue to practice joint physical custody of the child, Skylar. The mother is proposing the parents practice a joint physical custody of the child, Bryce and the father's parenting time for the child, Skylar, occurs every other weekend, from Friday until Sunday.

It was apparent to the undersigned that the parents have a very highly conflictual co-parenting relationship and both children are exposed and greatly affected by their high conflict co-parenting. The child, Bryce, has special needs such as high functioning autism. Both parents agreed, during the FCS conference, that they have practiced joint physical custody of the children since at least November 2019. The mother asserts the child, Bryce, is assaultive, both verbally and physically with the child, Skylar. Both children are actively attending therapy. The undersigned strongly urges both parents to actively participate in the children's therapy as directed by the therapist and request that the therapist conduct sibling sessions to address the concerns that the mother has about the child's, Bryce's behavior, towards the child, Skylar while they are in her care. Both parents are also high urged to not expose the children to their co-parenting conflict and work together with the children's therapist to establish a consistent routine in both of their households for each of the child's unique needs.

Based on the information gathered during the FCS conference and acknowledging both children's stated preferences, the undersigned is recommending no changes to the current parenting plan.

It is recommended that the parents enroll in and successfully complete an in-person high co-parenting conflict course.

It is recommended that both children continue to attend individual therapy and both parents actively participate in the children's therapy as directed by the therapist.

Based on the aforementioned information, the following recommendations are respectfully submitted to the Court consideration.

Department D-18                          RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated January 13, 2021          Page 7

**RECOMMENDATIONS FOR THE PARENTING PLAN OF:**

Bryce Emert, DOB: 06/11/07 (Age 13 years)
Skylar Emert, DOB: 06/06/09 (Age 11 years)

Mother: Andrea Emert
Father: Robert Emert

1. **LEGAL CUSTODY**

   A. Andrea Emert and Robert Emert shall share joint legal custody, which means that Andrea Emert and Robert Emert shall share the right and responsibility to make decisions relating to the health, education, and welfare of their children and consult each other regarding enrollment and disenrollment in school, beginning/ending mental health services and selection or changes of a doctor, dentist or other health professional.
   B. Each parent shall have access to medical and school records pertaining to the children and may consult with any professionals involved with the children. It is each parent's responsibility to request school calendars, progress reports, report cards and parent-teacher conferences directly from the school.
   C. Each parent may obtain emergency health care for the children without the consent of the other parent. Each parent is to notify the other parent as soon as reasonably possible of any illness requiring medical attention or any emergency involving the children.

2. **PHYSICAL CUSTODY**

   A. The children's physical custody shall be shared.
   B. Joint physical custody of the children shall be shared as follows:
   i)   Each parent shall care for the children during alternating weekends from Friday at school dismissal, or 3:00 p.m. until Monday at 3:00 pm.
   ii)  The mother shall care for the children every week from Monday at school dismissal, or 3:00 p.m. until Wednesday at school dismissal, or 3:00 p.m.
   iii) The father shall care for the children every week from Wednesday at school dismissal, or 3:00 p.m. until Friday at school dismissal, or 3:00 p.m.

Department D-18                              RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated January 13, 2021              Page 8

## 3.   HOLIDAYS/SPECIAL DAYS/SCHOOL VACATIONS

**Special Days/holiday** schedules shall take precedence over the regular parenting schedule, which shall resume after the holiday is over. Unless noted, all single-day holidays shall be from 8 AM to 8 PM. In absence of other agreement by the parents, specific holiday schedules shall be as follows:

| HOLIDAY | TIME | EVERY YEAR | EVEN YEARS | ODD YEARS |
|---|---|---|---|---|
| Christmas Eve/Christmas Day | 9 AM, 12/24 until 9 AM, 12/25 | | Mother | Father |
| Christmas Day/Day after Christmas | 9 AM, 12/25 until 6 PM, 12/26 | | Father | Mother |
| New Year's Eve/Day | Eve 6 PM – Day 6 PM | | Mother | Father |
| Easter Day | 8 AM – 8 PM | | Father | Mother |
| Mother's Day | 8 AM – 8 PM | Mother | | |
| Father's Day | 8 AM – 8 PM | Father | | |
| July 4th | 8 AM – until 10 AM July 5 | | Mother | Father |
| Halloween | 4 PM – 8 PM | | Father | Mother |
| Thanksgiving Day | 8 AM – 8 PM | | Mother | Father |
| Children's Birthdays | 8 AM – 8 PM; or if a school day from 6 PM to 8 PM | | Father | Mother |

**Three-day weekends** not specified in the chart above shall be spent with the parent who would normally have that weekend and the weekend shall be extended by 24 hours.

## 4.   VACATIONS/SCHOOL BREAKS

A. Either parent may vacation or have extended time with the children each year for up to two weeks. The vacationing parent shall notify the other parent in writing of their vacation plans a minimum of 30 days prior to departure and provide the other parent with a basic itinerary to include dates of departure and return, destinations, flight information and telephone numbers for emergency purposes. The vacationing parent shall not schedule the vacation during the other parent's scheduled holiday time with the children, unless agreed upon in advance by both parents. The vacation shall not interrupt school attendance unless mutually agreed upon by the parents and school personnel.

-8-

Department D-18                          RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated January 13, 2021          Page 9

5. **EXCHANGES/TRANSPORTATION**

   A. Exchanges of the children, when they do not take place at school/childcare shall be at the sending parent's residence.
   B. The children shall be exchanged at the designated times, with a 15-minute grace period. Should a longer delay be necessary, the other parent shall be notified immediately or that parenting time shall be considered canceled.

6. **TELEPHONE/COMMUNICATION**

   A. There shall be reasonable telephone contact between the children and the parents when in the other parent's care. **The purpose of the phone call shall be to communicate with the children. All other business between the parents shall be discussed at another time.**
   B. Email communication: The parties shall use a co-parenting email system, such as Our Family Wizard or TalkingParents.com for all non-emergency communication. The parties shall each establish a parent account, and enroll in the program within 21 days of this order and annually thereafter, to conduct all communications regarding custody or visitation matters, information-sharing matters, schedule alterations and reimbursable-expense matters on the website. The parties shall not telephone, e-mail or text each other regarding issues related to the child except in an unanticipated or emergency situation where response is required in less than 24 hours. Each party shall respond to the other party's request or notification within 48 hours of the posting, if a response is either requested or appropriate. Each party shall allow "professional access" to any licensed legal or mental health professional.

7. **CONDUCT/SAFETY**

   A. Neither parent shall make negative statements about the other in the presence or hearing of the children or question the children about the other parent. The parents shall communicate directly with each other in matters concerning the children and shall not use the children as a messenger between them. The children shall not be exposed to court papers or disputes between the parents, and each parent shall make every possible effort to ensure that other people comply with this order.

Department D-18                                    RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated January 13, 2021          Page 10

8. **NOTIFICATION**

   A. When either parent wishes to travel with the children
      outside the County of San Diego for overnight or longer
      during their parenting time, the other parent must be given
      24 hours' prior notice of date and time, destination and an
      emergency telephone number.

   B. Each parent shall always keep the other informed of his/her
      address and telephone numbers and shall notify the other
      parent within 24 hours of any changes. Neither parent may
      use such information for the purpose of harassing,
      annoying, disturbing the peace of the other or invading the
      other's privacy.

   C. If the children participate in an AM/PM program, camp or
      cared for routinely by a childcare provider, the parents
      shall keep one another informed of those programs,
      addresses and telephone numbers.

   D. Should either parent require childcare for more than **eight
      hours** or overnight while the children are in his/her
      physical care, the other parent shall have first option to
      provide such care.

   E. Neither parent shall schedule activities for the children
      during the other parent's scheduled parenting time without
      the other parent's prior agreement.

   F. At least 24 hours' notice of any schedule change shall be
      given to the other parent. The parent requesting the change
      shall be responsible for any additional child care that
      results from the change.

   G. Neither parent shall move the residence of the children out
      of San Diego County without giving the other parent a 45-
      day advance written notice and obtaining the other parent's
      written permission prior to the move or an order of the
      Court granting the move.

9. **CLASSES/PROGRAMS**

   A. Robert Emert and Andrea Emert shall enroll in and
      successfully complete an in-person high conflict co-
      parenting course. The course shall be completed by
      4/1/2021.

   B. The children shall participate in counseling with a
      licensed mental health practitioner until released by the
      therapist. **The parents shall cooperate and participate in
      the children's therapy at the discretion of the therapist.**
      Issues to be addressed include: exposure to high level of
      co-parenting conflict, sibling relationship, and any other
      mental health issues that arise.

Department D-18                          RE: Emert/Emert/ **19FL010852N**
Family Court Services Report Dated January 13, 2021          Page 11

  C. Possible resources include: private insurance; call 211
   from any phone; or a Program Resource List may be obtained
   at Family Court Services or on the San Diego Superior Court
   website www.sdcourt.ca.gov.

          Respectfully submitted,

          Lisa Boswell, MSW
          Family Court Counselor
          619-844-2939

Cc:  Andrea Emert, Mother
  Robert Emert, Father
  David Schulman, Attorney

Exhibit B

50/50 offers

## Emert, Bryce

**Rob Emert** <robemert@msn.com>

Mon 5/24/2021 9:04 PM

**To:** Matthew Cord, Esq. <MCord@apjohnsonesq.com>; Dave Schulman <dschulman@msmfamilylaw.com>
**Cc:** Catie Young <Catie@GYLFAMILYLAW.COM>; Linda Hansen <lhansen@msmfamilylaw.com>; Sarah Bear <sbear@msmfamilylaw.com>; Correne Day <Correne@GYLFAMILYLAW.COM>

📎 1 attachments (3 MB)

DISQUALIFICATION OF COMMISSIONER RATEKIN 052021.pdf;

Mr. Cord,

Upon Bryce returning to my home after a stay with his mom, he told me the following and that the whole weekend with his mom was a horrible fight. It is heartbreaking for me to hear this stuff and that Bryce is forced to have to put up with it.

1. His mom spit in his face
2. His mom threw popcorn in his face.
3. His mom grabbed him by the hair.
4. His mom was physically rough with him.
5. And, most alarming, that when she was putting him to bed last night that she was crying to him and said he did not have to live with her anymore and that he would not have a room at her house anymore and she was going to take his bed apart and he would not have a bed at her home anymore.

I am sure you will find a way to say it is my or Bryce's fault somehow. Bryce does not have these kinds of problems with anyone else and I have been telling you for a long while now that Andrea has always had a strained relationship with her son. It is not my fault. While Andrea and I have traded insults over the years I would never want Bryce to be without his mother and Bryce knows this very well. Andrea just has issues with a lot and she really is irrationally resentful of me where she wants to burn me more than help our kids. When I stick up for his mom in our discussions, Bryce gets upset with me because Bryce does have many valid concerns on how his mother treats him.

Without me being involved with the kids therapy is a disservice to the kids because you have created a stacked deck. Andrea can say whatever she wants and waive that nonsense court order that says I should not have contact with the one therapist while "the pile on" said it was all therapists. That would create a bias in any reasonable persons/therapists mind. I don't really care that much unless it is a disservice to the kids which it clearly is. And, I highly doubt that Peggy would even agree with how you used her to give Andrea a "tie breaking" vote, removing me from "all" kids therapies, and me getting admonished by the court for involving the kids in divorce related matters when she knows we have both messed up pretty bad in many respects. Whatever I have discussed with the kids in the past was what I would call serious damage control from what Andrea had told them about me or these divorce proceedings. I will get more into that at the next trial day.

Andrea has played everyone for suckers and I guess I am the biggest sucker for doing exactly what she knew I would by calling out everyone in an annoying bombastic way when advocating for my kids. If you really have Bryce's best interests why did you not reach out to his case manager who really is an expert in her field, knows Bryce well and has ZERO to buddy up to me. You spoke to people friendly with

Andrea and who believed Andrea's nonsense with her bogus TRO andrea waived around at the kids school after she was arrested.

Last Thursday I filed a motion to disqualify commissioner Ratekin from these proceedings.  With the overwhelming data that will show up in the transcripts, I would be surprise if Judge Wood does not take the case over but nothing really surprises me anymore in divorce court.  I attached it just in case you have not seen it yet.

I am right in most regards and I have the truth on my side.  It is only a matter of time before the truth comes out and while that may be at the next trial date or an appeal, it will happen eventually.  Like I have been saying since day one, I am open to a mediation where the interests of the children would come first and then have that mediator make the finding binding.  I think I have put that out there in emails at least 20x plus in the last two years.  Given the scenario, why would anyone not want to do that?  If I was wrong with my opinions on anything, I would have found out soon enough when the mediator reviewed the facts (and not fancy/questionable divorce moves in court) and made their findings to the parties and that which would have been binding.

Rob Emert

## Fw: progress, who would have thought....

**Rob Emert** <robemert@msn.com>

Mon 5/24/2021 8:54 AM

**To:** Andrea Emert <aemert@carlsbadusd.net>

Andrea,

It does not get anymore basic than this. Your attorney draws up the stipulation and most times the Judge says great and adds the stipulation to the orders. If he does not do this within 24 hours I know you guys are just jerking me around and I will simply do what I feel is in the kids best interests. I spoke to many about this including the people in the high conflict class. This is the best and easiest way to go.

50/50

If there is a dispute regarding anything that can't be resolved by Andrea or I going forward, we would agree to a child custody advisor/coordinator to make the decision and that decision would be binding unless both Andrea and I disagreed with the advisor and came to a different agreed solution. This child custody advisor/ coordinator will be a third party agreed to by both parties. This custody advisor does not need to be picked immediately but both parties do agree they will agree to choose one prior to submitting this stipulation to the court.

Rob

---

**From:** Rob Emert <robemert@msn.com>
**Sent:** Tuesday, May 18, 2021 2:40 PM
**To:** Sarah Bear <sbear@msmfamilylaw.com>
**Cc:** Dave Schulman <dschulman@msmfamilylaw.com>; Kelley Castillo <kcastillo@msmfamilylaw.com>; Caroline Taylor <ctaylor@msmfamilylaw.com>; Correne@GYLFAMILYLAW.COM; Linda Hansen <lhansen@msmfamilylaw.com>; Andrea Emert <aemert@carlsbadusd.net>; Matthew Cord, Esq. <MCord@apjohnsonesq.com>; Catie Young <Catie@GYLFAMILYLAW.COM>
**Subject:** Re: progress, who would have thought....

Ms. Bear,

Here is an offer of settlement regarding custody:

50/50

If there is a dispute regarding anything that can't be resolved by Andrea or I going forward, we would agree to a child custody advisor/coordinator to make the decision and that decision would be binding unless both Andrea and I disagreed with the advisor and came to a different agreed solution. This child custody advisor/ coordinator will be a third party agreed to by both parties. This custody advisor does not need to be picked immediately but both parties do agree they will agree to choose one prior to submitting this stipulation to the court.

I don't know why the Commissioner acted like this could not be done. I have been told by many it is done all the time. I think the commissioner was only saying that she could not order it which I understand. However, if the parties (Andrea and I )simply agree to it and submit it as an agreed stipulation, my understanding is that most judges would simply say great and add it to the orders. My terminology may be off but I am sure everyone knows what I mean.

If Andrea is agreeable to this, it would be great to be able to move on so please run it past Andrea and send over the stipulation so this family can heal and move on.

Rob Emert

---

**From:** Rob Emert <robemert@msn.com>
**Sent:** Friday, May 7, 2021 3:40 PM
**To:** Sarah Bear <sbear@msmfamilylaw.com>; Andrea Emert <aemert@carlsbadusd.net>; Catie Young <Catie@GYLFAMILYLAW.COM>; Matthew Cord, Esq. <MCord@apjohnsonesq.com>
**Cc:** Dave Schulman <dschulman@msmfamilylaw.com>; Kelley Castillo <kcastillo@msmfamilylaw.com>; Caroline Taylor <ctaylor@msmfamilylaw.com>; Correne@GYLFAMILYLAW.COM <Correne@gylfamilylaw.com>; Linda Hansen <lhansen@msmfamilylaw.com>
**Subject:** Re: progress, who would have thought....

Ms. Bear,

I have offered from the beginning of these divorce proceedings to do a binding mediation. The offer I have put fourth is very simple and your client has indicated she is pretty good with it.

1. 50/50 custody

2. If there is a dispute regarding anything that can't be resolved by Andrea or I going forward, we would agree to a child custody advisor/coordinator to make the decision and that decision would be binding unless both Andrea and I disagreed with the advisor and came to a different agreed solution. This child custody advisor/ coordinator will be a third party agreed to by both parties. This custody advisor does not need to be picked by Friday (05/07/21) but both parties do agree they will agree to choose one.

3. Andrea said she wants to keep the 15 min call thing which is fine by me. Andrea and I discussed making texting not included and I would add that multiple calls is fine as long as the aggregate does not go over 15 min as things come up during the day and such a restriction would not be in the kids best interests.

4. Regarding the schedule, I really don't care how Andrea wants to set up the schedule and she can change it however she wants whenever she wants and if there is an issue, we talk to the custody advisor / coordinator.

5. I don't care if I am or am not included with the therapists. My only concern was how Peggy the therapist and Mr. Cord never reached out to the main point of contact for Bryce Emert as indicated by the principal of the School and now the human resources director of San Marcos Unified who is Trish Flemming. When it was suggested and then ordered for me to be taken out of the equation when I was trying to get as many evaluations as possible of our children for the court to consider is alarming. Peggy, the therapist does not know Bryce Emert at all. Mr. Cord does not know Bryce Emert at all. Both of these individuals did not reach out to the main point of contact for Bryce Emert as indicated by the principal of the school when forming and giving life changing opinions for Bryce Emert. THIS IS MY MAIN CONCERN WITH THE THERAPIST SITUAITON AS IT WOULD CLEARY AND INEQUITABLY LET THE RIGHTS OF BRYCE EMERT, A MINOR ON THE AUTISM SPECTRUM GET RUN OVER WITH ZERO OVERSIGHT AND ACCOUNTABILTY and leaving out the opinions of people who have known Bryce Emert for years. Simply outrageous and most definitely not in the best interest of Bryce Emert. If this issue is not resolved, Bryce will be called as a witness. If it is denied, I believe he will be heard in an appeal. To suggest that bringing Bryce in as a witness is harming him somehow is absurd when considering the horrendous two years of interrogations by attorneys, CPS, FCS, police, therapists, and school counselors. Bryce has indicated to me constantly how upsetting all of that is to him and cry's to me all the time begging for me to make all these people go away. The only reason why someone would not want Bryce to be heard at this point is because they simply don't want to hear the truth. Perhaps like not calling Bryce's case manager that knows him better than anybody in these divorce proceedings other than his parents. Yeah, it sure makes sense to have all these strangers interrogate Bryce to the point he is crying and begging his dad to make them go away but not let the dad ask him a few questions so Bryce himself at almost 14 is able to clarify his opinions/wants/needs to the court.

If Andrea does not sign off on something this simple and straight forward it just tells me to expect more shenanigans that I have come to expect over the last two years and I will just have to spend more time and money over the weekend preparing which is something I was hoping to finally be rid of.

If Andrea is serious, her attorney needs to write this simple agreement up and let everyone sign off on it. If there are unforeseen issues, we end up back in court which I know is where Andrea and I don't want to be.

I believe Andrea is over 100k in fees; I was close to 50k from memory, and we now have a big bill adding up from minor council. This is not acceptable and we clearly can't afford it.

Please draw up the simple agreement that I believe Andrea is fine with and present it for everyone to sign off on it.

Thanks

Rob Emert

I

**From:** Sarah Bear <sbear@msmfamilylaw.com>
**Sent:** Friday, May 7, 2021 1:29 PM
**To:** Rob Emert <robemert@msn.com>; Matthew Cord, Esq. <MCord@apjohnsonesq.com>
**Cc:** Dave Schulman <dschulman@msmfamilylaw.com>; Kelley Castillo <kcastillo@msmfamilylaw.com>; Caroline Taylor <ctaylor@msmfamilylaw.com>; Correne@GYLFAMILYLAW.COM <Correne@gylfamilylaw.com>; catie@gylfamilylaw.com <catie@gylfamilylaw.com>; Linda Hansen <lhansen@msmfamilylaw.com>; Andrea Emert <aemert@carlsbadusd.net>
**Subject:** RE: progress, who would have thought....

Good Afternoon Everyone,

Our office is working with Ms. Emert to provide a written settlement offer to address child custody and visitation issues. However, due to our schedule I do not anticipate it will be possible to have a written offer by close of business today. Therefore, we will do our best to have a written offer to everyone Monday morning.

If you have any questions or concerns regarding this matter please feel free to contact our office.

Best Regards,

**Sarah B. Bear**
**Associate Attorney**
**Moore, Schulman & Moore, APC**
12636 High Bluff Drive, Suite 200
San Diego, California 92130
Main: 858-755-3300 / Fax: 858-755-3387
sbear@msmfamilylaw.com
msmfamilylaw.com



Internet Email Confidentiality Footer:

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Moore, Schulman & Moore APC client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party

**From:** Rob Emert <robemert@msn.com>
**Sent:** Friday, May 7, 2021 10:01 AM
**To:** Matthew Cord, Esq. <MCord@apjohnsonesq.com>
**Cc:** Sarah Bear <sbear@msmfamilylaw.com>; Dave Schulman <dschulman@msmfamilylaw.com>; Kelley Castillo <kcastillo@msmfamilylaw.com>; Caroline Taylor <ctaylor@msmfamilylaw.com>; Correne@GYLFAMILYLAW.COM; catie@gylfamilylaw.com; Linda Hansen <lhansen@msmfamilylaw.com>; Andrea Emert

<aemert@carlsbadusd.net>
**Subject:** RE: progress, who would have thought....

Whatever agreement is drawn up, please make it simple and completed today. I really don't care if I have input
with the therapists unless they want it. I am in therapy and I check out just fine given the nonsense, harassment
and uninformed pompous opinions getting thrown around that have put these kids in true harms way. The
unnecessary damage that has been done to your client Mr. Cord is beyond your understanding. Even if my
relationship with out son was/is a bit to close, it is that close relationship that has allowed him to thrive in so
many areas of his life that MANY attest to who know Bryce well. And we all saw what happened when that
relationship was pulled away to quickly and shame on those who should have stepped up. All I ever asked for was
to help our son with the transition and I surprisingly got push back from those who should have known better.
Bryces case manager knows Bryce better than anyone on this thread except for Andrea and I. As you could only
imagine, she is no huge fan of me. She certainly knows Bryce better than the therapist who does not know Bryce
at all but for some strange reason you want to put so much confidence in. She, the case manager, is scheduled to
be at the hearing as well as many others that really just shut down your narrative Mr. Cord. It has been dispicable
the way I have been treated. I have gone above and beyond in being a dedicated father for these kids while lives.
Just because I got understandably emotional and ticked off does not mean or prove anything.

Sent from my Windows 10 device

**From:** Matthew Cord, Esq.
**Sent:** Friday, May 7, 2021 8:57 AM
**To:** Rob Emert
**Cc:** Sarah Bear; Dave Schulman; Kelley Castillo; Caroline Taylor; Correne@GYLFAMILYLAW.COM;
catie@gylfamilylaw.com; Linda Hansen; Andrea Emert
**Subject:** Re: progress, who would have thought....

If the parties can come up with a reasonable agreement, I would support it -- I am gratified to see that under the
proposal Ms. Emert is placed in charge of medical/therapeutic matters for my client. I would hope that any
anticipated agreement would specify that Ms. Emert may make any decisions regarding Bryce's medical or
psychological care. I do not believe Mr. Emert should be permitted sua sponte contact with Bryce's therapists and
that he should not interact with them unless they request his input. At a minimum, Mr. Emert should complete
significant therapy of his own first. I likewise believe that there should be some limit regarding contact with the
children while in the other parent's care. If there is not one, this will absolutely lead to conflict in the future and it
will undermine Bryce's need to develop a stronger parental relationship with his mother and to begin to lessen his
overdependence on his father and hopefully begin to normalize the father son relationship.

On Thu, May 6, 2021 at 9:07 PM Rob Emert <robemert@msn.com> wrote:

> Ms. Bear,
>
> I spoke to Andrea.
>
> Andrea said she reviewed the below email and responded to your office. It seems as we may be able
> at least to resolve the custody part before trial on Tuesday. This would be great as I believe it takes a
> lot of unnecessary heart ache out of the equation.
>
> Andrea and I discussed something very basic and simple for custody.
>
> 50/50 custody.
>
> If there is a dispute regarding anything that can't be resolved by Andrea or I going forward, we would
> agree to a child custody advisor/coordinator to make the decision and that decision would be binding

unless both Andrea and I disagreed with the advisor and came to a different agreed solution. This child custody advisor/ coordinator will be a third party agreed to by both parties. This custody advisor does not need to be picked by Friday (05/07/21) but both parties do agree they will agree to choose one.

Please add whatever legal wording to this and run by Andrea and get back over to me to sign by end of day Friday so it is clear it is an agreement/stipulation that makes the custody issue simple and closed. And then at trial, we are not dealing with custody at all.

Rob Emert
760-612-9328

---

**From:** Rob Emert <robemert@msn.com>
**Sent:** Wednesday, May 5, 2021 9:07 AM
**To:** Linda Hansen <lhansen@msmfamilylaw.com>; 'catie@gylfamilylaw.com' <catie@gylfamilylaw.com>; 'Correne@GYLFAMILYLAW.COM' <Correne@GYLFAMILYLAW.COM>; 'mcord@apjohnsonesq.com' <mcord@apjohnsonesq.com>
**Cc:** Dave Schulman <dschulman@msmfamilylaw.com>; Sarah Bear <sbear@msmfamilylaw.com>; Kelley Castillo <kcastillo@msmfamilylaw.com>; Caroline Taylor <ctaylor@msmfamilylaw.com>
**Subject:** Re: (IRMO Emert) Trial Brief

Ms. Bear,

I am fairly certain a physical trial brief with tabs was required by your office to be served on me. I am broke and in order to comply with court procedures, I went through a lot of trouble and expense to get that to your office yesterday.

Please let me know if I am to expect that or not.

Regarding the trial. I have a simple solution for the custody part of it. Something like this.

1. 50/50 legal, physical.
2. petitioner can set the schedule and change schedule however she chooses whenever she chooses as long as it is 50/50.
3. petitioner can coordinate all doctors and therapist appointments. Respondent does not have to be involved at all but just wants updates. However, if petitioner is unable to coordinate these activities, she looks to the dad/respondent first before delegation of efforts.
4. the 15 min rule on phone calls is removed. the rule regarding respondent not having contact with the doctors or therapists is removed. There is zero basis/burden of proof for this temporary order to stand
5. Matt Cord is removed as Bryce Emerts council and Catie Young is council for both children. This will reduce expense quickly and hopefully parties are able to have Catie removed soon as well as parties can't afford it.
6. If there are any disputes, parties agree to a mutually agreeable third party to settle with a BINDING solution.

If custody is taken out of the trial, it simplifies everything. The high emotions are mostly taken out of the equation. Deposition stops, I don't have to call witnesses, I can focus on getting a job and not worrying about unfairly getting my parenting rights unjustly stripped of me and worrying about an appeal. I have been harassed for two years and have had to watch both my kids suffer unnecessarily. Me getting so upset during these proceedings is completely understandable given the

circumstances.  And, my therapist agrees.  I am an honest person and I told him everything including my shortcomings that I have not tried to hide from anybody.

And, I never broke any court order.  I never contacted any therapists.  I asked about it.  I never went over 15 minuets and am fairly certain I never did two calls.  But here is the thing, Andrea did and I have the record of it and it is in my exhibits.   And, the way I found out about not being able to split up the 15 min into two calls was because Andrea was discussing divorce related issues with our daughter who told me about it.  It is so ridiculous that there are pages and pages describing this where I am told I have done something wrong when I simply asked about it and where I did nothing wrong BUT petitioner did.  Ridiculous and outrageous.  And, Andrea has sadly told Bryce she has won and I don't have a say so he better get use to it.  I am assuming Andrea is referring to the temporary order of the "tie breaker" vote.  This has upset Bryce a lot.


Rob Emert

---

**From:** Linda Hansen <lhansen@msmfamilylaw.com>
**Sent:** Tuesday, May 4, 2021 4:31 PM
**To:** 'robemert@msn.com' <robemert@msn.com>; 'catie@gylfamilylaw.com' <catie@gylfamilylaw.com>; 'Correne@GYLFAMILYLAW.COM' <Correne@GYLFAMILYLAW.COM>; 'mcord@apjohnsonesq.com' <mcord@apjohnsonesq.com>
**Cc:** Dave Schulman <dschulman@msmfamilylaw.com>; Sarah Bear <sbear@msmfamilylaw.com>; Kelley Castillo <kcastillo@msmfamilylaw.com>; Caroline Taylor <ctaylor@msmfamilylaw.com>
**Subject:** (IRMO Emert) Trial Brief

File attachments have been sent to you using Synced Tool. Click the links to download the files.

- Petitioner Andrea Emert's Witness List [dated 05-04-21].pdf
- Petitioner's Exhibits 1 through 12.pdf
- Petitioner Andrea Emert's Income and Expense Declaration [dated 05-03-21].pdf
- Petitioner's Exhibits 19 through 29.pdf
- (Face Pages Only) Petitioner Andrea Emert's Trial Brief [dated 05-04-21].pdf
- Petitioner Andrea Emert's Exhibit List [dated 05-04-21].pdf
- Petitioner's Exhibits 13 through 18.pdf

---

Good afternoon,

Attached please find the following:

1. Petitioner Andrea Emert's Trial Brief with exhibits 1-29
2. Witness List;
3. Exhibit List;
4. Income and Expense Declaration.

Thank you.

If you have any questions or concerns, please do not hesitate to contact our office.

Regards,

**Linda Hansen**
**Legal Assistant to David S. Schulman, CFLS**

**and Sarah Bear, Esq.**
**Moore, Schulman & Moore, APC**
12636 High Bluff Drive, Suite 200
San Diego, California 92130
Main: 858-755-3300 / Fax: 858-755-3387
lhansen@msmfamilylaw.com
msmfamilylaw.com



MOORE | SCHULMAN | MOORE

<u>Internet Email Confidentiality Footer:</u>

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Moore, Schulman & Moore APC client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

--
Sincerely,

Matthew W. Cord, Esq.
Andrew P. Johnson, APC
440 S. Melrose Drive, Suite 260
Vista, California 92081
www.apjohnsonesq.com
Tel: (760) 639-0187
Fax: (760) 639-0276

Exhibit C

Andrea was arrested for domestic violence against me and Bryce.



**Public Records Request**
**Victim Copy**

| Case No. | 19157280 | **1** |
| --- | --- | --- |

Primary Victim  **Emert, Robert Anthony**

Report No.  19157280.1

Page 1 of 4

## GENERAL CASE INFORMATION

Primary Charge  **243 (E)(1) - PC - BATTERY:SPOUSE/EX SPOUSE/DATE/ETC (M)**

Location, City, State, ZIP
**1778 Morgans Av, San Marcos, CA 92078**

Call For Service Date/Time
**11/03/2019 15:26:40 (Sunday)**

Occurrence Date/Time
**11/03/2019 15:26:00 (Sunday)**

Call For Service Event Type
**SPOUSAL ABUSE**

### VICTIMS

#### Victim #1

| Name | | Sex | Age | Injury |
| --- | --- | --- | --- | --- |
| **Emert, Robert Anthony** | | M | 50 | N - None |

Home Address, City, State, ZIP
**1778 Morgans Ave, San Marcos, CA 92078**

Victim Of
**243 (E)(1) - PC - BATTERY:SPOUSE/EX SPOUSE/DATE/ETC (M)**

| Employment Status | Occupation/Grade | Employer/School | Employer Address, City, State Zip |
| --- | --- | --- | --- |
| Unemployed | | | |

### IBR/UCR OFFENSES

| Offense Description | Level | Against | Completed? | Exists |
| --- | --- | --- | --- | --- |
| **243 (E)(1) - PC - BATTERY:SPOUSE/EX SPOUSE/DATE/ETC (M)** | M | PE | Yes | |

## ARRESTEE/S

### Arrestee #1

| Name | | Sex | Date of Birth / Age | Height | Weight | Hair Color | Eye Color |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **Emert, Andrea Lynn** | | F | 03/04/1971 - 48 | 5' 8" | 160 | BLN | BLU |

Home Address, City, State, ZIP
**1778 Morgans Av, San Marcos, CA 92078**

| Employment Status | Occupation/Grade | Employer/School | Employer Address, City, State Zip |
| --- | --- | --- | --- |
| Employed | 6th-8th Grade Teacher | Aviara Oaks Middle School | 6880 Ambrosia Ln, Carlsbad, CA 92011 |

### ARREST INFORMATION

| Arrested Type | LE Disposition | JUS 750 Type | Booking No. |
| --- | --- | --- | --- |
| **O - Probable Cause Arrest - New Case** | 3 - Misdemeanor (Adult Only) | 2 - Booked | |

| Arrested For | Level | Completed | Counts |
| --- | --- | --- | --- |
| **243 (E)(1) - PC - BATTERY:SPOUSE/EX SPOUSE/DATE/ETC (M)** | M | Yes | |

Arrest Date and Time
**11/03/2019 16:32:00**

Arrest Location, City, State, ZIP
**1778 Morgans Av, San Marcos, CA 92078**

Booking Date/Time
**Vista Detention Facility**

Booked Location

Armed With
**01 - Unarmed**

## SUSPECT/S (Not Yet Arrested)

## WITNESSES

### Witness #1

| Name | | Sex | Age | Injury |
| --- | --- | --- | --- | --- |
| **Emert, Bryce** | | M | 12 | |

Home Address, City, State, ZIP
**1778 Morgans Ave, San Marcos, CA 92078**

| Employment Status | Occupation/Grade | Employer/School | Employer Address, City, State Zip |
| --- | --- | --- | --- |
| Student | 7th Grade | San Elijo Middle School | 1600 Schoolhouse Way, San Marcos, CA 92078 |

### Witness #2

| Name | | Sex | Age | Injury |
| --- | --- | --- | --- | --- |
| **Emert, Skylar** | | F | 10 | |

CONFIDENTIAL
This section has been redacted as being released pursuant to California Penal Code (CPC) 1054.1 Exemption or distribution of

| Reporting Officer | Division/Organization | |
| --- | --- | --- |
| SH3371 - CARRENO, JOHN | San Marcos Station SAN MARCOS PATROL | SAN DIEGO COUNTY SHERIFF'S DEPT |
| Report Date | Supervisor Approved | |
| 11/04/2019 05:48:44 | SH2700 - LOREK, KIRSTIN | |

NetRMS_CASDCR.rtf v11-15-06

Printed: November 6, 2019 - 3:32 PM